ELIZABETH PIPKIN (243611)
CHRISTINE PEEK (234573)
JOHANNA OH (316681)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:    (408) 279-3244
Email:        epipkin@mcmanislaw.com

Attorneys for Defendants,
RiverPay Inc., a Canadian corporation,
RiverPay, Inc., a Delaware corporation,
Yue Hua, a.k.a. York Hua,
Kenny E. Shi, Hang "Hank" Miao

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITCON USA, LLC,<br><br>            Plaintiff,<br><br>   v.<br><br>RIVERPAY INC., a Canadian corporation,<br>RIVERPAY, INC., a Delaware corporation,<br>YUE HUA, a.k.a., YORK HUA, an individual,<br>KENNY E SHI, an individual, HANG<br>"HANK" MIAO, an individual, and DOES 1<br>through 20,<br><br>            Defendants. | Case No. 5:18-CV-02585-NC<br><br>**COUNTERCLAIMS OF RIVERPAY INC. (CANADA), RIVERPAY, INC. (DELAWARE), AND KENNY SHI FOR (1) TRADE LIBEL; (2) DEFAMATION; (3) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; (4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS; (5) UNFAIR COMPETITION; (6) BREACH OF CONTRACT; (7) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br><u>JURY TRIAL DEMANDED</u> |
| RIVERPAY INC., a Canadian corporation,<br>RIVERPAY, INC., a Delaware corporation, and<br>KENNY E SHI, an individual,<br><br>            Counter-Claimants,<br><br>   v.<br><br>CITCON USA, LLC, a California limited liability company, WEI JIANG, an individual, and DOES 1 through 20,<br><br>            Counter-Defendants. | |

RIVERPAY'S AND SHI'S COUNTERCLAIMS FOR DAMAGES AND OTHER RELIEF;
DEMAND FOR JURY TRIAL, Case No. 5:18-CV-02585-NC

Defendant and Counter-Claimant RiverPay Inc., a Canadian corporation ("RiverPay Canada"), RiverPay, Inc., a Delaware corporation ("RiverPay USA") (collectively "RiverPay"), and Kenny E Shi ("Shi"), an individual, (collectively "Counter-Claimants"), hereby complain and allege against counter-defendant Citcon USA, LLC ("Citcon"), and defendant Wei Jiang ("Wei"), an individual, and Does 1 through 20 (collectively, "Counter-Defendants"), as follows:

## INTRODUCTION

1. RiverPay counterclaims to prevent and redress the dishonest tactics and anti-competitive smear campaign by Counter-Defendants intended to tarnish RiverPay's reputation within the market for payment processing. RiverPay is presently suffering damaged or destroyed business relationships, pecuniary harm, and public relations problems brought on by Counter-Defendants, who have falsely stated in various media that RiverPay is misrepresenting its ability to process payments, has been suspended by key business partners, and has been suffering security problems. In fact, it is Citcon and its executives who have misrepresented Citcon's business capabilities and growth to investors, used confidential information of previous employers, attempted to skirt Chinese and U.S. money laundering regulations, and submitted misleading H1B applications. Rather than compete fairly against RiverPay, Citcon and its officers rely upon these deceptive and unlawful business practices to short-circuit RiverPay's business. Not only is RiverPay losing business and seeing a slowdown in its growth, it is being forced to expend time and resources to deal with the fallout from Counter-Defendants' actions.

## THE PARTIES

2. Counter-Claimant RiverPay Canada is a Canadian corporation. Its headquarters and principal place of business is located at 5100 Orbitor Dr, Mississauga, ON L4W 5R8, Canada.

3. Counter-Claimant RiverPay USA is a Delaware corporation. Its headquarters and principal place of business are located at 3900 Newpark Mall, STE 320, Newark, CA 94560-5243.

4. Counter-Claimant Kenny Shi is an individual residing in Fremont, California.

5. Defendant Citcon is a California limited liability company, with its headquarters and principal place of business at 4500 Great America Parkway, Suite 250, Santa Clara, California 95054.

