UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITCON USA, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>RIVERPAY INC., YUE "YORK" HUA, KENNY SHI, AND HANG "HANK" MIAO,<br><br>    Defendants. | Case No. 18-cv-02585-NC<br><br>**ORDER DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE COUNT FIVE OF THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 70 |

Plaintiff Citcon brings twelve claims for trade secrets misappropriation, unfair business practices, and defamation and trade libel against defendants RiverPay, Hua, Shi, and Miao. *See* Dkt. No. 58. Under California Code of Civil Procedure section 425.16, known as the Anti-SLAPP statute, defendants bring a special motion to strike the defamation claim (count five of the Second Amended Complaint, against all four defendants). The Anti-SLAPP statute allows this special motion to strike when a claim arises under the constitutional right to free speech. *See* Cal. Code Civ. Proc. § 425.16(b)(1). The Court finds that the Anti-SLAPP statute does not apply to count five of the SAC because the alleged statements that form the basis of the claim are not connected to an issue of public interest. Therefore, the special motion to strike count five is DENIED.

## I. FACTUAL BACKGROUND

The following facts, alleged in the Second Amended Complaint, underlie Citcon's defamation claim. *See* Dkt. No. 58.

Plaintiff Citcon provides services to merchants in the United States to make it easier for them to accept payments through major Chinese mobile payment systems. *Id*. at 2. Prior to September 2017, defendant Miao was an employee of a company called DinoLab. *Id*. at 4. Citcon contracted with DinoLab for computer programming, and Miao worked as a programmer for Citcon through DinoLab. *Id*. In September 2017, Citcon's CEO Chuck Huang offered Miao a full-time job at Citcon. *Id*. On October 1, 2017, Miao accepted the offer. *Id*.

After Miao accepted the job offer, tense communications between Citcon and DinoLab ensued; DinoLab's leadership was upset that Citcon had hired Miao. Chuck Huang believed that Miao had initiated the idea, but defendant Kenny Shi, a Citcon employee, had actually first proposed the job offer. *Id*. Many heated phone calls, emails, teleconferences, and in-person meetings about the situation took place over the next few days. *Id*. at 4–5. Eventually, Miao became upset and decided to rescind his acceptance of Citcon's job offer. *Id* at 5.

Soon after, Citcon discovered an article online called "How My Life Was Ruined By A Silicon Valley Startup And Former PayPal & Uber Execs." *Id*. at 5. The article detailed the events surrounding Miao's job offer at Citcon. *Id.* The article's author is listed as "Hank M.," whom Citcon believes to be defendant Miao. *Id*. at Ex. C. In March 2018, Citcon discovered that the article—which was originally posted on "an obscure publication on the Internet"—had been artificially promoted to the first page of Google search results for "Citcon." *Id*. at 7–8. Citcon believes that defendants Shi, Hua, and RiverPay were involved with the writing, publication, and promotion of the article. *Id*. at 22–23.

All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 7, 13.

2

## II. LEGAL STANDARD

California's Anti-SLAPP statute exists to prevent chilling expression of constitutionally-protected free speech by allowing a special motion to strike, at an early stage, of meritless defamation suits. *See Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). The statute "embodies the public policy of encouraging participation in matters of public significance." *Du Charme v. International Brotherhood of Electrical Workers*, 110 Cal. App. 4th 107, 119 (2013). Claims that arise out of acts in furtherance of the right to free speech under the California Constitution or United States Constitution are subject to this statute. *See* Cal. Code Civ. Proc. § 425.16(b)(1). The motion is evaluated in two steps: first, the defendant has the burden to make a prima facie showing that the plaintiff's defamation claim arises from an act in furtherance of the right to free speech. *See U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999). If the defendant does so, then at the second step, the plaintiff must show a likelihood of prevailing on the merits. *See Metabolife*, 264 F.3d at 840.

An act that is in furtherance of the constitutional right of free speech includes "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(a). A "public forum" includes not just physical spaces but also forms of electronic communication such as "web sites that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005); *see also ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1007 (2001).

A statement made in connection with an issue of public interest is most commonly defined as such when: (1) the subject of the statement "was a person or entity in the public eye"; (2) the statement "involved conduct that could affect large numbers of people beyond the direct participants"; or (3) the statement "involved a topic of widespread public interest," meaning that "the statement must in some manner itself contribute to the public

3

debate." *Wibanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004). Issues of public interest also include those which "impact[] a broad segment of society" or "affect[] a community in a manner similar to that of a government entity." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). A matter which is otherwise private does not become an issue of public interest simply by communication of information to a large number of people. *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1133 (2003).

