1
2
3
4
5
6
7        UNITED STATES DISTRICT COURT
8       NORTHERN DISTRICT OF CALIFORNIA
9
10    CITCON USA, LLC,
11            Plaintiff,                    Case No. 18-cv-02585-NC
12        v.                              **ORDER GRANTING IN PART AND**
                                          **DENYING IN PART DEFENDANTS'**
13    RIVERPAY INC., YUE "YORK" HUA,      **MOTIONS TO DISMISS**
      KENNY E. SHI, and HANG "HANK"
14    MIAO,                               Re: Dkt. Nos. 63, 64
15            Defendants.

16        Plaintiff Citcon brings twelve claims for trade secret misappropriation and other

17    unfair business practices against three individuals – Hua, Shi, and Miao – and a competitor

18    company, RiverPay.  *See* Dkt. No. 58.  Citcon's First Amended Complaint was largely

19    dismissed with leave to amend, and the Second Amended Complaint now faces two

20    motions to dismiss, one from the individual defendants and one from RiverPay.  *See* Dkt.

21    Nos. 52, 63, 64.   This order resolves both motions to dismiss.

22         The key issue is whether the Second Amended Complaint cures the deficiencies

23    identified by the Court in the first.  The Court finds that Citcon has failed to allege

24    sufficient facts to state a claim for relief as to many of its trade secrets claims, its breach of

25    duty of loyalty claims, its defamation and trade libel claims, its computer fraud claims, its

26    intentional interference with contracts and prospective economic relationship claims, and

27    its conversion of funds claims.  The motions to dismiss are GRANTED as to those claims.

28    The Court grants LEAVE TO AMEND those claims which have been addressed for the

first time in this order. The Court does not grant leave to amend those claims for which Citcon failed to cure deficiencies that the Court previously identified. The Court finds that Citcon has sufficiently pleaded facts to sustain some of its trade secrets claims against Hua and Shi, its conversion claim against Hua, and its unfair competition claim against Hua and Shi. Dkt. No. 58. The motions to dismiss are DENIED as to those claims.

## I.  BACKGROUND

### A. Procedural Background

Citcon's First Amended Complaint brought 11 claims against RiverPay, Hua, Shi, and Miao. Dkt. No. 8. The defendants moved to dismiss all the claims, and the Court granted the motion to dismiss as to every claim against every defendant except for Citcon's breach of duty of loyalty claim against Shi. Dkt. No. 52. The Court granted leave to amend the complaint. *Id*. Citcon filed a Second Amended Complaint with 12 claims, and RiverPay and the individual defendants, collectively, each filed separate motions to dismiss. *See* Dkt. Nos. 58, 63, 64.

In its Second Amended Complaint, Citcon brings 12 claims: (1) misappropriation of trade secrets under 18 U.S.C. § 1836 against RiverPay, Hua, and Shi; (2) misappropriation of trade secrets under California Civil Code § 3426.1 against RiverPay, Hua, and Shi; (3) breach of the duty of loyalty against RiverPay, Hua, and Shi; (4) defamation and trade libel against all defendants; (5) defamation against Miao, Shi, and RiverPay; (6) computer fraud under 18 U.S.C. § 1030 against RiverPay, Hua, and Shi; (7) computer crimes under California Penal Code § 502(c) and (e) against RiverPay, Hua, and Shi; (8) intentional interference with contractual relations against RiverPay, Hua, and Shi; (9) intentional interference with prospective economic relations against RiverPay, Hua, and Shi; (10) conversion of funds against RiverPay, Hua, and Shi; (11) conversion (of a device) against RiverPay and Hua; and (12) unfair competition under California Business and Professions Code § 17200 against Riverpay, Hua, and Shi. *See* Dkt. No. 8.

All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 7 & 13.

**B. Allegations of the Second Amended Complaint**

Citcon alleges the following facts in the Second Amended Complaint. *See* Dkt. No. 58. In deciding this motion, the Court assumes these allegations to be true and construes all facts in Citcon's favor. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

Plaintiff Citcon provides services that allow merchants in the United States to accept payments through Chinese mobile payment systems. Dkt. No. 58 at 2. Defendant RiverPay, founded around March 2017, also provides these services. *Id.* Defendant Hua, the former Head of Operations and Products at Citcon, left Citcon in June 2017 to work at RiverPay and is a co-founder of Riverpay. *Id.* Similarly, in December 2017, Defendant Shi left his role as Vice President of Engineering at Citcon to work at RiverPay. *Id.* at 3. Defendant Miao was formerly employed by a contractor of Citcon called DinoLab; Citcon offered Miao a job in September 2017 which Miao accepted in October 2017, but soon after, Miao decided not to work at Citcon. *Id.* at 4–5.

In September 2016, a Dropbox account was created using Shi's email address which backed up Citcon's customer transactions every day through keys embedded in Citcon's source code. *Id.* at 3.