6. Defendant Wei is the President and Chief Operating Officer (COO) of Citcon. On information and belief, Wei maintains a residence in Northern California and resides here for a substantial part of the year.

7. Counter-claimants are ignorant of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive, and therefore sue these defendants by such fictitious names. Counter-claimants will amend this complaint to allege their true names and capacities when ascertained. Counter-claimants are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiffs' damages as herein alleged were proximately caused by their conduct.

8. At all times herein mentioned, Counter-defendants, including the defendants sued herein as Does 1 through 20, were the agents, servants, and employees of their co-defendants and in doing the things herein alleged were acting in the scope of their authority as such agents, servants and employees, under the direction and supervision and with the permission and consent of their co-defendants.

## JURISDICTION AND VENUE

9. The Court has supplemental jurisdiction over RiverPay's and Shi's counterclaims pursuant to 28 U.S.C. § 1367(a), as these claims arise from the same case or controversy as the allegations in Citcon's First Amended Complaint against RiverPay and Shi.

10. The Court has personal jurisdiction over Citcon because Citcon is a resident of this District and its actions that form the basis for this lawsuit occurred largely or entirely in this District.

11. The Court has personal jurisdiction over Wei because he has sufficient minimum contacts with this District. Among other reasons, on information and belief, he works and

resides in this District, and his actions that form the basis for this lawsuit occurred largely or entirely in this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Counter-Defendants are residents of this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

13. Venue is proper in this Division under Local Rule 3-2(c) and 3-2(e) because a substantial part of the events or omissions giving rise to the claims occurred in this Division.

## GENERAL ALLEGATIONS

A. **Background of the Parties**.

14. RiverPay Canada was founded in 2017 and is headquartered in Ontario, Canada. It is a privately-held corporation. RiverPay Canada was established as a subsidiary of RiverPay USA. RiverPay USA is headquartered in Newark, California. Since its inception, RiverPay's business has grown steadily, making RiverPay one of the leading competitors within the marketplace for Chinese payment processing services.

15. RiverPay provides a payment processing channel that allows merchants to receive payment from popular Chinese payment applications ("Payment App"), and also helps merchants to settle such payments. RiverPay's service allows these merchants access to Chinese consumers, greatly expanding the market for their goods or services. RiverPay also works with these merchants to allow them to accept such payments on their existing web and mobile platforms. RiverPay's relationships with these merchants are a cornerstone of its business, and building relationships with new merchants is the key to RiverPay's growth.

16. RiverPay offers its services to merchants in a number of industries, including food and beverage, tourism, hospitality, education, e-commerce, and retail.

17. As part of its business, RiverPay works closely with merchants, Payment App service providers, and banks. These relationships are crucial to RiverPay's business, as they are to the business of any payment processor who works with Chinese payment applications and consumers, and any harm to these relationships harms RiverPay's fundamental business.

18. RiverPay also works with banks to provide the financial services that enable its platform. RiverPay's business cannot function without such relationships.

19. RiverPay's relationships with merchants, Payment App service providers, and banks are all governed by contracts between the respective parties.

20. Citcon is a direct competitor of RiverPay. On information and belief, it has operated in the North American market since 2015. During that time, upon information and belief, Wei has operated in the capacity of COO of the company. During that time, Chunbo Huang ("Huang") has operated as the CEO and Founder of the company.

**B.     Counter-Defendants' Unlawful Business Practices.**

21. On information and belief, Counter-Defendants' unlawful actions go back to at least 2016.

22. On information and belief, starting in December, 2016, Citcon participated in numerous untruthful tactics to manipulate investors. Among other misrepresentations, Citcon delayed client enrollment and onboarding so that its business growth showed an inaccurate sharp increasing curve. Furthermore, Citcon inflated numbers for its client base. These manipulations were material and significantly exaggerated actual growth rate and Citcon's competitiveness in the market.

23. On information and belief, Citcon continues to make misrepresentations to investors about Citcon's rate of growth, the identity of Citcon's marketing partners and distributing partners, and the qualifications of Citcon's management.

24. On information and belief, Huang and Citcon have engaged with partners to help funnel money in a manner designed to avoid Chinese and U.S. money laundering regulations. Huang and Citcon have also created a fictitious company to help facilitate money movements.