### III. ANALYSIS

Here, the defendants fail at the first step of the Anti-SLAPP analysis to make a prima facie showing that the article allegedly posted by Miao is constitutionally-protected free speech because, while the article was posted on a public forum, it is not "in connection with an issue of public interest." Cal. Code Civ. Proc. § 425.16(a).

#### A. The Article Was Posted on A Public Forum

Under Cal. Code Civ. Proc. § 425.16(a), a public forum includes websites that are free for the public to access. *See Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1576 (2005). Here, Citcon states in the SAC that the article allegedly authored by Miao was originally published in October 2017 on "an obscure publication on the Internet." Dkt. No. 58 at 7. The article could be found by searching Google for "Citcon." *Id.* The most recent version of the article (as of July 2018), attached to the SAC, is available on the website "medium.com." *Id.* at Ex. E. As of March 2018, the piece was one of the first results for "Citcon" in a Google search. *Id.* at 7. The article appears to have been available to the public for free on the internet since its first publication. *Id.* at 21–22. Citcon's defamation claim in part relies upon the free public availability of the article, as it contends that the existence of the article on the internet discouraged potential investors, resulted in lost customers, and interfered with talent recruitment. *Id.* at 23. The article was posted on a public forum.

#### B. The Article Was Not Connected to an Issue of Public Interest

To be eligible for a special motion to strike under the Anti-SLAPP statute, the statement or conduct underlying a defamation claim must be connected to a matter of

public interest. Cal. Code Civ. Proc. § 425.16(e)(3). Though not defined by statute, "judges or attorneys will, or should, know a public concern when they see it." *Du Charme v. Int'l Brotherhood of Elec. Workers*, 110 Cal. App. 4th 107, 117 (2003). Three types of statements are typically considered to regard issues of public interest: (1) statements made about a person or entity in the public eye; (2) statements that affect a large number of people beyond those directly involved; and (3) statements about a topic of "*widespread* public interest." *Id.* (emphasis in original).

### i. Citcon Is Not in the Public Eye

A statement is made in connection with an issue of public interest if it is made about a person or entity in the public eye. A person or entity in the public eye may be a public figure with power or influence in society, or may be someone who has "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Sipple v. Foundation for Nat'l. Progress*, 71 Cal. App. 4th 226, 239 (1999). Examples of public figures include politicians, celebrities, universities, and major sports leagues. *See Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 266 (2013); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 907 (9th Cir. 2010). Even someone who is not already a public figure may be thrust into the public eye. *D.C. v. R.R.*, 182 Cal. App. 4th 97, 110 (2007). Under the Anti-SLAPP statute, the person or entity at issue need not be a public figure but must be in the public eye. *See Wilbanks*, 121 Cal. App. 4th at 898.

Defendants have failed to show that Citcon is in the public eye. Defendants argue that because Citcon is the largest supplier of Chinese payment services in the United States, it is in the public eye. *See* Dkt. No. 70 at 6. Defendants provide as evidence one news article from a publication local to the Twin Cities region of Minnesota containing a quote from Citcon's CEO. *Id.* Defendants also argue that Citcon is in the public eye because the article behind the defamation claim here appears on the first page of Google search results for "Citcon." *Id.*

This showing is insufficient. That Citcon is the largest provider of a particular service does not mean that the service itself, or Citcon in particular, is of any significant

social import; defendants have not shown that Chinese mobile payment services are of interest to the public. A quote in one local business news article does not show that Citcon is well-known to any segment of the general public. And that an article about a company appears as a Google search result for the company's own name is virtually meaningless as to its public social import. Defendants have not shown that Citcon is in the public eye.

### ii. The Article Does Not Affect a Large Number of People Beyond Those Directly Involved

A statement is connected to an issue of public interest if it affects a large number of people beyond those directly involved. Examples of statements that affect a large number of people include those about a medication taken by 1.8 million people and the speech of a candidate for a union representing over 10,000 members. *See DuPont Merck Pharmaceutical Co. v. Superior Court*, 78 Cal. App. 4th 562, 657 (2000); *see also Macias v. Hartwell*, 55 Cal. App. 669, 673–674 (1997).