In June 2017, Hua resigned from Citcon and took with him one of Citcon's point-of-sales devices. *Id.* Citcon has asked that Hua return the machine but he has refused. *Id.* Hua joined RiverPay. *Id.*

In September 2017, Shi told Citcon's CEO Chuck Huang that he was resigning, but Huang then convinced him to withdraw that resignation. *Id.* That same month, Shi created a shareable link to the Dropbox account that he had created the prior year which allowed authorization for access to it. *Id.*

Also in September 2017, Shi worked with Chuck Huang to extend a job offer from Citcon to defendant Miao, who was employed as a programmer at DinoLab. *Id.* at 4. Miao signed an offer letter from Citcon on October 1, 2017. *Id.* A conflict then ensued between Huang and DinoLab's leadership over Miao. *Id.* Miao eventually rescinded his

1   acceptance of Citcon's job offer.  *Id*. at 5.

2          In October 2017, Citcon discovered an article entitled *How My Life Was Ruined By*

3   *A Silicon Valley Startup And Former PayPal & Uber Execs* on the internet.  *Id*.  The

4   article was posted on an obscure website but by March 2018 was on the first or second

5   page of Google search results for "Citcon."  *Id*. at 7.  The article details the events

6   surrounding the job offer from Citcon to Miao and depicts Citcon as employing only one

7   engineer and paying below-market salaries.  *Id*. at 20–21.  Citcon largely disputes the

8   accuracy of the article.  *Id*.

9          In December 2017, Shi resigned from Citcon.  *Id*. at 6.  Shi downloaded documents

10  including source code and customer contact information before leaving.  *Id*. at 7.

11         Also in December 2017, Hua tried to persuade a Citcon employee to leave and work

12  at RiverPay.  *Id*. at 6.  On December 21, that employee as well as many of Citcon's

13  customers and business partners received an email from "Terry Liu" at

14  "clown_111@126.com."  *Id*.; *see also* Dkt. No. 58, Att. D.  The email claimed that

15  Citcon's servers were unprotected and that "Terry Liu" had downloaded Citcon's

16  transaction data and personal customer information.  *See id.*

17         Later, Citcon discovered that the key to the Dropbox account created by Shi was

18  also embedded elsewhere in its source code.  *Id*.  Citcon deciphered the key and gained

19  access to the Dropbox account, at which time Citcon learned that the account was created

20  with Shi's email address and that Shi had created shareable links to it.  *Id*.  Citcon also then

21  discovered that Hua's login to its MySQL database was never disabled when he left

22  Citcon.  *Id*. at 7.  When Citcon disabled Hua's login, the system crashed for a week.  *Id*.

23         In early May 2018, a RiverPay executive proposed a merger between Citcon and

24  RiverPay while also making vague threats to Chuck Huang.  *Id*. at 8.  Citcon rejected the

25  proposal and immediately filed this lawsuit.  *Id*.  Three days later, a cyberattack caused

26  refunds to be issued to some of Citcon's customers.  *See id*. at 8–9.  Citcon had to ask

27  those customers to pay back the hacked refunds.  *Id*.

28

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a claim is dismissed, leave to amend should be "freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Eminence Capital, LLC v. Spechler*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The policy to grant leave to amend is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  The court may decline to grant leave to amend when it is clear that "the complaint could not be saved by amendment." *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996).  In determining whether to grant leave to amend, the court considers a variety of factors, including "repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

### A.   Counts One and Two: Misappropriation of Trade Secrets under the DTSA and CUTSA (Against Defendants Hua, Shi, and RiverPay)

Under both the DTSA and CUTSA, a trade secret is information that (1) derives economic value from not being generally known and (2) is subject to reasonable measures

of secrecy by its owner. *See* 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(2); *see also Rockwell Collins v. Wallace*, No. 17-cv-01369 AG, 2017 WL 5502775, at \*2 (C.D. Cal. Nov. 10, 2017). To plead trade secret misappropriation, a plaintiff must plead that the plaintiff owned a trade secret, that the defendant acquired it through improper means, and that this misappropriation caused the plaintiff damages. *See Rockwell*, 2017 WL 5502775 at \*2.

Here, Citcon alleges that the defendants misappropriated five categories of trade secrets: (1) source code, (2) point-of-sale (POS) device designs, (3) client information, (4) transaction information, and (5) business plans. Dkt. No. 58 at 9–14. Previously, the Court dismissed all of Citcon's trade secrets claims on the grounds that Citcon did not provide trade secrets disclosures in proper unredacted format following the Local Rules 79-5's instructions on motions to seal. *See* Dkt. No. 52 at 4. So, this is the Court's first Order to address the substance of the trade secrets claims. For that reason, the Court grants Citcon LEAVE TO AMEND those trade secrets claims that are dismissed in this Order.