25. On information and belief, Huang and Citcon also completed misleading H1B applications from Citcon employees, misrepresenting the job duties of the H1B employees and the salaries paid to those employees.

26. On information and belief, when Wei joined Citcon in April, 2017, he was still working for Visa. Wei used a fictitious name, "John," to work at Citcon in order to avoid

Visa's detection. Wei bragged that he had confidential Visa information that he intended to use on Citcon's behalf.

27. While engaging in dishonest activity towards investors and regulatory officials, Citcon also engaged in dishonest behavior for the purpose of undermining its competitor, RiverPay. In or around October 2017, Wei recorded a video of himself posing as an "innocent customer," who went to a merchant in Las Vegas and attempted to use RiverPay to process payments through a well-known Payment App (WK Payment App) only to "learn" that RiverPay could not process the payments (the "Video"). Wei's voice is easily recognizable on the Video.

28. At the time the Video was recorded, RiverPay was not yet processing payments through the WK Payment App. Instead, RiverPay was negotiating the initiation of such services with the service provider of this WK Payment App. RiverPay ultimately began processing payments by WK Payment App in or around November 2017. Prior to that time, RiverPay had never advertised itself as being able to process payment via the WK Payment App, instead advertising that this service was planned and would begin in the near future.

29. Counter-Defendants sent the Video to the service provider of the WK Payment App, in hopes that that the service provider would suspend or otherwise punish RiverPay. Indeed, the service provider launched an investigation into RiverPay in or around December 2017, with which RiverPay cooperated fully. At the conclusion of the investigation, the service provider found no wrongdoing by RiverPay and took no actions against it. However, the Video placed a crucial relationship in jeopardy and cost both RiverPay and the service provider of the WK Payment App significant time and resources.

30. Counter-Defendants also circulated the video publically. A senior director for the service provider of the WK Payment App informed RiverPay that "everyone knew Citcon had sent the video."

31. Upon information and belief, after the Video, Counter-Defendants began emailing merchants and banks from anonymous and Citcon email addresses, telling them that the service provider of the WK Payment App had suspended RiverPay and that RiverPay was

having security problems (the "Emails").  These statements in the Emails were completely false.  The service provider of the WK Payment App had never suspended RiverPay, and there were no security issues.

32. At least four merchants with whom RiverPay had a preexisting relationship brought these Emails to RiverPay's attention.  The Emails were sent to these merchants with the intention of disrupting RiverPay's relationship with them.  On information and belief, Counter-Defendants sent Emails to numerous other merchants, as well as banks, once again with the goal of disrupting RiverPay's existing relationships or preventing prospective relationships from forming.

33. Upon information and belief, Counter-Defendants' false statements were part of a pattern and practice by which Counter-Defendants have spread defamatory, libelous statements regarding RiverPay in an effort to destroy its reputation, relationships, and business.

34. RiverPay strongly suspected that Counter-Defendants were behind the Video and the Emails.  Its suspicions were confirmed when, on or about April 20, 2018, at a conference in Vancouver, Wei informed Ryan Zheng, the co-founder and current CEO of RiverPay, that Citcon was responsible for both the Video and the Emails.

35. On or about April 20, 2018, during another conversation with Wei, Wei proposed to Ryan Zheng that Citcon and RiverPay work together to divide the market and set prices rather than compete in a fair market.  Wei told Zheng: "Let's divide the land and fix the prices.  You take Nordstrom and we'll take Macy's."  Citcon executive Jing "Evelyn" Yang was present when Wei made this unlawful proposal.  Ryan Zheng refused.  On information and belief, Counter-Defendants' smear campaign was an effort to either destroy RiverPay or pressure it into a collaboration or improper anti-competitive scheme.

C. **RiverPay Suffers Lost Relationships and Opportunities as a Result of Citcon's Actions.**

36. Since the inception of Counter-Defendants' misinformation campaign, RiverPay has suffered a series of business setbacks caused directly by the relationship disruption and

reputational harm brought on by Counter-Defendants' actions. This disruption and loss began well before the filing of the present lawsuit by Citcon.