Here, defendants have not shown that a large number of people outside of the parties to this case were impacted by the article. Defendants point to Citcon's allegation in the SAC that the piece made it more difficult for the company to recruit new employees, customers, or investors. However, the defendants fail to make any argument that this constitutes a "large number" of people. *See Wilbanks*, 121 Cal. App. 4th at 898. Neither does Citcon in its SAC ever allege that any particularly great number of potential employees, customers, or investors ever read the article. The article's impact on even a single investor could have significant monetary consequences for Citcon; this does not mean that a large number of people were affected by it.

### iii. The Article Does Not Address Widespread Public Interest

A statement is connected to an issue of public interest if it involves a topic of widespread public interest. *Wilbanks*, 121 Cal. App. 4th at 898. "[T]he statement must in some manner itself contribute to the public debate." *Id*. This definition has been "broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a

1   governmental entity." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 468, 479
2   (2000).  When the issue is only of interest to a limited portion of the public, the
3   statement(s) must "occur in the context of an ongoing controversy, dispute or discussion"
4   in order to warrant "protection by a statute that embodies the public policy of encouraging
5   *participation* in matters of public significance." *Du Charme*, 110 Cal. App. 4th at 117
6   (emphasis in original).

7       Defendants argue that the hiring practices of Silicon Valley startups are of
8   widespread interest to the public, citing on the existence of movies and television shows
9   about Silicon Valley.  However, the Court is not persuaded that the article here
10  meaningfully discusses such issues.  Rather, the article relays in great detail the events
11  surrounding Citcon's job offer to Miao. *See* Dkt. No. 58, Ex. E.  It shares Miao's
12  emotional turmoil throughout the incident, describes various phone calls and emails and
13  meetings between parties, and airs grievances directed at specific individuals involved. *Id.*
14  Insofar as Citcon's business culture or employment practices are included, these topics are
15  only discussed as to the particulars of Miao's experience—for instance, the article
16  criticizes the salary that he was offered, but makes no mention of Citcon's salaries in
17  general.

18      The parties both rely on *Rivero v. Am. Fed'n of State, Cty. & Mun. Emps., AFL-
19  CIO*, 105 Cal. App. 4th 913, 924 (2003) in arguing whether the instant case involves a
20  matter of widespread public interest.  There, a supervisor of janitors at the International
21  House at the University of California, Berkeley, was fired from his position and sued an
22  employee union for later publishing articles containing claims about his misconduct. *Id.* at
23  916.  The court there held that the articles published by the union did not involve a matter
24  of public interest. *Id.* at 916–917.  The court described the articles as only concerning a
25  small number of people: the eight custodians who were supervised by Rivero. *Id.* at 924.
26  Rivero had never received any media attention prior. *Id.*  Further, only those eight
27  employees and Rivero himself were directly impacted by the situation. *Id.*

28      The article about Citcon allegedly published by Miao is similar.  Like in *Rivero*, the

7

article describes an employment-related dispute between a small number of individuals. The incident received no media attention prior to the publication of this piece. Finally, though defendants argue that Citcon's allegations of impact on potential customers and employees constitute widespread public interest, neither side has successfully shown that the general public, or any significant portion of it, was affected by the article. Even basic statistics about the article's readership are unknown. Like in *Rivero*, despite I ts significance to the parties here, the article's detailed play-by-play of the dramatic dispute between Miao and Citcon is "hardly a matter of public interest." *Id*. at 924.

### C. Probability of Success on the Merits

Only once the defendants have made a prima facie showing that the Anti-SLAPP statutes applies must the plaintiff respond by demonstrating a probability that their claim will succeed on the merits. *See Makaeff*, 715 F.3d at 261. Because the defendants have failed at this first step, Citcon has no burden to show a reasonable probability of prevailing. The Court will therefore not address the arguments made to that effect in the parties' briefing on this matter.

### IV. CONCLUSION

Defendants contend that Citcon "fails to show that the blog post does not concern an issue of public interest." Dkt. No. 92 at 1. This misstates the burden. Rather, the defendants have the burden at the first step of the Anti-SLAPP analysis to make a prima facie showing that the suit arises from an act in furtherance of the right to free speech, meaning that the communication was made in a public forum about a matter of public interest. They have not met this burden. Because the article does not involve a matter of public interest, Court finds that the statute does not apply. The special motion to strike count five of the Second Amended Complaint is DENIED. Count five is also the subject of pending motions to dismiss, which the Court will address in a separate order.

**IT IS SO ORDERED.**

Dated: December 13, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

8