### i. Particularity

To plead a trade secret claim, the plaintiff must first establish that it owned a trade secret. To do so, the plaintiff must describe the alleged trade secret "with sufficient particularity to separate it from matters of general knowledge." *Space Data Corp. v. X,* No. 16-cv-03260 BLF, 2017 WL 5013363, at \*1–2 (N.D. Cal. Feb. 16, 2017). This is not so high a standard as the particularity requirement for fraud claims under Federal Rule of Civil Procedure 9. *See Rockwell*, 2017 WL 5502775 at \*2. But the pleadings must have enough specificity to provide both the Court and defendants with "notice of the boundaries of this case." *Space Data Corp*., 2017 WL 5013363, at \*2.

### 1. Source Code

Citcon alleges that it owns source code for a variety of purposes, and lists the algorithms that were misappropriated. This includes five identified payment processing algorithms. *See* Dkt. No. 81 at 5. The description provided of these algorithms is sufficiently particular to give the defendants notice of the boundaries of the case. *Space*

6

*Data Corp*., 2017 WL 5013363, at *2. At this stage, Citcon is not required to hand over the algorithms themselves or otherwise disclose the source code to give the defendants notice of the contours of this claim in order to prepare a defense. *Id*. Citcon has pleaded enough specificity that the alleged algorithms are distinguished "from matters already known to persons skilled" in the field. *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005).

### 2. POS Design

Citcon alleges that it owns trade secrets in the "hardware and software design of the POS devices." Dkt. No. 58 at 10. Again, this description is particular enough to put defendants on notice as to the contours of this claim. Though brief, the language is similar to that accepted in *Rockwell Collins* (where alleged trade secrets included "technical drawings" and "technical specifications" relating to "flight control systems, methods, assemblies, and services). 2017 WL 5502775 at *2.

### 3. Client Information

Courts have found that client information constitutes a trade secret when that information is "assembled over many years" and allows a company "to tailor[] its service contracts and pricing to the unique needs of its customers." *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511 (9th Cir. 1993). However, "[c]ourts are reluctant to protect customer lists to the extent they embody information which is readily ascertainable through public sources, such as business directories." *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997). A customer list may be a trade secret when a company "has expended time and effort identifying customers with particular needs or characteristics," as opposed to "mere identities and locations of customers where anyone could easily identify the entities as potential customers." *Id.* at 1521–22.

Citcon's client information trade secrets is described as "contact information" and "identifying tokens of Citcon's merchant clients." Dkt. No. 58 at 10. This information is "compiled into a database." *Id*. at 12. In its Opposition to the Motion to Dismiss, Citcon slightly narrows that description: "this is not just about the names of the merchant clients .

. . but the email and/or telephone numbers of the specific contacts of the clients." Dkt. No. 81 at 7. Though it is somewhat unclear whether this information is publicly ascertainable and similarly unclear how many uniquely tailored details about these clients are contained in the database, the Court finds that this pleading is sufficiently particular at this stage in that Citcon seems to allege that it had created a database of direct contact information for specific individuals at its customer companies.

### 4. Transaction Information

The transaction information includes details about every transaction that Citcon processes on behalf of its merchant clients, such as the service charged. This pleading, which includes example categories of such transaction data, is sufficiently particular. However, Citcon includes the phrase "including for example without limitation" when explaining what the transaction information includes. Dkt. No. 58 at 10. This phrase improperly expands the scope of the allegations. *See Becton, Dickinson, and Co. v. Cytek Biosceiences Inc.*, No. 18-cv-009330-MMC, 2018 WL 2298500 (N.D. Cal. May 21, 2018). Phrasing like "including for example without limitation" renders the defendants incapable of knowing the limitations of the claims in preparing their defense. *Id.* This claim survives the Motions to Dismiss only as to the information *actually* pleaded in the SAC, and not to any further detail that Citcon has thus far failed to allege.

### 5. Business Plans

Citcon only describes its business plans as "confidential plans for business development, marketing and sales." Dkt. No. 58 at 10. This high-level overview of this category of trade secrets is not sufficiently pleaded. *See Space Data Corp.*, 2017 WL 5013363, at *2. In its Opposition, Citcon provides no further clarity, calling the "Business Plans" its "blue prints for business development." *See* Dkt. No. 81 at 7. The motions to dismiss the "business plans" trade secret claim, against all defendants, are GRANTED.

### ii. Reasonable Efforts to Maintain Secrecy

To show that it owned a trade secret, the plaintiff must also plead that it took reasonable efforts to maintain secrecy. *See ProStar Wireless Group, LLC v. Domino's Pizza,*

8

*Inc.*, No. 16-cv-05399 WHO, 2017 WL 67075, at *7 (N.D. Cal. Jan. 6, 2017). Examples of such efforts include advising employees of the secret, limiting access to it to a "need to know basis," requiring confidentiality agreements, or keeping information under lock. *Id*. The plaintiff must plead more than simply that they did not share the information. *Id*. An employer may inform its employees as to the secrecy of a trade secret "through an employment agreement" or "employee handbook." *Morelife, Inc*. 56 Cal. App. 4th at 1520.