37. As noted above, several merchants with whom RiverPay had an existing relationship brought concerns to RiverPay regarding the allegations in the Emails. The Emails disrupted, interfered with, and nearly destroyed several of RiverPay's business relationships. RiverPay was forced to expend time and resources to address these merchants' concerns.

38. On information and belief, other merchants have declined to do business with RiverPay as a result of Counter-Defendants' deceptive practices. RiverPay's growth in merchant relationships has slowed since October 2017, and has continued to slow as of May 2018, when Citcon filed the present lawsuit.

39. Prior to May 2018, at least five banks have refused to do business with RiverPay. No banks had ever refused to do business with RiverPay before Counter-Defendants' misinformation campaign began. Upon information and belief, these banks' refusal was the direct result of Counter-Defendants' actions.

40. RiverPay has seen a decline in its growth brought on by reputational harm. In its communications with members of the industry, RiverPay has observed the negative effects of Counter-Defendants' lies upon its reputation and business relationships.

D. **The Employee Capital Interest Award Agreement with Shi.**

41. On or about September 1, 2016, Shi entered into a written contract with Citcon entitled "Employee Capital Interest Award Agreement" ("ECIA Agreement").

42. Under the ECIA Agreement, among other things, Citcon granted to Shi, and promised to issue in the form of book entry shares in Shi's name, 600,000 shares of capital interest in CITSEP LLC, a California Limited Liability Company ("CITSEP"). According to the ECIA Agreement, "CITSEP is a holding company of twenty million shares (20,000,000) of common stocks of Citcon Limited, a Cayman Island Company, with 1:1 ratio exchangeable to CITSEP capital interest."

43. Section 2 of the ECIA Agreement provides that the shares issued "may not be sold, transferred or otherwise disposed of and may not be otherwise hypothecated. Such a

1 transfer of interest may not occur until all restrictions on such Capital Interest shall have lapsed in the manner provided by Section 3, 4, or 5 hereof and must be pre-approved in writing by the Manager of [Citcon]."

44. Section 3 of the ECIA Agreement sets forth the vesting schedule for the shares: "Except as provided in Sections 4, 5 and 6 hereof, one-fourth (1/4) of the number of Shares of Capital Interest issued hereunder (rounded down to the nearest whole Share, if necessary) shall vest, and the restrictions with respect to such Capital Interest shall lapse, on each of the first four (4) anniversaries of the Date of Grant."

45. Pursuant to the ECIA Agreement, the first one-fourth, or 150,000, of the 600,000 shares were due to vest on or about September 1, 2017.  Shi is informed and believes, and thereon alleges, that nothing in Sections 4, 5 and 6, or any other Section of the ECIA Agreement, changed the vesting schedule for the first 150,000 shares.  Shi is informed and believes, and thereon alleges, that the first 150,000 shares did vest on or about September 1, 2017, according to the terms of the ECIA Agreement.

46. Under Section 7 the ECIA Agreement, Citcon was required to deliver to Shi "evidence of book entry Shares with respect to shares of Capital Interest in respect of which the restrictions have lapsed pursuant to Section 3," "as soon as practicable following the date on which the restrictions on such Capital Interest have lapsed, free of all restrictions hereunder."

47. On or about December 29, 2017, Citcon sent Shi an email attaching a document entitled, "Notice as to Change in Employment Status" ("Notice").  The Notice stated, "[f]or your vested capital interest award grant in CITSEP, the company legal and finance team will reach out to you in January 2018 to complete the paperwork."  But, no one from Citcon ever reached out to Shi as stated in the Notice.

48. Citcon has not yet abided by Shi's rights under the ECIA Agreement, including but not limited to, (1) Shi's right to receive "all profits and distributions paid or made" with respect to his capital interest, pursuant to Section 8; and (2) Shi's right to transfer his interest in the first 150,000 vested shares, pursuant to Sections 2 and 3.