Citcon alleges that it kept all the pleaded categories of trade secret information secret by "limiting access" to it, "guarding electronic access points," and "implementing employment policies requiring employees to abide by confidentiality agreements." Dkt. No. 58 at 11. The POS designs are further protected by requiring merchant clients to sign a confidentiality agreement that prohibits reverse-engineering the device. *Id*. In its Opposition to the Motion to Dismiss, Citcon adds the claim that the "policies" and "agreement" mentioned in the SAC refer to the "common employment agreement and employee handbook." Dkt. No. 63 at 2. This pleading is sufficient to show that Citcon took reasonable measures to maintain the secrecy of this information.

### iii. Misappropriation

A trade secret misappropriation claim requires pleading that the defendants misappropriated the trade secrets; that is, acquired them through improper means. *See* 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(2); *see also Rockwell*, 2017 WL 5502775 at *2. Here, the Court addresses the claim as to each defendant and each alleged trade secret separately because Citcon pleads different facts for each defendant regarding misappropriation.

### 1. Hua

Citcon pleads the following as to defendant Hua: "Hua took the source code and the POS Designs when he departed Citcon in June 2017." Dkt. No. 58 at 12. This is essentially a legal conclusion with no factual basis. The Court is unsure whether Citcon intends to plead that Hua took the POS *designs* when Hua took the POS *device*. *See id.* at 11. Citcon alleges that Hua "took possession of one such device when he was Citcon's employee . . . Citcon

asked Hua repeatedly to return the POS device, but Hua refused." *Id*. at 29. Elsewhere, Citcon implies that the POS designs can be ascertained via a device. *Id.* at 11 (describing the merchant client confidentiality agreement "which prohibits reverse-engineering of the POS devices"). Reading these facts in the light most favorable to Citcon, the Court infers that Hua may have taken POS *designs* by taking a *device*, and as such the Court DENIES the motion to dismiss the trade secret misappropriation claim for the POS designs as to Hua.

Citcon seems to allege that Hua took the client information and transaction information by maintaining his login and password to Citcon's MySQL database after his departure. *Id*. at 7. It is unclear whether Citcon believes that Hua was actually responsible for that prolonged access (stating that "Hua *was still allowed* to keep his login"). *Id.* (emphasis added). It is also unclear if, how, or when Hua took advantage of the access to log into the database. That his login and password were still functioning does not mean that Hua in fact logged into the database or then acquired any customer data. In other words, Citcon essentially alleges that Hua kept a key to a locked room but does not allege that Hua ever unlocked the room to access its contents. Citcon must plead some facts to support actual misappropriation. Because the Court dismissed this claim previously on different grounds, Citcon may have leave to amend. *See* Dkt. No. 52 at 4. The motion to dismiss the trade secrets misappropriation claim of customer information as to Hua is GRANTED with LEAVE TO AMEND.

Similarly, Citcon does not allege facts to show that Hua misappropriated the transaction information. Citcon seems to suggest that Hua improperly acquired the transaction information via the Dropbox account allegedly created by defendant Shi. *See* Dkt. No. 58 at 12. However, Citcon does not allege that Hua was involved at all in the creation or use of the Dropbox account. Instead, Citcon only lists legal conclusions (e.g. that "Hua and She conspired to set up the secret Dropbox account," Dkt. No. 58 at 12) to suggest Hua's involvement in making the account. The only factual assertion regarding the Dropbox account is that the "account was set up using Shi's email address." *Id*. at 3. Citcon does not have any factual basis for its claim that Hua later took transaction information

through the Dropbox account. The motion to dismiss the trade secret misappropriation claim for the transaction information as to Hua is GRANTED with LEAVE TO AMEND.

As to defendant Hua, the motion to dismiss the trade secret claims is GRANTED as to the source code, customer information, and transaction information, but is DENIED as to the POS designs.

### 2. Shi

Shi allegedly downloaded the most updated versions of the source code for Citcon's system software and e-commerce interface software, as well as new source code development files, shortly before he quit Citcon. Dkt. No. 58 at 7. He also downloaded the client information database. *Id*. Citcon alleges no facts as to Shi's misappropriation of the POS device design. Shi allegedly stole the transaction information via the secret Dropbox account, which Citcon claims was set up using Shi's email address and which backed up customer transactions daily. *Id*. It was also Shi who allegedly created a new sharable link for the Dropbox account a year after it was originally set up. *Id*. at 3. These facts suggest that Shi could have misappropriated the transaction information.

As to defendant Shi, the motion to dismiss the trade secret claims is GRANTED as to the POS designs with LEAVE TO AMEND. The motion to dismiss is DENIED as to source code, the client information, and the transaction information.