///

49. Citon USA LLC breached the ECIA Agreement by failing and refusing to deliver evidence of book entry shares for the first 150,000 as required under Section 7. Shi never received evidence of book entry shares with respect to the 150,000 vested shares issued to him under the ECIA Agreement.

**FIRST CLAIM**
**Trade Libel**

**(RiverPay Against All Counter-Defendants)**

50. RiverPay hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

51. Counter-Defendants have made intentional, false, disparaging statements regarding the quality of RiverPay's payment processing services, the integrity and honesty of its business, and the security of its systems.

52. Specifically, Counter-Defendants have spread false allegations that a WK Payment App was unwilling to do business with RiverPay or had suspended RiverPay; that RiverPay had lied about its payment processing abilities; and that RiverPay was having security problems and was therefore unreliable and unsafe to work with. Such allegations falsely portray RiverPay's payment processing services as inferior and unsecure, and further portray RiverPay as dishonest and incompetent.

53. RiverPay is aware of the Emails and the Video circulated by Counter-Defendants to spread these libelous statements, and on information and belief, Counter-Defendants have also used other media and publications to libel RiverPay.

54. As a direct and proximate result of result of Counter-Defendants' actions, RiverPay suffered substantial pecuniary damages to its business in an amount to be proven at trial.

55. The aforementioned acts of Counter-Defendants were willful and malicious in that Counter-Defendants' acts described above were done with the deliberate intent to injure RiverPay's business and improve their own. RiverPay is therefore entitled to punitive damages.

56. Counter-Defendants' intentional and wrongful actions also have caused irreparable and incalculable injury to RiverPay and to its business and goodwill, and, unless enjoined, could cause further irreparable and incalculable injury, whereby RiverPay has no adequate remedy at law.  Thus, RiverPay is also entitled to equitable remedies including injunctive relief.

## SECOND CLAIM
### Defamation

**(RiverPay Against All Counter-Defendants)**

57. RiverPay hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

58. Counter-Defendants' publications and communications to third parties, as alleged in this Counter-Complaint, are false, defamatory, and of a natural tendency to injure or cause damage to RiverPay.  Counter-Defendants made these defamatory statements intentionally, with malice, and with the goal of harming RiverPay in order to reduce competition for payment processing services.

59. Specifically, Counter-Defendants have spread false allegations that a WK Payment App was unwilling to do business with RiverPay or had suspended RiverPay; that RiverPay had lied about its payment processing abilities; and that RiverPay was having security problems and was therefore unreliable and unsafe to work with.  Such allegations falsely portray RiverPay as dishonest and incompetent, and have a strong tendency to injure RiverPay within the marketplace for payment processing services.

60. RiverPay is aware of the Emails and the Video circulated by Counter-Defendants to spread these defamatory statements, and on information and belief, Counter-Defendants have also used other media and publications to defame RiverPay.

61. As a direct and proximate result of result of Counter-Defendants' actions, RiverPay suffered substantial damages to its reputation and its business in an amount to be proven at trial.

62. The aforementioned acts of Counter-Defendants were willful and malicious in that Counter-Defendants' acts described above were done with the deliberate intent to injure RiverPay's business and improve their own. RiverPay is therefore entitled to punitive damages.

63. Counter-Defendants' intentional and wrongful actions also have caused irreparable and incalculable injury to RiverPay and to its business and goodwill, and, unless enjoined, could cause further irreparable and incalculable injury, whereby RiverPay has no adequate remedy at law. Thus, RiverPay is also entitled to equitable remedies including injunctive relief.

## THIRD CLAIM
### Intentional Interference With Contractual Relations
**(RiverPay Against All Counter-Defendants)**

64. RiverPay hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

65. Contracts exist between RiverPay and certain banks, merchants, and Payment App service providers.

66. Counter-Defendants had knowledge of these contracts.

67. Counter-Defendants' intentional, wrongful actions have been designed to induce a breach of or to disrupt those contracts by, among other things, persuading these banks, merchants, and Payment App service providers to refuse to do business with RiverPay in an effort to gain more market share for Citcon at the detriment of RiverPay.

68. Counter-Defendants' intentional, wrongful actions have disrupted and caused the breach of RiverPay's contracts with these banks, merchants, and Payment App service providers.