### 3. RiverPay

Citcon has three theories of liability for trade secret misappropriation as to defendant RiverPay. First, Citcon seems to suggest that RiverPay is directly liable for the trade secret misappropriaton because "RiverPay as a company has used Citcon's trade secrets to compete with Citcon while knowing they were misappropriated from Citcon." Dkt. No. 58 at 12. This theory fails, as Citcon has pleaded no facts to allege that Citcon was involved in misappropriating any of its five categories of trade secrets. Second, Citcon puts forward a theory of respondeat superior in that RiverPay is vicariously liable for the acts of its employees when they acted within the course and scope of their employment. *See* Dkt. No. 63 at 2. This too fails: primarily, because Citcon alleges facts

11

that mostly occurred while Hua and Shi were employed by Citcon, not RiverPay; further, because Citcon does not plead any facts to show that Hua or Shi's actions were in the scope of their later employment at RiverPay. Third, Citcon alludes at a conspiracy theory for the trade secret claims. *See* Dkt. No. 63 at 1. This theory fails as well because Citcon does not plead a necessary element of a conspiracy claim: that any agreement existed between RiverPay and any other defendant for any trade secret misappropriation. *See Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994). The motion to dismiss the trade secrets claims against RiverPay is GRANTED with LEAVE TO AMEND.

Under Counts One and Two, for misappropriation of trade secrets under DTSA and CUTSA, the motions to dismissed are DENIED as to: misappropriation of the source code, the client information, and the transaction information, against Shi; and misappropriation of the POS designs against defendant Hua. The motions to dismiss are GRANTED with LEAVE TO AMEND as to: misappropriation of the customer information and transaction information against Hua; misappropriation of the POS designs against Shi; and all trade secrets claims against RiverPay.

**B. Count Three: Breach of Duty of Loyalty (Against Defendants Hua, Shi, and RiverPay)**

To state a claim for breach of duty of loyalty, Citcon must plead: (1) the existence of a relationship that gives rise to a duty of loyalty; (2) breach of that duty; and (3) damages proximately caused. *See Henry Schein, Inc. v. Cook*, No. 16-cv-03166 JST, 2017 WL 783617, at *3 (N.D. Cal. Mar. 1, 2017). Citcon brings this claim against Riverpay, Hua, and Shi. *See* Dkt. No. 58 at 14.

### i. Hua

Hua had a duty of loyalty to Citcon as an employee. *Fowler v. Varian Associates, Inc.*, 196 Cal. App. 3d 34 (1987). But Citcon does not plead any facts to support its allegation that Hua ever breached that duty. As discussed above, the only facts alleged about the Dropbox account are that it was created by Shi using Shi's email address in September

12

2016, and that Shi allowed further access to the account the following year. Dkt. No. 58 at 3, 12. Citcon also pleads that Hua's login to the MySQL database remained active after his departure but this does not show that Hua took any actions associated with the database that would constitute breaching his duty of loyalty. The Court dismissed this claim on the same grounds already and thus does not grant leave to amend this claim. *See* Dkt. No. 52 at 5. The motion to dismiss the breach of duty of loyalty claim against Hua is GRANTED.

### ii. Shi

Likewise, Shi had a duty of loyalty to Citcon as its employee. Citcon claims that, while employed by Citcon, Shi breached this duty by setting up the secret Dropbox account to automatically copy Citcon's transaction information and by downloading many confidential documents prior to his departure. These facts are sufficient to plausibly allege a breach of the duty of loyalty. However, this claim is preempted by the CUTSA, as discussed in Section I, below.

### iii. RiverPay

Citcon does not put forward any theory under which RiverPay could owe it a duty of loyalty in the first place, let alone that RiverPay breached that duty. RiverPay is a competitor company to Citcon. It owes Citcon no loyalty. Nor does RiverPay allege any facts that could bolster its claim that RiverPay "aided and abetted" or conspired to create a breach by Shi and Hua. *See Applied Equip. Corp.*, 869 P. 2d at 457 (holding that the coconspirator must be legally capable of committing the tort for which it is held liable); *see also Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014) (holding that to aid and abet a breach of fiduciary duty, the plaintiff must plead that the defendant had actual knowledge of the breach and provided substantial assistance or encouragement in it). Citcon failed to establish this foundation in its First Amended Complaint, leading to dismissal, so the Court does not grant further leave to amend. *See* Dkt. No. 52 at 5 (finding that "Citcon has failed to allege any facts that establish the first element required to state a claim for breach of duty of loyalty: the existence of a relationship that gives rise to the duty.") The motion to dismiss the breach of the duty of loyalty claim against RiverPay is GRANTED.