69. As a direct and proximate result of result of Counter-Defendants' actions, RiverPay suffered substantial damages to its reputation and its business in an amount to be proven at trial.

70. Counter-Defendants' intentional and wrongful actions also have caused irreparable and incalculable injury to RiverPay and to its business and goodwill, and, unless

enjoined, could cause further irreparable and incalculable injury, whereby RiverPay has no adequate remedy at law. Thus, RiverPay is also entitled to equitable remedies including injunctive relief.

## FOURTH CLAIM
### Intentional Interference With Prospective Economic Relations

**(RiverPay Against All Counter-Defendants)**

71. RiverPay hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

72. Economic relationships exist between RiverPay and the banks, merchants, and Payment App service providers with which it contracts or will contract to provide payment services.

73. Counter-Defendants had knowledge of these relationships.

74. Counter-Defendants' intentional, wrongful actions have been designed to disrupt those relationships by, among other things, persuading these banks, merchants, and Payment App service providers to refuse to do business with RiverPay in an effort to gain more market share for Citcon at the detriment of RiverPay.

75. Counter-Defendants' intentional, wrongful actions have disrupted RiverPay's relationships with these banks, merchants, and Payment App service providers.

76. As a direct and proximate result of result of Counter-Defendants' actions, RiverPay suffered substantial damages to its reputation and its business in an amount to be proven at trial.

77. Counter-Defendants' intentional and wrongful actions also have caused irreparable and incalculable injury to RiverPay and to its business and goodwill, and, unless enjoined, could cause further irreparable and incalculable injury, whereby RiverPay has no adequate remedy at law. Thus, RiverPay is also entitled to equitable remedies including injunctive relief.

///

## FIFTH CLAIM
### Unlawful, Unfair, And Fraudulent Competition
### Under California Business & Professions Code § 17200, *et seq.*

**(RiverPay Against All Counter-Defendants)**

78. RiverPay hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

79. The acts and conduct of Counter-Defendants as alleged above in this Counter-Claim constitute unlawful, unfair, and/or fraudulent business acts or practices as defined by Cal. Bus. & Prof. Code § 17200 *et seq.*, including but not limited to Counter-Defendants' proposal to RiverPay to work together to divide the market and set prices in violation of the antitrust laws.

80. Counter-Defendants' acts of unlawful, unfair, and fraudulent competition have caused harm to competition, to consumers, and to their competitors.

81. Counter-Defendants' acts of unlawful, unfair, and fraudulent competition have proximately caused RiverPay to suffer substantial injury in fact and loss of money and/or property in an amount to be proven at trial.

82. Counter-Defendants' acts of unlawful, unfair, and fraudulent competition also have caused irreparable and incalculable injury to RiverPay and to its business and goodwill, and, unless enjoined, could cause further irreparable and incalculable injury, whereby RiverPay has no adequate remedy at law, entitling RiverPay to equitable remedies including injunctive relief.

## SIXTH CLAIM
### Breach of Contract

**(Shi Against Citcon)**

83. Shi hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

84. Shi entered into a written contract, the ECIA Agreement, with Citcon.

85. Shi did all of the significant things that the ECIA Agreement required him to do, or any non-performance by Shi was excused.

14

RIVERPAY'S AND SHI'S COUNTERCLAIM FOR DAMAGES AND OTHER RELIEF; DEMAND FOR JURY TRIAL, Case No. 5:18-CV-02585-NC Case No. 5:18-CV-02585-NC

86. Under Section 7 the ECIA Agreement, Citcon was required to deliver to Shi "evidence of book entry Shares with respect to shares of Capital Interest in respect of which the restrictions have lapsed pursuant to Section 3," "as soon as practicable following the date on which the restrictions on such Capital Interest have lapsed, free of all restrictions hereunder."

87. Citcon breached the ECIA Agreement by failing and refusing to deliver evidence of book entry shares for the first 150,000 as required under Section 7. Shi never received evidence of book entry shares with respect to the 150,000 vested shares issued to him under the ECIA Agreement.