**C. Count Four: Defamation and Trade Libel (Based on the Terry Liu Email; Against Defendants Hua, Shi, Miao, and RiverPay)**

To plead a claim for defamation, the plaintiff must show "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injury or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999); *see also* Cal. Civ. Code §§ 45, 46. A libelous statement is one which "exposes any person to hatred, contempt, or ridicule." Cal. Civ. Code § 45. A statement that is libelous on its face constitutes defamation per se, including those which charge someone with a crime or accuse someone of having a disease. *See* Cal. Civ. Code §§ 45a, 46. On the other hand, if words are ambiguous or are only defamatory in the light of particular circumstances, the plaintiff must plead that the words *as used* have a specific meaning that makes them defamatory. *See Smith*, 72 Cal. App. 4th at 645. Furthermore, expressions of opinion are not actionable as defamation. *See Taus v. Loftus*, 151 P.3d 1185, 1209 (Cal. 2007). When the reader "understands that such supported opinions represent the writer's interpretation of the facts presented . . . the reader is free to draw his or her own conclusions" and the statement is thus not defamatory. *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995).

Trade libel is the intentional disparagement of property that results in pecuniary damage. *Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988). A claim for trade libel requires pleading: (1) a publication, (2) which induces other not to deal with plaintiff, and (3) special damages. *Id*.

### i. Defamation *Per Se*

Citcon alleges that an email was sent from "Terry Liu" to many of its customers, business partners, and potential customers that falsely stated that Citcon's server and systems were not secure. Dkt. No. 58 at 6. Citcon explains the statements in the email expose it to contempt, ridicule, and shame for having a "lax attitude toward security," and names specific clients whose relationships were damaged by the emails. *Id*. at 17.

In the SAC, Citcon calls the email "defamatory per se." *Id*. at 16. But Citcon offers no facts to support the idea that the email is libelous on its face; instead, Citcon explains the

14

context which caused the email to expose Citcon to injury. *Id*. That such an explanation is necessary shows that the email is not defamatory per se. The Court finds, though, that Citcon pleads sufficient facts to suggest that the email's content, as it was understood by its particular recipients, was defamatory.

### ii. Authorship

Citcon does not once mention defendant Miao in its complaint or other papers regarding this count, but still brings the claim against Miao.

As to the other defendants, Citcon concludes that "Hua, in collusion with Shi, on behalf of and for the benefit of RiverPay," was responsible for the email. *Id*. at 16. Citcon does not explain why it believes Hua was the actual author of the email or in what way Shi and RiverPay "collude[ed]" with Hua to send it. *See* Dkt. No. 64 at 10. The fact alleged to support this conclusion is that, outside of Citcon, only Hua and Shi knew the identities of the email's recipients, and "knew these executives' connections with Citcon and had access to their contact information through their Citcon employment." *Id*. at 6.

The Court strains to make an inference of Hua's authorship of the email. Indeed, even Citcon is uncommitted to this theory: in its Opposition to the Motion to Dismiss, Citcon writes, "Hua, or whoever else launched the email attack," conceding that Hua may not have been liable. Dkt. No. 82 at 6.

Citcon has not pleaded sufficient facts to support a reasonable inference that any of the defendants were the authors of the email. The Court identified this deficiency in its previous order on the motion to dismiss the First Amended Complaint, stating that "Citcon provides no facts at all to support its conclusion that Hua sent the email or that he did so in 'collusion' with Shi and RiverPay . . . Citcon must allege facts – beyond mere conclusory statements – regarding the authorship of the email for the court to make a reasonable inference that any of the defendants are responsible for having sent it." Dkt. No. 52 at 6. Having been granted an opportunity to cure this deficiency, the Court finds that further amendment would be futile. The motion to dismiss count four, defamation and trade libel based on the Terry Liu email as to all defendants, is GRANTED.

15

### D. Count Five: Defamation (Base on the Miao Article, Against Defendants Miao, Shi, and RiverPay)

In October 2017, Citcon discovered an article on the internet entitled *How My Life Was Ruined By A Silicon Valley Startup and Former PayPal & Uber Execs*. Dkt. No. 58 at 5. The article describes at length the events associated with Miao's job offer from Citcon. *Id.* It also states that Citcon only employed one engineer and offered Miao too low a salary. *Id.* at Ex. C. In March 2018, Citcon discovered that the ranking of the article was being artificially promoted to appear on the first or second page of a Google search for "Citcon." Citcon believes that Miao wrote the piece in collusion with Shi, and that RiverPay promoted it.

In the SAC, Citcon dissects the Miao article in excruciating detail, asserting its contrary interpretation of the many phone calls, emails, and other communications between Miao, Shi, and others at Citcon and DinoLab. *See* Dkt. No. 58 at 19–23. This back-and-forth illustrates precisely why the article does not constitute defamation: the parties here each put forth their own "interpretation of the facts presented," which means that their statements are "expressions of opinion" which are "not actionable" as defamation claims. *Partington*, 56 F.3d at 1156; *Taus*, 151 P.3d at 1209. The email describes the players' intentions (e.g. "I am assuming Chuck was just scared"), emotions (e.g. "I felt betrayed"), and opinions (e.g. "what they did was disgusting"). Throughout the article, the author uses phrases like "I felt," "I am assuming," "maybe," "looking back," "I was really excited," and "I was shocked!". Dkt. No. 58 at Ex. C. It is a personal story, expressing personal impressions, rather than a presentation of facts. Here, the reader is free to draw their own conclusions about the hiring dispute rather than take the account in the article as fact.