88. On or about December 29, 2017, Citcon sent Shi an email attaching a document entitled, "Notice as to Change in Employment Status" ("Notice"). The Notice stated, "[f]or your vested capital interest award grant in CITSEP, the company legal and finance team will reach out to you in January 2018 to complete the paperwork." But, no one from Citcon ever reached out to Shi as stated in the Notice.

89. On information and belief, Citcon failed to comply with Shi's rights under the ECIA Agreement, including but not limited to, (1) Shi's right to receive "all profits and distributions paid or made" with respect to his capital interest, pursuant to Section 8; and (2) Shi's right to transfer his interest in the first 150,000 vested shares, pursuant to Sections 2 and 3.

90. As a direct and proximate result of Citcon's failure to perform as required under the ECIA Agreement, Shi has suffered damages in an amount according to proof at trial.

### SEVENTH CLAIM
### Breach of Covenant of Good Faith and Fair Dealing
### (Shi Against Citcon)

91. Shi hereby alleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

92. The ECIA Agreement contains an implied covenant of good faith and fair dealing, pursuant to which Citcon had a duty to refrain from doing anything that would render performance of the ECIA Agreement impossible, or that would impair Shi's rights and

reasonable expectations to receive the benefits of the ECIA Agreement, as well as a duty to do everything that the ECIA Agreement presupposes that each party will do to accomplish its purpose.

93. Shi is informed and believes, and thereon alleges, that Citcon breached the implied covenant of good faith and fair dealing in the ECIA Agreement, by failing to complete the paperwork for Shi's vested capital interest award grant in CITSEP.  Shi is informed and believes, and thereon alleges, that this failure constitutes a breach of the implied covenant of good faith and fair dealing because such failure and refusal frustrates the primary benefits of the ECIA Agreement for Shi.

94. As a direct and proximate result of Citcon's actions described above, Shi has been deprived of the benefits of the ECIA Agreement, and has suffered damages in an amount according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Claimants pray for judgment as follows:

1. Judgment in Counter-Claimants' favor and against Counter-Defendants on all claims alleged herein;

2. Preliminary and permanent injunctive relief which assures that Counter-Defendants' wrongfully actions will be restrained, as well as all those acting in concert with Counter-Defendants and other appropriate persons and/or entities, irrespective of whether under the control of Counter-Defendants;

3. On the first, second, third, fourth, and seventh claims, compensatory damages, past and future, in an amount adequate to compensate Counter-Claimants;

4. On the first, second, third, and fourth claims, punitive and/or exemplary damages for Counter-Defendants' willful, oppressive, and malicious actions to the maximum amount allowed by law;

5. On the fifth claim, restitution and disgorgement of profits earned by Citcon's unlawful, unfair, and/or fraudulent business practices;

6. On the sixth claim, specific performance of the ECIA Agreement, and in the alternative, compensatory damages in an amount adequate to compensate Shi;

7. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

8. Attorneys' fees and costs incurred by virtue of this action to the extent allowed by law; and

9. Such other and further relief as the Court may deem proper.

DATED:  July 17, 2018                    McMANIS FAULKNER

                                                    /s/  Elizabeth Pipkin
                                        ELIZABETH PIPKIN

Attorneys for Defendants and Counter-Claimants, RiverPay Inc., a Canadian corporation, RiverPay, Inc., a Delaware corporation, and Kenny E. Shi

**DEMAND FOR JURY TRIAL**

Cross-Complainants hereby demand a trial by jury on all issues triable by jury in the above entitled action.

DATED:  July 17, 2018                    McMANIS FAULKNER

                                                    /s/  Elizabeth Pipkin
                                        ELIZABETH PIPKIN

Attorneys for Defendants and Counter-Claimants, RiverPay Inc., a Canadian corporation, RiverPay, Inc., a Delaware corporation, and Kenny E. Shi

RIVERPAY'S AND SHI'S COUNTERCLAIM FOR DAMAGES AND OTHER RELIEF; DEMAND FOR JURY TRIAL, Case No. 5:18-CV-02585-NC Case No. 5:18-CV-02585-NC