The Court finds that amendment of this claim would be futile because the claim is dismissed based on the nature of the article itself, the contents of which are not in dispute. Because the article does not constitute defamation, the motions to dismiss count five for defamation and trade libel against defendants Miao, Shi, and RiverPay are GRANTED without leave to amend.

**E. Counts Six and Seven: Computer Fraud and Abuse (Against Defendants Hua, Shi, and RiverPay)**

Citcon brings computer fraud and computer crime claims under 18 U.S.C. § 1030 and Cal. Penal Code §§ 502(c) and (e). Both statutes require that the defendants accessed a computer without authorization or permission. *See Facebook Inc. v. Power Ventures, Inc.* 844 F.3d 1058, 1069 (9th Cir. 2016) (stating that the analysis under 18 U.S.C. § 1030 and Cal. Penal Code §§ 502 is similar despite slightly different wording in each statute). Thus, pleading a violation of either statute requires showing what access was authorized in order to allege that the authorized access was exceeded. *See id.* at 1067. Not all computer-based torts fall under these statutes; misuse or misappropriation of information via a computer is not considered a violation, nor is a breach of the duty of loyalty via a computer. *See LVRC Holdings LLC v. Brekka*, 581 F.3d 581 F.3d 1127, 1135 n.7 (9th Cir. 2009); *see also In re Gen. Capacitor*, 325 F. Supp. 3d 1029, 1040 (N.D. Cal. 2018).

Here, Citcon does not clarify what authorization any of the defendants had (or did not have) to its computer systems at any particular time. The Court then cannot analyze whether such authorization was exceeded. Instead, Citcon repeatedly uses words like "wrongfully" and "knowingly" and "without permission," essentially lifting verbiage directly from the statutes instead of pleading facts to support these claims. *See* Dkt. No. 58 at 26–17. Similarly, the Court dismissed these claims from the First Amended Complaint because "Citcon [did] not allege sufficient facts regarding the 'authorization' that Hua or Shi had and/or exceeded to state a claim." Dkt. No. 52 at 9. Finding that Citcon already had an opportunity to cure this deficiency but failed, the motions to dismiss counts six and seven are GRANTED without leave to amend.

**F. Counts Eight and Nine: Intentional Interference with Contractual Relations and Intentional Interference with Prospective Economic Relations (Against Defendants Hua, Shi, and RiverPay)**

Citcon's claims for intentional interference with contractual and prospective economic relations are based wholly on the Terry Liu emails. The Court has found that the

17

SAC contains insufficient facts to show that any of the defendants were responsible for sending the Terry Liu emails. Rather than plead facts to allow a reasonable inference that the defendants are liable, Citcon says that the emails were "defamatory and sabatoging [sic] only, having no direct benefit to the attacker . . . [t]hus, Citcon knew it was a job by a close competitor connected to Hua and Shi, which could only be RiverPay." Dkt. No. 58 at 7. Citcon's allegation that the defendants sent the emails is speculative and conclusory. The motions to dismiss counts eight and nine are GRANTED.

### G. Count Ten: Conversion of Funds (Against Defendants Hua, Shi, and RiverPay)

The conversion of funds claim centers around what Citcon calls the "Refund Attack." Dkt. No. 58 at 9. In short, this incident consisted of refunds being issued to Citcon's clients that allegedly caused both financial and reputational damages. *Id*. Citcon claims that Hua and Shi had specialized knowledge that would have allowed them to orchestrate such an attack. *Id*. Citcon describes, rather vaguely, that the attack had "all the 'fingerprints' of Shi, Hua, and RiverpPay." *Id*. However, like with the Terry Liu emails, Citcon admits that other people also had this knowledge. No facts support an inference that Hua or Shi in particular were the perpetrators.

Citcon blames RiverPay for the Refund Attack in essentially the same manner as it does the Terry Liu emails, stating that because the attack was "purely a sabotage," it must have come from its closest competitor, RiverPay. This is not a plausible fact. The only facts pleaded to support of RiverPay's liability for the "Refund Attack" is a phone call between the CEOs of RiverPay and Citcon two weeks prior to the attack, where RiverPay's CEO threatened a "bloody fight" between the companies and "intimated that RiverPay knew Citcon's inside information and could inflict severe damages on Citcon." *Id*. at 8. These vague, generalized threats are not enough to show that RiverPay was liable for the issuance of the refunds.

This claim was not addressed in the previous order on the motion to dismiss the First Amended Complaint, so Citcon has not yet been granted an opportunity to amend this claim. The motions to dismiss the conversion of funds claims against all defendants are GRANTED

with LEAVE TO AMEND.

## H. Count Twelve[1]: Unfair Competition (Against Defendants Hua, Shi, and RiverPay)

Under Cal. Bus. and Prof. Code § 17200, conduct deemed unlawful, unfair, or fraudulent under other statutes is actionable as unfair competition. *See Cel-Tech, Inc. v. Los Angeles Cellular Co.*, 20 Cal. 4th 163, 180 (1999). A claim for unfair competition may also be stated without breach of any other law. *See Smith v. State Farm*, 93 Cal. App. 4th 700, 718 (2001). Here, Citcon's claim for unfair competition survives insofar as do other claims. No claims remain against RiverPay. The individual defendants' motion to dismiss count twelve are DENIED, and the RiverPay entity's motion to dismiss count twelve is GRANTED with LEAVE TO AMEND only insofar as Citcon has been granted leave to amend any other claims against RiverPay.

## I. CUTSA Preemption

The CUTSA preempts claims that are based on the same nucleus of facts as trade secret misappropriation. *Becton*, 2018 WL 2298500 at *5. At the pleading stage, this preemption analysis asks "whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Id*. (quoting *Waymo LLC v. Uber Technologies, Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. June 8, 2017)). Here, defendants argue that three of Citcon's claims are preempted by the CUTSA: count three (breach of duty of loyalty), count eleven (conversion of the POS device), and count twelve (unfair competition). *See* Dkt. No. 64 at 24.

The breach of duty of loyalty claim has been dismissed in this Order as to all defendants except Shi. The factual basis underlying the claim against to Shi shares a common nucleus of operative fact with the trade secret misappropriation claim: in essence,

---

[1] The defendants do not move to dismiss count eleven, for conversion of a POS device against Defendants Hua and RiverPay, but argue that this count is preempted by the CUTSA. The Court addresses this question in Section I.

both rely on the allegations that Shi set up the Dropbox account to copy transaction information, and that he downloaded source code and customer information before leaving Citcon. Stripped of these facts, nothing remains of the SAC's allegations that Shi breached the duty of loyalty to Citcon. Therefore, the motion to dismiss the breach of duty of loyalty claim against defendant Shi is GRANTED because it is preempted by the CUTSA.

The conversion of the POS device is based on different facts than the trade secrets claims. In their briefing on this subject, the defendants seem to conflate "POS designs" and "POS device." In its trade secrets claims, Citcon only alleges that the defendants stole the designs for the POS devices. The conversion claim, on the contrary, is simply based on Hua physically taking with him one POS device. These factual bases differ. The conversion claim against Hua is not preempted by the CUTSA.

Finally, the unfair competition claim is not preempted by the CUTSA because it is based in part on the conversion claim against Hua.

## IV. CONCLUSION

For the reasons stated above, the motions to dismiss the Second Amended Complaint are GRANTED with LEAVE TO AMEND as to:

- Counts One and Two:
    - Trade secret misappropriation of "business plans" against Hua, Shi, and RiverPay
    - Trade secret misappropriation of "customer information" against Hua
    - Trade secret misappropriation of "transaction information" against Hua
    - Trade secret misappropriation of "source code" against Hua
    - Trade secret misappropriation of "POS designs" against Shi
    - All trade secrets claims against RiverPay
- Count Ten (conversion of funds) against Hua, Shi, and RiverPay

The motions to dismiss the Second Amended Complaint are GRANTED without leave to amend as to:

- Count Three (breach of duty of loyalty) against Hua, Shi, and RiverPay
- Count Four (defamation and trade libel, based on the Terry Liu email) against all defendants
- Count Five (defamation, based on the Miao article) against Miao, Shi, and RiverPay
- Counts Six and Seven (computer fraud and abuse) against all Hua, Shi, and RiverPay

- Counts Eight and Nine (intentional interference with contractual relations and intentional interference with prospective economic relations) against Hua, Shi, and RiverPay
- Count Twelve (unfair competition) against RiverPay

The motions to dismiss the Second Amended Complaint are DENIED as to:
- Counts One and Two:
  - Trade secret misappropriation of "POS designs" against Hua
  - Trade secret misappropriation of "source code" against Shi
  - Trade secret misappropriation of "client information" against Shi
  - Trade secret misappropriation of "transaction information" against Shi
- Count Eleven (conversion of a POS device) against Hua
- Count Twelve (unfair competition) against Hua and Shi

No claims remain against defendant Miao; all claims against defendant RiverPay have been dismissed, some with leave to amend. Citcon may file its Third Amended Complaint within 14 days of this Order, by **January 10, 2019**, but may not add additional defendants or claims to that complaint without advance leave of Court. Defendants Shi and Hua may wait to file their Answer or Motion to Dismiss until 14 days after the Third Amended Complaint has been filed.

**IT IS SO ORDERED.**

Dated: December 27, 2018 _____

NATHANAEL M. COUSINS
United States Magistrate Judge