JAMES McMANIS (40958)
ELIZABETH PIPKIN (243611)
CHRISTINE PEEK (234573)
MARWA ELZANKALY (206658)
CHRISTOPHER ROSARIO (326436)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:     (408) 279-8700
Facsimile:     (408) 279-3244
Email:         epipkin@mcmanislaw.com

Attorneys for Defendants,
RiverPay Inc., a Canadian corporation,
RiverPay, Inc., a Delaware corporation,
Yue ("York") Hua, Kenny E Shi

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITCON USA LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RIVERPAY INC., a Canadian corporation, RIVERPAY, INC., a Delaware corporation, YUE HUA, a.k.a., YORK HUA, an individual, KENNY E SHI, an individual, and DOES 1 through 20,<br><br>　　　　　　Defendants.<br><hr>RIVERPAY INC., a Canadian corporation, RIVERPAY, INC., a Delaware corporation, and KENNY E SHI, an individual,<br><br>　　　　　　Counter-Claimants,<br><br>　　v.<br><br>CITCON USA, LLC, a California limited liability company, WEI JIANG, an individual, and DOES 1 through 20,<br><br>　　　　　　Counter-Defendants. | Case No. 5:18-CV-02585-NC<br><br>**DECLARATION OF MARWA ELZANKALY IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS FOR VIOLATION OF LOCAL AND ETHICAL RULES**<br><br>Date:　　September 11, 2019<br>Time:　　1:00 p.m.<br>Ctrm:　　5, 4th Floor<br>Judge:　　The Hon. Nathanael Cousins |

1    I, Marwa Elzankaly, declare:

2    1.    I am an attorney licensed to practice before the United States District Court for

3    the Northern District of California.  I am Of Counsel at the law firm of McManis Faulkner,

4    attorneys of record for defendants RiverPay Inc. (Canada), RiverPay, Inc. (Delaware), Yue

5    ("York") Hua, and Kenny E Shi, (collectively "defendants"), in the above-entitled action.  I

6    submit this declaration in support of Defendants' Motion for Sanctions for Violation of Local

7    and Ethical Rules.  This declaration is based on my own personal knowledge, except where

8    stated on information and belief.  If called to testify to the facts asserted herein, I could and

9    would testify competently.

10    2.    I am informed and believe that plaintiff's counsel, J. James Li, sent or caused to

11    be sent the letter attached as **Exhibit A** to York Hua, Kenny Shi, and Ryan Zheng, on or about

12    May 6, 2018.

13    3.    On April 29, 2019 and May 1, 2019, Mr. Li took the deposition of defendant York

14    Hua.  I attended the deposition.  Attached as **Exhibit B** are true and correct copies of relevant

15    portions of the deposition transcript from May 1, 2019.

16    4.    I am familiar with McManis Faulkner's record-keeping practices and its files in

17    this case.  On or about June 10, 2019, Mr. Li sent a letter addressed to Elizabeth Pipkin, a partner

18    in our office, accusing defendants in this action of committing attacks on the servers of Citcon,

19    Alipay, and WeChatPay and targeting Citcon's transactions.  Attached as **Exhibit C** is a true and

20    correct copy of Mr. Li's June 10, 2019 letter.

21    5.    On or about July 11, 2019, I asked Mr. Li to stop sending threatening

22    communications accusing defendants of committing crimes.  Mr. Li would not agree to stop

23    sending such communications.

24    6.    On or about August 2, 2019, Mr. Li sent a letter to Ray Yang, a member of

25    RiverPay's Board of Directors and a Partner at Marathon Venture Capital.  Attached as **Exhibit**

26    **D** is a true and correct copy of Mr. Li's letter to Mr. Yang.

27    7.    On August 6, 2019, I sent an email to Mr. Li, asking him to retract his August 2,

28    2019 letter and any other similar correspondence he may have sent to RiverPay's investors,

1

ELZANKALY DECL. ISO DEFENDANTS' MOTION FOR SANCTIONS FOR VIOLATION OF LOCAL AND
ETHICAL RULES, Case No. 5:18-CV-02585-NC

1  board members, or any other witnesses in this matter.  Mr. Li would not agree to retract his

2  August 2, 2019 letter unless I provided "evidence that this person ... is not a manager or partner

3  of Marathon[.]"  Attached as **Exhibit E** is a true and correct copy of the August 6, 2019 email

4  exchange between me and Mr. Li.

5      8.    Attached as **Exhibit F** is a true and correct copy of the transcript of the August

6  16, 2019 case management conference in this matter.

7      9.    Attached as **Exhibit G** is a true and correct copy of the transcript of the May 29,

8  2019 hearing on defendants' motion for sanctions, as well as defendants' summary judgment

9  motion.

10      I declare under penalty of perjury under the laws of the United States that the foregoing is

11  true and correct.

12  DATED:  August 23, 2019

13                                    /s/ Marwa Elzankaly
                                       MARWA ELZANKALY
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ELZANKALY DECL. ISO DEFENDANTS' MOTION FOR SANCTIONS FOR VIOLATION OF LOCAL AND
ETHICAL RULES, Case No. 5:18-cv-02585-NC

# EXHIBIT A

**LiLaw Inc. – A Law Corporation**
5050 El Camino Real, Suite 200, Los Altos, CA 94022
Tel. (650) 521-5956    Fax (650) 521-5955    Web: www.lilaw.us

J. James Li, Ph.D. (lij@lilaw.us)

May 6, 2018

York Hua (yorkhua@gmail.com, york@riverpayment.com)

Kenny Shi (kenny.shi@gmail.com)

Ryan Zheng (ryan@riverpayment.com)

RiverPay, Inc.

VIA EMAIL

Re:  Cease and Desist Notice Re: Illegal Hacking

Messrs. Hua, Shi and Zheng:

We are litigation counsel for Citcon, Inc. On behalf of Citcon, we hereby demand that you cease and desist your illegal hacking of Citcon's computer system.

As you know, Citcon filed a civil lawsuit against you on May 2, 2018 for, inter alia, computer fraud and crime, in connection with your creation of the secret Internet account for copying Citcon's confidential business information. It appears that you have double-downed on your computer crimes after you learned of the lawsuit, by your recent attacks against Citcon's computer system on May 5, 2018. While Citcon's investigation of the computer crimes is still ongoing, we demand that you immediately stop any hacking or attempted hacking of Citcon's computer system. The access of our Company data and system, regardless of forms, is unauthorized and thus illegal.

You would be seriously mistaken if you think resorting to the criminal hacking of Citcon's communication systems would intimate Citcon and would be a strong posturing for you to respond Citcon's lawsuit. Not only will your hacking and threatened further hacking aggravate your liability in the civil lawsuit, your hacking action has exposed you to criminal prosecution in the United States and in Canada:

- Your hacking activity will be subject to criminal prosecution under the U.S. criminal statute, 18 U.S.C. § 1030(a)(2), (4) & (5), for punishment of up to 10 years of imprisonment and monetary fine.
- Your hacking activity will subject you to criminal prosecution by the State of California for computer crimes under California Penal Code § 502(c) for imprisonment of up to three years and $10,000 fine.

- Your hacking activity will subject you to criminal prosecution in Canada under the Criminal Code of Canada § 342.1 for up to 10 years of imprisonment.

We urge you to immediately stop your hacking activity and properly respond to our civil lawsuit, to resolve the legal disputes between you and Citcon.

If you have any questions, please do not hesitate to contact us or our client Citcon.

Very truly yours,

J. James Li, Ph.D.

# EXHIBIT  B

HIGHLY CONFIDENTIAL

```
1                UNITED STATES DISTRICT COURT

2               NORTHERN DISTRICT OF CALIFORNIA

3                   SAN FRANCISCO DIVISION

4    CITCON USA LLC,              ) Case No.

5             Plaintiff,          ) 5:18-cv-02585-NC

6          vs.                    )

7    RIVERPAY INC., a Canadian    )    Volume 2

8    corporation, RIVERPAY, INC., )

9    a Delaware corporation,      )

10   YUE HUA a.k.a. YORK HUA, an  )

11   individual, KENNY E. SHI, an )

12   individual, and DOES 1       )

13   through 20,                  )

14             Defendants.        )

15   _____)

16   And Related Counter Claims   )

17   _____)

18       HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

19         VIDEOTAPED DEPOSITION OF YUE HUA

20              (30(b)(6) RIVERPAY INC.)

21             Los Altos, California

22             Wednesday, May 1, 2019

23   REPORTED BY:  Ashala Tylor, CSR #2436, CLR, CRR, RPR

24   JOB NO. 3379144

25   PAGES 1 - 230
```

Page 1

HIGHLY CONFIDENTIAL

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4

5    CITCON USA LLC,              ) Case No.

6              Plaintiff,         ) 5:18-cv-02585-NC

7         vs.                     )

8    RIVERPAY INC., a Canadian    )    Volume 2

9    corporation, RIVERPAY, INC., )

10   a Delaware corporation,      )

11   YUE HUA a.k.a. YORK HUA, an  )

12   individual, KENNY E. SHI, an )

13   individual, and DOES 1       )

14   through 20,                  )

15             Defendants.        )

16   _____)

17   And Related Counter Claims   )

18   _____)

19

20        Videotaped deposition of YUE HUA, taken at

21   5050 El Camino Real, Suite 200, Los Altos, California,

22   commencing at 9:52 a.m. and ending at 5:10 p.m., on

23   Wednesday, May 1, 2019, before Ashala Tylor, CSR No.

24   2436, RPR, CRR, CLR.

25

                                        Page 2

HIGHLY CONFIDENTIAL

```
1    APPEARANCES OF COUNSEL:

2    FOR THE PLAINTIFF AND COUNTER-DEFENDANT CITCON USA LLC,

3    AND COUNTER-DEFENDANT WEI JIANG:

4         LILAW INC., A LAW CORPORATION

5         BY:  J. JAMES LI, PH.D., ESQ.

6              ANDREW M. PIERZ, ESQ.

7         5050 El Camino Real, Suite 200

8         Los Altos, California  94022

9         650.521.5956

10        lij@lilaw.us

11        pierza@lilaw.us

12

13   FOR THE DEFENDANT AND COUNTER-PLAINTIFF RIVERPAY INC,

14   YUE HUA AND KENNY E. SHI:

15        MCMANIS FAULKNER

16        BY:  ELIZABETH PIPKIN, ESQ.

17             MARWA ELZANKALY, ESQ.

18        Fairmont Plaza, 10th Floor

19        50 West San Fernando Street

20        San Jose, California  95113

21        408.279.8700

22        epipkin@mcmanislaw.com

23        melzankaly@mcmanislaw.com

24   Also Present:

25        Peter Yaroschuk, Videographer
```

Page 3

HIGHLY CONFIDENTIAL

```
1                          I N D E X
2  WITNESS            EXAMINATION BY              PAGE
3  Yue Hua
4                      Mr. Li                  10, 147
5                      Mr. Pierz                   88
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                            Page 4
```

HIGHLY CONFIDENTIAL

| | | |
|---|---|---|
| 1 | several times? | 02:58 |
| 2 | A.   We met in Beijing and also in Shanghai a | |
| 3 | few times.   Sometimes in Shanghai. | |
| 4 | Q.   How many times did you meet with Mr. Yuan | |
| 5 | for this investment matter? | 02:59 |
| 6 | A.   I don't remember. | |
| 7 | Q.   Marathon Venture.   Marathon. | |
| 8 |     Who is the contact person in Marathon? | |
| 9 | A.   Ray Yang, Y-A-N-G. | |
| 10 | Q.   Where is Mr. Yang based? | 02:59 |
| 11 | A.   Beijing. | |
| 12 | Q.   Did you go to Beijing to see Mr. Yang for | |
| 13 | the investment matter? | |
| 14 | A.   Yes. | |
| 15 | Q.   And is Mr. Yang a director of RiverPay? | 02:59 |
| 16 | A.   Yes. | |
| 17 | Q.   He has been a director of RiverPay since | |
| 18 | the closing date of Series Pre-A, right? | |
| 19 | A.   Yes. | |
| 20 | Q.   I know Marathon was the lead investor in | 03:00 |
| 21 | the series SAFE run, correct? | |
| 22 | A.   I don't know what "lead investor" means. | |
| 23 | He was an investor in series SAFE.   I just don't | |
| 24 | know the legal. | |
| 25 | Q.   So for the follow-up investment in | 03:00 |

Page 158

HIGHLY CONFIDENTIAL

CERTIFICATE OF REPORTER

1

2   I, ASHALA TYLOR, CSR No. 2436, in and for the State

3 of California, do hereby certify:

4   That the foregoing proceedings were taken before me

5 at the time and place herein set forth; that any

6 witnesses in the foregoing proceedings, prior to

7 testifying, were placed under oath; that a verbatim

8 record of the proceedings were made by me using machine

9 shorthand which was thereafter transcribed under my

10 direction; further that the foregoing is an accurate

11 transcription thereof.

12   That before the completion of the deposition,

13 review of the transcript [X]was [ ]was not requested.

14   I further certify that I am neither financially

15 interested in this action nor a relative or employee of

16 any attorney or any of the parties hereto.

17   In compliance with Section 8016 of the Business and

18 Professions Code, I certify under penalty of perjury

19 that I am a Certified Shorthand Reporter with

20 California License No. 2436 in full force and effect.

21 WITNESS my hand this 10th day of May, 2019.

22

23

24

25   Ashala Tylor, CSR #2436, RPR, CRR, CLR

Page 230

# EXHIBIT  C



**LiLaw Inc. – A Law Corporation**
5050 El Camino Real, Suite 200, Los Altos, CA 94022
Tel. (650) 521-5956     Fax (650) 521-5955     Web: www.lilaw.us

June 10, 2019

Elizabeth Pipkin
McManisFaulkner
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
epipkin@mcmanislaw.com

Via EMAIL

     RE: *Citcon v. RiverPay., et al.*; Discovery Responses

Dear Elizabeth:

We write to inform you of a series criminal acts which your clients, RiverPay Inc., York Hua and
Kenny Shi, likely have committed. Over the weekend, over 2000 refund attacks were launched
on the servers of Citcon, AliPay and WeChatPay, all targeting only Citcon's transactions. The
attacks on Citcon's server were quickly stopped because of the security measures that Citcon has
implemented since the last refund attack in May 2018. But the refund attacks on AliPay and
WeChatPay's servers in China lasted for some time and have resulted in more than $5 million
damages to Citcon.

Because of the focus of the attacks was on Citcon's transactions and because the attackers used
the AliPay and WeChatPay's tokens for Citcon, to which only members of the Citcon's
management (including Hua and Shi) could have access, we have no doubt that your clients are
behind these new attacks. If they think that is the way to destroy or pressure Citcon, they need to
think it again. This kind of strategy will eventually land someone in jail. We are in the process of
collaborating with U.S. and Chinese authority to investigate this cybercrime.

By this letter, we ask you as counsel to warn your clients not to engage in any further criminal activities. Citcon will take the refund matters to the very end to expose the criminals behind them, regardless of the outcome of the civil litigation.


Very truly yours,

/s/ *J. James Li*
J. James Li
Attorneys for Plaintiff and Counter-
Defendant Citcon USA LLC

# EXHIBIT  D



**LiLaw Inc. – A Law Corporation**
5050 El Camino Real, Suite 200, Los Altos, CA 94022
Tel. (650) 521-5956    Fax (650) 521-5955    Web: www.lilaw.us

August 2, 2019

Ray Yang
Partner
Marathon Venture Capital
1502 Tower F, Phoenix Plaza
5A Shu Guang Xi Li
Chaoyang District
Beijing, China 100028

Via FedEx

Dear Mr. Yang:

We are writing to you because based on public information RiverPay Inc. is a portfolio company of Marathon Venture Capital.

We are litigation counsel for Citcon USA LLC in its legal action against RiverPay Inc., York Hua and Kenny Shi, pending before Magistrate Judge Cousins in the United States District Court for the Northern District of California, Case No. 5:18-cv-02585. This litigation is approaching its final stage, with discovery largely over and a jury trial set for December 2019.

It is now very clear that RiverPay started its business using source code misappropriated from Citcon. RiverPay's founder York Hua was Citcon's Head of Operations. RiverPay's Head of Engineering, Kenny Shi, was Citcon's VP of Engineering. Kenny Shi downloaded confidential Citcon documents, including its source code, right before he resigned from Citcon to join RiverPay. RiverPay's starting source code is practically a copy of Citcon's source code. Recently, the Court denied RiverPay's Motion for Partial Summary Judgment, rejecting RiverPay's primary defense in this case based on the claim that Dino Lab, a contractor of Citcon, owned Citcon's source code. In reality, Dino Lab contributed to a small portion of Citcon's source code and was paid for its work. Dino Lab was actually York Hua's Trojan horse embedded into Citcon for the very purpose of stealing Citcon's technology.

Moreover, we believe RiverPay has resorted to criminal acts to help their failing civil defense. We have at least circumstantial evidence that RiverPay recently sponsored or instigated the hacking of Citcon, Alipay, and WeChat Pay's servers to specifically target Citcon's system and business operations using stolen credentials and data through former insiders such as York Hua and Kenny Shi. We believe RiverPay is also behind the recent waves of malicious pseudonymous emails sent to Citcon's customers defaming Citcon and disrupting Citcon's business relationship with these customers. For example, right after the recent hacking, an email was sent to Citcon's customers from weijiangcitcon@163.com, a fake email account, to disrupt Citcon's business relationship with the customers. Another fake email was sent to Citcon's customers from a "Joe Wu" using info@yifanbubbletea.com,

which is a fictitious business and domain name, to smear Citcon using the hacking event. Similar email attack also happened in 2018 under the fictitious name Terry Liu. Attached is a copy of the some of the malicious emails with the names of Citcon's merchants redacted. Now, it has become nearly a daily event that new fake emails are blasted to many Citcon customers to defame Citcon. The scale and frequency of the wrongdoings are reaching a fever pitch.

Contrary to what Riverpay may think, criminal sabotage will not intimidate Citcon. Such action is in fact self-destructive and will eventually lead to the downfall of the culprit behind the hacking. Citcon is currently working with the FBI to bring the hackers to justice. We believe this case bears resemblance to the recent event where a former Amazon Web Services ("AWS") employee hacked Capital One's server hosted on AWS. We believe as in the Capital One case the FBI will eventually apprehend the culprits behind the Citcon hack.

Under U.S. and California law, people who aid and abet a wrongdoing are jointly and severally liable with the wrongdoer. Thus, at this point, those who continue to aid RiverPay in light of their misappropriation of Citcon's trade secrets will subject themselves to civil liability. For the cybercrimes, those who assist criminal activity or act as accessories after the fact will face criminal prosecution.

By this letter, we request your voluntary assistance to provide us and the FBI with any evidence that may assist our prosecution of the civil and criminal case. Please call or email me to let us know if you will cooperate with our investigation. If necessary, we may serve a formal subpoena for relevant documents and testimonies.

If you have any questions, please do not hesitate to contact our office.

Very truly yours,

J. James Li, Ph.D.

# EXHIBIT  E

| | |
|---|---|
| **From:** | lij@lilaw.us |
| **Sent:** | Tuesday, August 6, 2019 12:36 PM |
| **To:** | Elzankaly, Marwa |
| **Cc:** | Andy Pierz; Pipkin, Elizabeth; Peek, Christine; Oh, Johanna; Schneider, Elena; chenc@lilaw.us |
| **Subject:** | RE: Letter to Marathon |

Marwa,
I disagree with all your assertions.

First, I sent the letters to a few RiverPay investors upon a request by my clients who provided me with the addresses and names by their own research. I don't even know who are board members of RiverPay or who are not. If you think just because I took a deposition many months ago, I would remember a name from that deposition, you are not being realistic. So whoever the letter was sent to, he was sent the letter as a manager or partner of Marathon as the letter was addressed to Marathon. Rule 4.2 "shall not prohibit ... communications otherwise authorized by law or a court order." The law does authorize me to send a letter to an investor of RiverPay to seek evidence. If someone happens to be a board member, that was not the reason he was sent the letter. He was sent a letter as a manager or partner of Marathon. So your argument about my sending letters to RiverPay's directors are not well taken. The issue is whether Marathon is a represented party. I think the answer to that question is obvious.

Second, I never used any information obtained from the case to send the letters. My client provided me with the contact information based on public information. My understanding is that Marathon's information was obtained through its website and/or words of mouth in the investment community.

Third, the purpose of the letter is to seek evidence to solve the problems of criminal attack on Citcon. It is our belief that RiverPay is the primary suspect behind the attack. So we are not threatening criminal prosecution to gain advantages in a civil lawsuit. We are trying to find out who is behind a criminal act that is harming my client and whether Marathon can provide evidence for solving the crime. The culprits are now sending thousands of pseudonymous defaming emails on nearly daily basis to Citcon's customers, using hacked information, which have caused some customers to stop using Citcon's service. To be clear, this is not a part of any civil litigation. It is a criminal act we are trying to investigate, and so is FBI. Thus, we are not threatening criminal prosecution to gain advantages in a civil suit. We are seeking evidence from an interested party to solve a crime.

Fourth, I do have the right to seek evidence for our current civil cases from any third parties that are associated with RiverPay.

Fifth, the fact that our evidence shows that RiverPay copied Citcon's code was repeatedly stated in public and never filed under seal in this case. In fact, you have never asked such statement be placed under seal, because you knew very well that such statement of ultimate liability can never be sealed from the public in the first place. Thus, your threat now in contradiction to your own belief only reveals a consistent abuse by your side of the protective order, that is, to use the PO to gain strategic advantages instead of protecting legitimate confidential information.

So, my question to you is the following: if you provide me with evidence that this person who you say is RiverPay's director is not a manager or partner of Marathon, we will retract the letter and re-send it to a manager or partner of Marathon. Our target is Marathon, not RiverPay. But if this person is a partner or manager of Marathon, the fact that he is also RiverPay's director is of no concern to me because I did not attempt to communicate with a RiverPay's director and my communication does not in any way require this person to be an insider of Riverpay, as long as he is a person in charge of Marathon.

1

Regards,
Jim

**From:** Elzankaly, Marwa <melzankaly@mcmanislaw.com>
**Sent:** Tuesday, August 06, 2019 11:30 AM
**To:** lij@lilaw.us
**Cc:** Andy Pierz <pierza@lilaw.us>; Pipkin, Elizabeth <epipkin@mcmanislaw.com>; Peek, Christine
<cpeek@mcmanislaw.com>; Oh, Johanna <joh@mcmanislaw.com>; Schneider, Elena <eschneider@mcmanislaw.com>
**Subject:** Letter to Marathon
**Importance:** High

Jim:

It has come to our attention that you sent the attached letter to at least one of RiverPay's investors, who is also a
member of RiverPay's Board of Directors.  I am writing to demand that you immediately retract this letter and any other
similar correspondence you may have sent to any of RiverPay's investors, board members, or any witnesses in this
matter.  This correspondence is a violation of both the California Rules of Professional Conduct and the Northern
District's local rules for several reasons.

First, as you should know, it is illegal for you to contact a party that you know is represented by counsel.  (CRPC
4.2(a).)  This ban applies to represented corporations, including its current officers, **directors**, partners or managing
agents.  (CRPC 4.2(b)(1).)  Your letter is a direct contact with one of RiverPay's board members, which is represented by
our office.  You knew that Ray Yang at Marathon is a member of RiverPay's Board of Directors because you asked York
Hua about this directly at deposition.  (Hua 5/1/19 Deposition, p. 158:7-24.)  What is even more egregious is that you
threaten criminal prosecution or service of a subpoena in the event the board member does not contact you to provide
you with any evidence that is helpful to your "prosecution of the civil and criminal case."

Such threats of criminal action are also a violation of rule 3.10(a) of the California Rules of Professional Conduct, which
prohibits a lawyer from threatening "to present criminal, administrative, or disciplinary charges to obtain an advantage
in a civil dispute."

Moreover, Northern District Civil Local Rule 11-4 requires that anyone practicing in the Northern District, to "[b]e
familiar and comply with the standards of professional conduct required of members of the State Bar of
California."  (Civ. L.R. 11-4(a)(1).)  Thus, your violations of the California Rules of Professional Conduct are also a violation
of the Northern District's local rules.

Finally, to the extent you have sent such letters to RiverPay investors who are not board members, or to any witnesses
or anyone who is not a party to this action, your statements such as "RiverPay's starting source code is practically a copy
of Citcon's source code" is a violation of the Protective Order in this case and provides us with further cause to support
our pending motion for sanctions.

Thus, please respond **by the end of the day today** with an immediate retraction of this correspondence.  Please also
identify anyone else that you have sent similar correspondence to.

Otherwise, we will immediately bring this to the Court's attention and seek any appropriate relief.

Marwa

**MARWA ELZANKALY**
**McMANIS FAULKNER**
Fairmont Plaza - 10th Floor
50 West San Fernando Street
San Jose, CA 95113
408.279.8700 Telephone
408.279.3244 Facsimile
www.mcmanislaw.com

# McManis Faulkner



This email contains confidential information that may be privileged.  Unless you are the addressee named above, you may not copy, use, or distribute it.  If you have received it in error, please contact the sender by reply email and delete all copies.  Thank you.

# EXHIBIT  F

PAGES 1 - 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NATHANAEL M. COUSINS

| | | |
|---|---|---|
| CITCON USA, LLC, | ) | |
| PLAINTIFF, | ) ) ) | |
| VS. | ) ) | CASE NO. 18-CV-02585 NC |
| RIVERPAY INC., ET AL., | ) ) | SAN JOSE, CALIFORNIA |
| DEFENDANTS. | ) ) ) | FRIDAY, AUGUST 16, 2019 |
| | ) | |
| AND RELATED CROSS-ACTION. | ) | |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  11:15 A.M. - 11:27 A.M.**

**APPEARANCES:**

**FOR PLAINTIFF**            LILAW INC., A LAW CORPORATION
                          5050 EL CAMINO REAL, SUITE 200
                          LOS ALTOS, CALIFORNIA 94022
                    BY:  **J. JAMES LI, PH.D., ESQUIRE**


**FOR DEFENDANTS**           MCMANIS FAULKNER
                          50 WEST SAN FERNANDO STREET
                          SAN JOSE, CALIFORNIA 95113
                    BY:  **ELIZABETH MARIE PIPKIN, ESQUIRE**
                         **CHRISTINE PEEK, ESQUIRE**


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                *RETIRED OFFICIAL COURT REPORTER, USDC*

```
 1    FRIDAY, AUGUST 16, 2019                          11:15 A.M.

 2                           ---oOo---

 3            ELECTRONICALLY RECORDED PROCEEDINGS

 4

 5            THE CLERK:  CALLING CIVIL 18-2585, CITCON USA, LLC

 6    VERSUS RIVERPAY, INCORPORATED, ET AL.

 7            DR. LI:  GOOD MORNING, YOUR HONOR.  JAMES LI FOR THE

 8    PLAINTIFF.

 9            THE COURT:  GOOD MORNING.

10            MS. PIPKIN:  GOOD MORNING, YOUR HONOR.  ELIZABETH

11    PIPKIN AND CHRISTINE PEEK, MCMANIS FAULKNER, FOR DEFENDANTS.

12    AND THAT'S THE ALLEGED TRADE SECRET THEFT CALENDAR.

13            THE COURT:  TRADE SECRET THEFT CASES IN BOTH OF THEM.

14            ALL RIGHT.  WE'RE HERE BECAUSE AT DOCUMENTS 284, 285

15    AND 286, YOU SENT ME THREE LETTERS, AND I NEED TO DECIDE WHAT

16    TO DO WITH YOUR LETTERS TO THE COURT.

17            DR. LI, IN YOUR LETTER, WHICH IS ATTACHED TO DOCKET

18    285, I JUST -- THIS IS JUST A FACTUAL QUESTION TO YOU TO MAKE

19    SURE I'M UP TO SPEED ON WHAT'S GOING ON.

20            IN THE SECOND TO LAST PARAGRAPH YOU WRITE:

21                  "BY THIS LETTER WE REQUEST YOUR

22            VOLUNTARY ASSISTANCE TO PROVIDE US AND THE

23            FBI WITH ANY EVIDENCE THAT MAY ASSIST OUR

24            PROSECUTION OF THE CIVIL AND CRIMINAL CASE."

25            END OF SENTENCE.
```

1          WHAT CRIMINAL CASE ARE YOU TALKING ABOUT?  IS THERE A

2    CRIMINAL CASE WHICH I AM NOT AWARE OF?

3          **DR. LI:**  YEAH, THERE IS -- THERE IS FBI, ONGOING FBI

4    INVESTIGATION.

5          **THE COURT:**  SO THERE'S AN INVESTIGATION GOING ON.  IS

6    THERE A CASE THAT'S GOING ON?

7          **DR. LI:**  THAT'S WHY -- IT'S NOT FILED, BUT FBI HAS

8    CASE NUMBER INVESTIGATING.

9          **THE COURT:**  ALL RIGHT.  SO THERE'S NOT A CASE THAT I

10   SHOULD BE AWARE OF THAT I'M BEHIND --

11         **DR. LI:**  IT'S NOT A COURT CASE, YOUR HONOR, YES.

12   THERE'S FBI INVESTIGATION CASE RIGHT NOW, IS ACTIVELY GOING ON.

13         **THE COURT:**  ALL RIGHT.  THESE THREE LETTERS CONNECT

14   TO EACH OTHER.  IT'S A REQUEST FOR SOME THINGS, OR RESPONSE, OR

15   REPLY.  IT'S NOT A DISCOVERY DISPUTE.  IT WAS NOT PRESENTED AS

16   A JOINT DISCOVERY BRIEF, AND IF IT HAD BEEN A DISCOVERY

17   DISPUTE, IT WOULD NOT HAVE COMPLIED WITH THE EXPECTATION TO

18   MEET AND CONFER AND PRESENT IT AS A JOINT DISPUTE, SO IT'S NOT

19   A DISCOVERY DISPUTE.

20         BUT NOR IS IT A MOTION.  IT'S A LETTER THAT DOESN'T

21   HAVE A PROPOSED ORDER SEEKING SOME RELIEF.  DR. LI POINTS THAT

22   OUT IN HIS RESPONSE AND ASKS ME TO STRIKE THE LETTER.  ON THE

23   OTHER HAND -- NOT ON THE OTHER HAND, BUT THE ISSUES ARE

24   SIGNIFICANT.

25         SO ON THE RIVERPAY SIDE, WHAT DO YOU WANT ME TO DO,

1  AND PROCEDURALLY KIND OF WHEN AND WHAT DO YOU SUGGEST I DO

2  ABOUT THE CONCERNS YOU RAISED?

3          **MS. PIPKIN:**  THANK YOU, YOUR HONOR.

4          WE WOULD ASK FOR LEAVE TO FILE -- TO FILE A MOTION.

5  FRANKLY, WE'VE LAID IT OUT IN OUR LETTER.  SO WE'RE HAPPY FOR

6  THE LETTER TO BE DEEMED OUR MOTION.  IF DR. LI THINKS HE NEEDS

7  TO RESPOND FURTHER, GIVEN DUE PROCESS CONCERNS, AND IF THE

8  COURT THINKS THAT'S APPROPRIATE, OF COURSE, THEN WE WILL

9  SUPPORT THAT, BUT WE WOULD LIKE TO MAKE A MOTION REQUESTING THE

10  RELIEF OUTLINED IN OUR LETTER.

11          **THE COURT:**  ALL RIGHT.  DR. LI, PROCEDURALLY, WHAT DO

12  YOU THINK IS THE RIGHT WAY TO GO ABOUT THIS?

13          **DR. LI:**  PROCEDURALLY, YOUR HONOR SHOULD DENY THEIR

14  REQUEST, YOUR HONOR.  I MEAN, LIKE I SET FORTH IN THE LETTER, I

15  DON'T THINK IF -- IF THEY HAVE ISSUE WITH MY LETTER TO

16  MARATHON, THEY CAN COMPLAIN TO THE BAR, AND WE CAN PROPERLY

17  DEFEND OURSELVES IN FRONT OF THE BAR, AND THAT'S THE PROPER

18  ORGANIZATION FOR DOING THIS.

19          THIS LETTER PRIMARILY IS FOR THE -- IN RESPONSE TO

20  THIS -- IT'S GOING CRAZY RIGHT NOW.  ALMOST EVERY DAY THERE

21  ARE, LIKE, HUNDREDS OF E-MAILS SENT TO (INDISCERNIBLE)

22  ANONYMOUS EMAILS BY FAKE NAMES, FAKE EMAIL ACCOUNTS SENT TO MY

23  CLIENT'S CUSTOMERS, MERCHANT CUSTOMERS, AND TELLING THEM THAT

24  MY CLIENT WAS DOING SOMETHING IMPROPER.  IT'S ALL FAKE OR MADE

25  UP.  AND USING SOME INFORMATION THEY OBTAINED FROM -- THERE'S

1    RECENT HACKING.  I DON'T KNOW, YOUR HONOR.  THAT'S WHAT THE FBI

2    IS INVESTIGATING FROM THE RECENT HACKING.

3            SO WE ARE JUST TRYING TO HELP SOLVE THIS CASE.  THIS

4    CASE IN OUR VIEW, THIS CRIMINAL CASE IS -- IS SURELY CONNECTED

5    TO THE CIVIL CASE, BECAUSE EVERYTHING IS DONE IN CONCERT WITH

6    THIS CIVIL CASES, AND THE SUSPECT IN THIS CRIMINAL ACT IS

7    RIVERPAY, I MEAN, LIKE I LAID OUT IN THERE.

8            AND IT'S VERY CLEAR TO US AND -- BUT WE'RE NOT

9    SAYING, OKAY -- THIS LETTER IS ADDRESSED TO MARATHON.  IT'S NOT

10   TO RIVERPAY.  WE'RE NOT SAYING, MARATHON, YOU HAVE COMMITTED

11   CRIME; IF YOU DON'T DO ANYTHING, WE'RE GOING TO PRESENT A

12   CRIMINAL CHARGE AGAINST YOU.  WE NEVER SAID THAT.

13           AND THERE IS A CRIME COMMITTED BY -- POSSIBLY BY

14   RIVERPAY, BUT THAT CONNECTION MARATHON -- MARATHON MAY BE --

15   MAY HAVE SOME EVIDENCE TO THAT CRIME.  WE'RE NOT SAYING

16   MARATHON COMMIT ANY CRIME.  WE'RE NOT THREATENING MARATHON WITH

17   ANY CRIMINAL PROSECUTION.

18           SO I DON'T THINK THAT'S -- I THINK DISTINCTION IS

19   ARTIFICIAL.  THE REAL DISTINCTION IS -- IT'S VERY IMPORTANT

20   TO -- FOR A LAWYER TO DISCHARGE OUR DUTY TO ZEALOUSLY REPRESENT

21   OUR CLIENT, AND IN THIS CASE OUR CLIENT IS HURTING FROM ALL

22   THIS ATTACKS, CRAZY ATTACKS, JUST ON DAILY BASIS.  TODAY

23   THERE'S EVEN MORE ATTACKS TODAY, YEAH.

24           **THE COURT:**  ALL RIGHT.  THANK YOU.

25           HERE'S THE PROCEDURE THAT WE'RE GOING TO FOLLOW ON

1    THE REQUEST FOR A SANCTION:

2              A REQUEST FOR A SANCTION NEEDS TO BE MADE BY A

3    MOTION.  THERE HAS TO BE A MOTION AND PROPOSED ORDER AND

4    SUPPORTING DOCUMENTATION TO GO ALONG WITH IT.  SO I WILL PERMIT

5    LEAVE TO HAVE A MOTION FILED REQUESTING THE RELIEF THAT YOU

6    SEEK AND AN OPPOSITION FOLLOWED BY DR. LI ON BEHALF OF HIS

7    CLIENT, AND WE CAN SET A BRIEFING SCHEDULE AND A HEARING ON

8    THAT.

9              THE PROCESS GOING FORWARD, I'LL JUST NOTE MY

10   CONTINUING CONCERN, THAT I'VE ALREADY DIRECTED THE PARTIES NOT

11   TO EMAIL IN THEIR MEET AND CONFER, AND THE ATTACHMENTS HERE

12   DEMONSTRATE THAT, WHILE THIS IS NOT A DISCOVERY ISSUE, IT'S

13   CONTINUED TO OCCUR DESPITE MY COURT ORDERS, AND THIS IS JUST

14   ANOTHER EXAMPLE OF HOW THAT HAS NOT HELPED RESOLVE THE

15   DISPUTES.  IT'S ADDED FUEL TO THE FIRE OF THE DISPUTES.  SO I'M

16   DISAPPOINTED TO SEE THAT.  BUT IF I NEED TO RESOLVE THE

17   SANCTIONS ISSUE BY LOOKING AT YOUR EMAILS, THAT'S WHAT I'LL

18   HAVE TO DO.

19             AS TO THE COMMENT, DR. LI, THAT YOU MADE ABOUT THE

20   STATE BAR BEING THE PROPER PLACE TO HEAR THESE ISSUES, THERE IS

21   AN ALLEGATION MADE IN THE LETTER, WHICH WILL BECOME A MOTION,

22   OF A VIOLATION OF THE NORTHERN DISTRICT'S LOCAL RULES.  AND SO

23   IF THERE'S BEEN VIOLATION OF THIS COURT'S RULES, THEN THIS

24   COURT MAY BE AN APPROPRIATE PLACE TO REMEDY THOSE.

25             IT IS OFTEN THE CASE WHEN IT COMES TO VIOLATIONS --

1    AND I HAVE NOT MADE A DECISION.  IF THERE'S BEEN ANY VIOLATION,

2    THERE MIGHT BE SOME FINDING OR RULING BY A COURT BEFORE THE

3    STATE BAR CONSIDERS ANY STATE BAR THING.  SO I'M NOT SPEAKING

4    ON BEHALF OF THE STATE BAR PROCEEDINGS, BUT THEY MIGHT BENEFIT

5    FROM HAVING ISSUES BE PRESENTED FIRST TO A COURT, AT LEAST

6    FACTUALLY TO GET A RECORD OF WHAT TOOK PLACE, BEFORE THEY

7    ENTERTAIN ANY SORT OF ETHICAL INVESTIGATION.

8         SO WE'LL DEAL WITH IT FIRST AS A MOTION, AND IF THERE

9    IS A REASON TO GO BEYOND THAT, THEN THE PARTIES CAN DO -- IF

10   YOU THINK IT INVOLVES THE STATE BAR, YOU CAN PRESENT IT TO THE

11   STATE BAR.  BUT THE REASON TO CONSIDER IT HERE IS THAT THERE

12   HAS BEEN AT LEAST AN ALLEGATION OF A VIOLATION OF THE NORTHERN

13   DISTRICT'S LOCAL RULES, AND WE DO HAVE AN INVESTIGATIVE

14   COMMITTEE THAT COULD BE REFERRED, ANY SORT OF VIOLATION.  AND I

15   DO NOTE THAT THERE'S ALREADY A PENDING MOTION FOR SANCTIONS IN

16   THIS CASE, UNRESOLVED, AND I MIGHT VIEW THEM TOGETHER

17   ULTIMATELY.

18         SO THAT'S WHAT WE'LL DO AS FAR AS THE ISSUES

19   PRESENTED.

20         YOU CAN MAKE THE SAME ARGUMENTS.  IF YOU WISH TO, YOU

21   CAN CUT AND PASTE YOUR LETTERS INTO A BRIEF.  THAT'S UP TO YOU.

22   BUT THE PROPER FORMAT IS GOING TO BE A MOTION AND OPPOSITION.

23   I DON'T -- AND I'M NOT SUGGESTING THAT I THINK YOU NEED TO DO

24   MORE LEGAL RESEARCH.  JUST PROCEDURALLY THAT'S THE RIGHT WAY OF

25   GOING ABOUT IT.

1      AND, DR. LI, I'M NOT DECIDING THE ISSUES NOW, BUT THE

2   PROPOSITION ON PAGE 3 OF YOUR LETTER THAT -- WHAT YOU SAID IN

3   YOUR LETTER IS NOT DIFFERENT FROM ANY COMMON PRACTICES BY

4   ATTORNEYS AROUND THE COUNTRY, IF THAT'S YOUR DEFENSE, THEN I'M

5   GOING TO NEED EVIDENTIARY AUTHORITY THAT'S WHAT OTHER ATTORNEYS

6   AROUND THE COUNTRY DO, BECAUSE, UNLESS YOU'RE TESTIFYING AS AN

7   EXPERT ABOUT WHAT OTHER ATTORNEYS DO, YOU DON'T HAVE COMPETENCE

8   TO TESTIFY AS TO WHAT OTHER ATTORNEYS DO.  AND EVEN IF YOU DID,

9   I'M NOT SURE THAT'S A GOOD DEFENSE TO AN ETHICAL VIOLATION TO

10  SAY "EVERYBODY'S DOING IT," AND I'M NOT SURE EVERYONE IS DOING

11  IT.  BUT I'LL JUST GIVE YOU THE FORESHADOWING THAT I DON'T FIND

12  THAT TO BE A PERSUASIVE DEFENSE, IF YOU NEED A DEFENSE.  THE

13  FACT THAT OTHER PEOPLE HAVE VIOLATED ETHICAL RULES IS NOT A

14  VERY COMPELLING ONE.

15      THE OTHER CONCERN I HAVE, WHICH IS WHY I ASKED THE

16  QUESTION AT THE BEGINNING, IF YOU'RE REPRESENTING THERE IS AN

17  FBI FEDERAL CASE GOING ON, AND THERE'S NOT, IT SOUNDS LIKE AN

18  INACCURATE DESCRIPTION OF WHAT'S HAPPENING.  A CASE IS NOT THE

19  SAME THING AS AN INVESTIGATION FROM WHERE I SIT.  I'M NOT THE

20  FBI, BUT I DO PRESIDE OVER CASES, AND I'M NOT AWARE THAT

21  THERE'S A CASE INVOLVING A FEDERAL CRIME HERE.  SO THAT CAUGHT

22  MY ATTENTION.  THAT DID NOT SEEM TO BE ACCURATE.

23      HOW ABOUT A BRIEFING SCHEDULE OF THE 23RD FOR A

24  BRIEF, 30TH OPPOSITION, SEPTEMBER 4 A REPLY, AND A HEARING ON

25  SEPTEMBER 11TH.

1      **MS. PIPKIN:**  THAT WORKS FOR US, YOUR HONOR.

2      **THE COURT:**  DR. LI, DOES IT WORK FOR YOU?

3      **DR. LI:**  THAT'S FINE.

4      **THE COURT:**  ALL RIGHT.  OUR HEARING DATE IS

5  SEPTEMBER 11TH AT 1:00 P.M., AND THE LETTER BRIEFS ARE NOT

6  GAVELED -- THEY WERE NOT MOTIONS, SO THERE'S NOT TECHNICALLY A

7  RESOLUTION REQUIRED.  I WON'T BE TAKING ANY ACTION ON THEM

8  OTHER THAN INVITING THE MOTION THAT WILL BE RESOLVED ON

9  SEPTEMBER 11TH RAISING THOSE ISSUES.

10      **DR. LI:**  THANK YOU, YOUR HONOR.

11      **THE COURT:**  ALL RIGHT.  ANYTHING ELSE WE SHOULD

12  ADDRESS TODAY ON CASE MANAGEMENT?

13      **DR. LI:**  NO.

14      **MS. PIPKIN:**  NO.  THANK YOU, YOUR HONOR.

15      **THE COURT:**  THANK YOU VERY MUCH.  WE'LL SEE YOU

16  SEPTEMBER 11TH.

17      (PROCEEDINGS ADJOURNED AT 11:27 A.M.)

18

19

20

21

22

23

24

25

## CERTIFICATE OF TRANSCRIBER

1
2
3      I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
4  TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF
5  THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE
6  U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE
7  PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE
8  ABOVE MATTER.
9      I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,
10 RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN
11 WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT
12 FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE
13 ACTION.
14
15                     _Jmcolumbini_
16                  JOAN MARIE COLUMBINI
17                   AUGUST 20, 2019
18
19
20
21
22
23
24
25

# EXHIBIT  G

PAGES 1 - 46

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE NATHANAEL M. COUSINS

| | | |
|---|---|---|
| CITCON USA, LLC, | ) | |
|         PLAINTIFF, | ) | |
|   VS. | ) | CASE NO. 18-CV-02585 NC |
| RIVERPAY INC., ET AL., | ) | |
|         DEFENDANTS. | ) | SAN JOSE, CALIFORNIA<br>WEDNESDAY, MAY 29, 2019 |

_____)

AND RELATED CROSS-ACTION.        )

_____

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  2:16 P.M. - 3:18 P.M.**

**APPEARANCES:**

**FOR PLAINTIFF**          LILAW INC., A LAW CORPORATION
                        5050 EL CAMINO REAL, SUITE 200
                        LOS ALTOS, CALIFORNIA 94022
                **BY:   J. JAMES LI, PH.D., ESQUIRE**


**FOR DEFENDANTS**         MCMANIS FAULKNER
                        50 WEST SAN FERNANDO STREET
                        SAN JOSE, CALIFORNIA 95113
                **BY:   ELIZABETH MARIE PIPKIN, ESQUIRE**
                        **MARWA ELZANKALY, ESQUIRE**


*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                *RETIRED OFFICIAL COURT REPORTER, USDC*

1    WEDNESDAY, MAY 29, 2019                           2:18 P.M.

2                            ---oOo---

3              ELECTRONICALLY RECORDED PROCEEDINGS

4          **THE CLERK:**  CALLING CIVIL 18-2585, CITCON USA LLC

5    VERSUS RIVERPAY, INCORPORATED, ET AL.

6          **MS. PIPKIN:**  GOOD MORNING -- OR GOOD AFTERNOON.

7    ELIZABETH PIPKIN AND MARWA ELZANKALY, MCMANIS FAULKNER, ON

8    BEHALF OF DEFENDANTS AND CROSS-COMPLAINANTS.

9          **THE COURT:**  GOOD AFTERNOON TO YOU, BOTH.

10         **DR. LI:**  GOOD AFTERNOON.  JAMES LI FOR PLAINTIFF.

11         **THE COURT:**  GOOD AFTERNOON.

12         ALL RIGHT.  WE HAVE A NUMBER OF ITEMS PRESENTED

13   TODAY.  LET ME SUMMARIZE OUR AGENDA AND THEN SEE IF YOU HAVE

14   ANY ADDITIONAL OR DIFFERENT ITEMS ON OUR AGENDA.

15         WE HAVE THE DEFENDANT'S MOTION FOR PARTIAL SUMMARY

16   JUDGMENT ON CLAIMS 1 AND 2 IN THE CASE, WHICH WE, DUE TO SOME

17   MISCOMMUNICATION STARTED TO TALK ABOUT LAST WEEK, AND THEN

18   CONTINUED THE HEARING TO TODAY.  SO THAT IS SET FOR HEARING

19   TODAY.  AND AS PART OF THAT, I ISSUED YOU SOME QUESTIONS AT

20   DOCKET 209.  I RECEIVED ANSWERS TO THOSE QUESTIONS FROM DR. LI

21   AT DOCKET 217.  SO I HAVE THOSE, AND I WANT TO HEAR FROM THE

22   DEFENSE AS TO THEIR ANSWERS TO THOSE QUESTIONS.  SO THAT'S PART

23   OF THAT MOTION.

24         SEPARATELY, WE HAVE THE DEFENDANT'S MOTION FOR

25   SANCTIONS WHICH HAS BEEN OPPOSED BY PLAINTIFF AND IS SET FOR

1    HEARING TODAY.

2            THIRDLY, WE HAVE A NUMBER OF FOLLOW-UP ON DISCOVERY

3    ITEMS.  THOSE ARE SET FORTH IN MY MINUTES AT DOCKET 214,

4    ARISING FROM EARLIER LETTER BRIEFS FROM THE PARTIES AND ISSUES

5    RAISED AT THE LAST CASE MANAGEMENT CONFERENCE.  SO I'LL PUT

6    THOSE IN THE CATEGORIES OF CATCHING UP WITH YOU ON THINGS YOU

7    MIGHT HAVE RESOLVED OR HAVEN'T RESOLVED IN DOING CASE

8    MANAGEMENT TO ASSESS WHAT MORE I CAN DO TO HELP YOU MOVE THINGS

9    FORWARD.

10            IN A FOURTH BUCKET THERE ARE A NUMBER OF MOTIONS TO

11   SEAL THAT GO ALONG WITH THESE PROCEEDINGS AND EARLIER PARTS OF

12   THE PROCEEDINGS.  I DON'T INTEND TO TAKE UP THOSE TODAY BECAUSE

13   YOU SUBMITTED THEM IN WRITING, AND I'LL ADDRESS THEM.  BUT I

14   WILL SAY IN ADDRESSING THE ISSUES, THIS HEARING IS PUBLIC AND

15   IT'S PRESUMPTIVELY NOT UNDER SEAL.  SO IF THERE'S A BASIS TO

16   SEAL SOME PART OF THE PROCEEDINGS TODAY, THERE NEEDS TO BE A

17   SHOWING, AND WE NEED TO SEGREGATE THAT PART OF THE PROCEEDINGS.

18   SO IF THERE IS A BASIS TO SEAL SOMETHING TODAY, PLEASE BE

19   COGNIZANT THAT THE PRESUMPTION IS THAT EVERYTHING IS PUBLIC AND

20   NOT UNDER SEAL, AND, IF THERE'S SOMETHING TO SEAL, WE NEED TO

21   PUT THAT AS A SPECIAL PART OF THE PROCEEDINGS AND MAKE SURE

22   THAT THERE'S A BASIS TO DO SO.

23            BUT I DO INTEND TO ADDRESS THOSE IN WRITING AND NOT

24   TO SPEND ANY TIME ADDRESSING THEM HERE BECAUSE THEY'RE NOT

25   REALLY DISPUTED.  BETWEEN THE PARTIES THE ONLY DISPUTE WOULD BE

1    WHETHER THE BASIS HAS BEEN MET OR NOT, AND I CAN DO THAT ON THE

2    PAPERS.

3           SO THAT'S WHAT I HAVE AS FAR AS MY AGENDA.  BUT LET

4    ME CHECK WITH YOU.

5           DR. LI, DOES THAT FIT WITH YOUR AGENDA?

6           **DR. LI:**  YES, BUT THERE'S ONE ISSUE.  IT'S REALLY

7    EASY TO RESOLVE.  IT'S ABOUT OUR DISCOVERY ISSUES, THERE'S A

8    LOT OF THEM.  LAST TIME WE PRESENTED.  WE HAVE NOT PRESENTED

9    UPDATED LIST, THE REASON BEING WE REALLY HAVE BEEN BUSY, BOTH

10   OF US, AND WE DID NOT GET A CHANCE TO MEET AND CONFER.  AND WE

11   TRIED ACTUALLY.  WE TRIED ON THURSDAY.  WE TRIED ON FRIDAY.

12   AND DUE TO ALL KIND OF REASONS, WE COULD NOT DO THAT.

13          SO WE HAVE AGREED TO POSTPONE THOSE THINGS, AND WE --

14   WE'RE -- WE'RE GOING TO FILE EITHER JOINT LETTER, OR, IF YOUR

15   HONOR ALLOWS, WE CAN FILE MOTION TO COMPEL ON THE ISSUES WE

16   RESOLVED -- WE CANNOT RESOLVE.

17          WE ARE GOING TO HAVE SEVERAL MEET AND CONFER

18   FACE-TO-FACE AND TRY TO RESOLVE EVERYTHING, BUT MY SENSE IS

19   MOST OF THEM ARE NOT RESOLVABLE AND NEED TO BE ADDRESSED IN A

20   MOTION TO COMPEL, BECAUSE SO MANY ISSUES, AND THIS PART IS NOT

21   STIPULATED.  THIS PART IS JUST MY REQUEST.  I WOULD LIKE YOUR

22   HONOR TO GIVE US A CHANCE TO FILE A MOTION TO COMPEL.

23          **THE COURT:**  AND IS THIS IN FOLLOW-UP ON ISSUES WHICH

24   WE DISCUSSED LAST WEEK AND --

25          **DR. LI:**  OH, NO.

1          **THE COURT:**  -- ARE PERTINENT TO DOCKET 214, OR THESE

2    ARE DIFFERENT ISSUES?

3          **DR. LI:**  DIFFERENT ISSUES.  YOUR HONOR ADDRESS THAT,

4    WE ACCEPT, AND WE MOVE ON.  AND THESE ARE NEW ISSUES.  WE HAVE

5    LONG LIST.  ONLY TWO OF THAT LIST -- YOUR HONOR ADDRESSED THE

6    HUANG DECLARATION -- DEPOSITION, AND I FORGET THE OTHER ONE.

7          **THE COURT:**  ALL RIGHT.  SO SOME ADDITIONAL --

8          (SIMULTANEOUS COLLOQUY.)

9          **DR. LI:**  SOME OTHER ISSUES, YOUR HONOR.  YES.

10         **THE COURT:**  ALL RIGHT.

11         AND ON THE DEFENSE ANY OTHER AGENDA ITEMS FOR

12   DISCUSSION TODAY?

13         **MS. PIPKIN:**  NO, YOUR HONOR.

14         **THE COURT:**  ALL RIGHT.  THANK YOU.  ALL RIGHT.  SO

15   THEN THAT'S THE ORDER WE'LL GO THROUGH THINGS.  I DO HAVE A LOT

16   OF OTHER BUSINESS TODAY, AS DO YOU, SO LET'S TRY TO BE FINITE

17   IN OUR DISCUSSION, AND WE'LL START WITH THE SUMMARY JUDGMENT

18   ORDER.

19         SO LET ME HEAR FIRST FROM THE MOVING SIDE, RIVERPAY

20   SIDE, AS TO MY QUESTIONS AT DOCKET 209, IF YOU CAN ADDRESS

21   THOSE, AND THEN MAKE ANY ARGUMENT FURTHER IN SUPPORT OF YOUR

22   MOTION, AND THEN I'LL HEAR FROM DR. LI.

23         **MS. PIPKIN:**  THANK YOU, YOUR HONOR.

24         I WILL ADDRESS THE QUESTIONS ONE BY ONE.

25         THE FIRST QUESTION IS:  WHAT SOURCE CODE HAS CITCON

1    ALLEGED RIVERPAY MISAPPROPRIATED AND WHERE IN THE RECORD IS THE

2    ALLEGEDLY MISAPPROPRIATED SOURCE CODE DEFINED?

3            THE ANSWER TO THAT QUESTION IS THE SOURCE CODE IS

4    DEFINED, AS FAR AS I AM AWARE, IN THE UPDATED THIRD AMENDED

5    COMPLAINT IN PARAGRAPH 55(A).  IT IS DEFINED AS CONFIDENTIAL

6    ALGORITHMS FOR, ONE, INTERFACING WITH CUSTOMER'S PAYMENT

7    DEVICES; TWO, RECEIVING CUSTOMER'S IDENTITY INFORMATION; THREE,

8    VERIFYING CUSTOMER'S ACCOUNT WITH THE PAYMENT SYSTEM; FOUR,

9    PROCESSING CUSTOMERS' PAYMENTS, AND FIVE SETTLING PAYMENT

10   FUNDS.

11           SO THAT IS WHAT WE'RE WORKING FROM AS FAR AS THE

12   IDENTIFICATION THAT CITCON HAS PROVIDED.

13           IN SHORT, THAT REALLY COVERS EVERYTHING.  IT COVERS

14   EVERYTHING THAT HAS TO DO WITH CITCON'S MOBILE PAYMENT

15   PRODUCTS, AND CITCON HAS BEEN PROVIDED ACCESS TO ALL OF

16   RIVERPAY'S SOURCE CODE WITH RESPECT TO ITS MOBILE PAYMENT

17   PRODUCTS.

18           SO WHAT'S REALLY BEEN DISCOVERED AT THIS POINT, YOUR

19   HONOR, IS ALL OF THE SOURCE CODE.  OKAY?  ALL OF THE SOURCE

20   CODE THAT RIVERPAY HAS BEEN PROVIDED TO CITCON FOR REVIEW FOR

21   THE PAST TWO MONTHS.

22           AND WE COULD SIT HERE AND GO THROUGH WHETHER THAT

23   SHOULD BE NARROWED FURTHER, ET CETERA, BUT AS A PRACTICAL

24   MATTER, THAT'S WHAT'S BEEN DISCOVERED AND IS AT ISSUE IN THE

25   CASE, EVEN THOUGH WE HAVE ISSUES WITH THE IDENTIFICATION AND

1    THE FACT THAT IT'S EVERYTHING UNDER THE SUN.

2          BUT THAT'S WHERE WE ARE TODAY.

3          CITCON HAS NOT RAISED ANY ISSUE OF MATERIAL FACT THAT

4    RIVERPAY'S CODE CONTAINS ANYTHING OTHER THAN CODE WRITTEN BY

5    DINO LAB, AND THE REASON THAT IS IMPORTANT IS BECAUSE, AS I

6    SAID, CITCON HAS HAD FULL ACCESS TO RIVERPAY'S CODE FOR TWO

7    MONTHS, AND WE FILED THIS MOTION, AND CITCON HAS THIS

8    ALLEGATION ABOUT THIS OTHER COMPANY CALLED UNION -- ALL UNION

9    THAT HELPED WRITE CODE.

10          AND IF YOU LOOK AT CITCON'S EVIDENCE PROVIDED TO THIS

11    COURT, THERE'S NO EVIDENCE PROVIDED THAT ALL UNION ACTUALLY

12    WROTE ANY OF THE CODE THAT HAS NOW BEEN INSPECTED BY CITCON AND

13    THAT IS NOW IN RIVERPAY'S CODE.

14          I'M GOING TO MOVE ON TO -- OH.

15          WHAT CITCON HAS ATTEMPTED TO ARGUE IS THAT THEIR

16    IDEAS WENT INTO THIS CODE; SO IT'S NOT THAT CITCON WROTE THE

17    CODE, BUT THAT THEY HAD ALL THESE IDEAS, AND THEY GAVE THEM TO

18    DINO LAB.

19          IF YOU LOOK AT A CASE CALLED *AGENCY SOLUTIONS.COM*,

20    819 F.SUPP.2D AT 1016, QUOTING THE *SILVACO* CASE, WHICH IS A

21    CALIFORNIA CASE.  THAT CASE SAYS:

22                "DESIGN MAY CONSTITUTE THE BASIS

23          FOR A TRADE SECRET SUCH THAT INFORMATION

24          CONCERNING IT COULD BE ACTUALLY

25          MISAPPROPRIATED, BUT IT IS THE INFORMATION,

1          NOT THE DESIGN ITSELF THAT MUST FORM THE

2          BASIS FOR THE CAUSE OF ACTION.  AND WHILE THE

3          FINISHED COMPILED PRODUCT MIGHT HAVE

4          DISTINCTIVE CHARACTERISTICS RESULTING FROM

5          THAT DESIGN, SUCH AS IMPROVED PERFORMANCE,

6          THEY CANNOT CONSTITUTE TRADE SECRETS BECAUSE

7          THEY ARE NOT SECRET, BUT ARE EVIDENCE TO

8          ANYONE RUNNING THE FINISHED PROGRAM."

9          I'M NOW GOING TO MOVE ON TO THE COURT'S SECOND

10   QUESTION.  NUMBER TWO, IF THE RELEVANT SOURCE CODE IS DEFINED,

11   DO THE PARTIES AGREE THAT IT WAS AUTHORED ENTIRELY BY DINO LAB?

12   AND THEN, HAS CITCON PRESENTED EVIDENCE THAT WAS AUTHORED BY

13   ANYONE ELSE.  THE ANSWER TO THAT QUESTION IS NO, CITCON HAS NOT

14   PRESENTED EVIDENCE THAT ITS SOURCE CODE WAS -- THAT THE SOURCE

15   CODE AT ISSUE HERE WAS AUTHORED BY ANYONE ELSE OTHER THAN DINO

16   LAB, AND IT'S HAD FULL OPPORTUNITY TO DO SO.

17          CITCON DOES ADMIT THAT DINO LAB WAS ITS CONTRACTOR

18   FOR AT LEAST 18 MONTHS, AND THAT'S THE EVIDENCE THAT THE COURT

19   HAS ON THAT ISSUE AT THIS POINT.

20          NUMBER THREE IS, IS THE CONTRACT BETWEEN CITCON AND

21   DINO LAB ENFORCEABLE EVEN WITHOUT DINO LAB'S SIGNATURE?  THE

22   ANSWER TO THAT QUESTION, FOR THE PURPOSES OF THE ISSUE BEFORE

23   THE COURT, IS NO, THE CONTRACT IS NOT ENFORCEABLE BECAUSE DINO

24   LAB DID NOT SIGN IT, BECAUSE UNDER THE COPYRIGHT ACT 17 USC

25   204(A):

```
1                    "A TRANSFER OF COPYRIGHT OWNERSHIP

2           OTHER THAN BY OPERATION OF LAW IS NOT VALID

3           UNLESS AN INSTRUMENT OF CONVEYANCE OR NOTE OF

4           MEMORANDUM OF THE TRANSFER IS IN WRITING AND

5           SIGNED BY THE OWNER OF THE RIGHTS CONVEYED OR

6           SUCH OWNER'S DULY AUTHORIZED AGENT."

7           HERE DINO LAB IS THE AUTHOR OF THE CODE, AND THEY

8    WOULD HAVE HAD TO CONVEY THOSE RIGHTS IN WRITING, SIGNED BY

9    EITHER THE OWNER OR THE OWNER'S DULY AUTHORIZED AGENT, AND THAT

10   NEVER OCCURRED.

11           I WOULD DIRECT THE COURT TO A CASE THAT WAS CITED IN

12   OUR PAPERS THAT IS ON POINT, ALL FOURS, PROFESSIONAL PORTABLE

13   X-RAY INC. VERSUS NELSON, 301 F.SUPP.3D 943.

14           AND THE DISTRICT COURT IN THAT CASE HAD THE SAME

15   ISSUE BEFORE IT, WHICH WAS A CONTRACT HAD BEEN SENT AND IT WAS

16   NOT SIGNED BY THE PARTY WHO WROTE THE CODE.  AND THE COURT IN

17   THAT CASE HELD THAT, WHILE UNDER GENERAL CONTRACT PRINCIPLES,

18   YOU MIGHT BE ABLE TO FIND A CONTRACT BECAUSE THE COPYRIGHT ACT

19   SPECIFICALLY REQUIRES A WRITING SIGNED BY BOTH PARTIES, THAT

20   YOU COULD NOT FIND THAT THE RIGHTS TO THE CODE HAD BEEN CEDED

21   BY THE PARTY WHO AUTHORED IT, NAMELY THE PROGRAMMER.

22           THE COURT:  AND DID THAT CASE CONSIDER WHETHER THERE

23   MIGHT BE A TRADE SECRET THAT WAS CONVEYED OR NOT, OR IS IT JUST

24   A COPYRIGHT CASE?

25           MS. PIPKIN:  IT IS JUST A COPYRIGHT CASE, YOUR HONOR.
```

```
1        THE TRADE SECRET ISSUE IS ADDRESSED, THOUGH, BY THE

2   JUSTMED CASE, WHICH MAKES CLEAR THAT COPYRIGHT LAW DOES CONTROL

3   WHEN WE'RE TALKING ABOUT TRADE SECRETS THAT ARE EMBODIED IN

4   SOURCE CODE.

5        I'M GOING TO MOVE ON TO THE NEXT QUESTION THAT YOUR

6   HONOR HAS, WHICH IS, HOW DO THE FACTORS CONSIDERED BY THE COURT

7   IN JUSTMED INC. VERSUS BYCE APPLY HERE.

8        THE ANSWER IS, IS THAT THE FACTORS ABOUT WHETHER --

9   THERE THE ISSUE IS WHETHER THE PROGRAMMER WAS AN EMPLOYEE OR

10  INDEPENDENT CONTRACTOR.  HERE IT'S FULLY CONCEDED THAT DINO LAB

11  WAS A CONTRACTOR.

12       MR. HUANG, THE CEO OF CITCON, MAKES MULTIPLE

13  STATEMENTS THROUGHOUT HIS DECLARATION THAT CITCON WAS A

14  CONTRACTOR.  IT'S ALSO ALLEGED IN THE COMPLAINT -- OR NOT

15  CITCON -- BUT DINO LAB WAS A CONTRACTOR.

16       IT'S ALSO ALLEGED IN THE COMPLAINT THAT DINO LAB WAS

17  A CONTRACTOR IN WHICH -- IT'S ALLEGED IN THE COMPLAINT DINO LAB

18  WAS A CONTRACTOR.  SO THAT'S FULLY CONCEDED.  THERE'S NO ISSUE

19  OF MATERIAL FACT ON THAT ISSUE.

20       THE FINAL QUESTION THAT YOUR HONOR --

21       THE COURT:  WHAT ABOUT THE OTHER DINO LAB --

22       MS. PIPKIN:  YES.

23       THE COURT:  -- EXCUSE ME, JUSTMED FACTORS?

24       MS. PIPKIN:  ARE YOU TALKING ABOUT THE INDEPENDENT

25  CONTRACTOR VERSUS EMPLOYEE FACTORS, YOUR HONOR?
```

```
 1              THE COURT:  YEAH.

 2              MS. PIPKIN:  OKAY.  LET ME JUST LOOK AT MY BULLET

 3    POINTS HERE, YOUR HONOR.

 4              I'M GOING TO GO THROUGH THE FACTORS AS I'VE OUTLINED

 5    THEM HERE.

 6              THE COURT:  YES.

 7              MS. PIPKIN:  IN THAT CASE BYCE WAS AN INDIVIDUAL.

 8    HERE DINO LAB IS A -- IS A CORPORATE ENTITY.  BYCE WAS AN

 9    INVESTOR AND A BOARD MEMBER OF THE PLAINTIFF.  HERE DINO LAB IS

10    NOT AN INVESTOR OR A BOARD MEMBER OF CITCON.  BYCE WAS HIRED TO

11    REPLACE ANOTHER EMPLOYEE IN THAT CASE.  HERE DINO LAB WAS NOT

12    HIRED TO REPLACE ANOTHER EMPLOYEE.  THEY WERE HIRED

13    SPECIFICALLY TO PERFORM CONTRACTING WORK.  BYCE AGREED TO BE

14    PAID A SALARY AND SHARES OF STOCK IN THAT CASE.  HERE DINO LAB

15    WAS PAID BASED ON INVOICES THAT IT SUBMITTED FOR WORK PERFORMED

16    AS FAR AS WRITING SOURCE CODE.

17              ALSO, IN THAT CASE, BYCE WAS INCLUDED IN A COMPANY

18    PROFILE BROCHURE AND HAD A JUSTMED BUSINESS CARD.  HERE DINO

19    LAB IS NOT LISTED ON -- AT LEAST WE HAVE NO EVIDENCE AT THIS

20    POINT THAT DINO LAB WAS LISTED ON CITCON PROMOTIONAL MATERIALS.

21    BYCE WAS ALSO REFERRED TO AS THE DIRECTOR OF RESEARCH AND

22    DEVELOPMENT AND THE DIRECTOR OF ENGINEERING.  HERE DINO LAB DID

23    NOT HAVE ANY OFFICIAL POSITION IN THE COMPANY OTHER THAN TO BE

24    A CONTRACTOR TO WRITE SOURCE CODE.

25              AND ALSO IN THAT CASE, BYCE DID OTHER WORK FOR
```

1    JUSTMED, AS WELL AS INCLUDING UPDATING THE COMPANY'S WEBSITE

2    AND DEMONSTRATING THE PROGRAM AT TRADE SHOWS.   THAT'S NOT THE

3    CASE HERE.   DINO LAB'S SOLE FUNCTION WAS TO WRITE CODE.

4            **THE COURT:**   ALL RIGHT.   THANK YOU.

5            **MS. PIPKIN:**   THANK YOU.

6            THE FINAL QUESTION THAT YOUR HONOR HAS POSED IS, IS

7    THE DETERMINATION OF WORK-FOR-HIRE STATUS UNDER THE COPYRIGHT

8    ACT A LEGAL QUESTION FOR THE COURT TO DECIDE OR A QUESTION OF

9    FACT FOR THE JURY TO FIND.

10           THE ANSWER IS IT'S -- IN THIS CASE IT'S A LEGAL

11   QUESTION, BECAUSE THE KEY FACTS ARE UNDISPUTED -- THE FIRST

12   UNDISPUTED FACT IS THERE'S NO CONTRACT SIGNED BY BOTH PARTIES.

13   SECOND UNDISPUTED FACT IS DINO LAB WAS A CONTRACTOR, AND THAT

14   IS ALL THE COURT NEEDS TO KNOW AND TO -- TO DECIDE THIS CASE.

15           **THE COURT:**   THE *JUSTMED* DECISION HAS A LOT OF

16   DIFFERENT FACTORS THAT SEEM VERY FACTUAL.

17           **MS. PIPKIN:**   YES.

18           **THE COURT:**   AND CITCON HAS ARGUED THAT THERE'S A LOT

19   OF DIFFERENT DISPUTES OF FACT AS TO APPLYING THOSE FACTORS.

20   SO, IF I AGREE WITH YOU, I SUPPOSE, THAT THERE'S NO DISPUTES

21   ABOUT THOSE FACTS, THEN YOU WOULD WIN.   BUT IF THERE IS A

22   DISPUTE OF THEM, IT SEEMS LIKE THEN I HAVE TO GO THEIR WAY.

23           **MS. PIPKIN:**   UNDERSTOOD, YOUR HONOR.   AND THAT'S

24   RIGHT.   THAT'S YOUR ROLE.

25           AND WHAT I AM VERY COMFORTABLE WITH, AND IF I

1   WEREN'T, I WOULDN'T BE STANDING HERE SAYING IT, IS THAT WE ARE

2   TALKING ABOUT WHAT IS REQUIRED UNDER THE COPYRIGHT ACT TO

3   TRANSFER OWNERSHIP OF SOURCE CODE.

4            UNDER THE WORK-FOR-HIRE DOCTRINE, THERE ARE ONLY TWO

5   WAYS THAT CAN BE WORK-FOR-HIRE.  NUMBER ONE, IF IT'S AN

6   EMPLOYEE WHO WROTE THE CODE, WHICH CITCON'S NOT SAYING.

7   THEY'RE NOT SAYING THAT THE DINO LAB PROGRAMMERS WERE

8   EMPLOYEES.  SO THAT'S NOT IN DISPUTE.

9            THE SECOND ISSUE -- THE SECOND WAY IT CAN BE

10  WORK-FOR-HIRE IS IF THERE'S A WRITTEN AGREEMENT SIGNED BY BOTH

11  PARTIES, AND CITCON HAS NOT CITED AND I AM NOT AWARE OF A CASE

12  IN WHICH AN AGREEMENT WAS FOUND BASED ON -- THAT WASN'T SIGNED

13  BY BOTH PARTIES AS HERE.

14           WHAT CITCON IS TRYING TO ARGUE IS THAT BASED ON

15  GENERAL PRINCIPLES OF CONTRACT LAW, PEOPLE THOUGHT MAYBE THERE

16  WAS A CONTRACT, ET CETERA.  AND THAT MAY ALL BE FINE, WELL, AND

17  GOOD FOR A NORMAL CONTRACT CASE WHERE WE'RE TRYING TO

18  DETERMINE, OKAY, HOW MUCH DID CITCON HAVE TO PAY DINO LAB, OR,

19  WHAT DID THEY AGREE AS FAR AS WHAT THE HOURS WOULD BE FOR THE

20  CONTRACTORS, OR SOMETHING LIKE THAT.

21           WHAT WE'RE TALKING ABOUT HERE IS A STATUTORY

22  REQUIREMENT IN THE COPYRIGHT ACT THAT IT HAS TO BE SIGNED BY

23  BOTH PARTIES.  THAT CANNOT BE SUPERSEDED BY GENERAL COMMON LAW

24  PRINCIPLES OF CONTRACT, WHICH IS WHAT THE *PPX* COURT EXPLAINS

25  QUITE WELL, WHICH IS WHY I WOULD ENCOURAGE THE COURT TO TAKE A

1   LOOK AT THAT CASE.

2          **THE COURT:**  ALL RIGHT.  THANK YOU.  SO YOU'VE

3   ANSWERED MY QUESTIONS.  ANYTHING FURTHER IN SUPPORT OF YOUR

4   MOTION THAT YOU WOULD LIKE ME TO CONSIDER?

5          **MS. PIPKIN:**  NO, YOUR HONOR.

6          **THE COURT:**  ALL RIGHT.  THANK YOU VERY MUCH.

7          DR. LI.

8          **DR. LI:**  YOUR HONOR, I WOULD JUMP INTO THE COPYRIGHT

9   VERSUS THE TRADE SECRET ISSUE RIGHT AWAY.  I WILL ADDRESS THE

10  SMALL THINGS LATER.

11         AND IT'S BECAUSE I FOUND THIS REALLY IMPORTANT TO

12  YOUR HONOR'S DECISION HERE.  SO COPYRIGHT ONLY PROTECTS

13  EXPRESSION, AND THE TRADE SECRET PROTECTS PRIMARILY IDEAS.  AND

14  IF THE EXPRESSION IS YOUR SECRET, IT COULD BE TRADE SECRET.

15         SO THERE'S ONLY A MINOR OVERLAP BETWEEN TRADE SECRET

16  AND COPYRIGHT LAW HERE, AND THE COPYRIGHT LAW DOES NOT CONTROL

17  IN THIS CASE.  HERE'S WHY, YOUR HONOR.

18         SO A SOURCE CODE, MOST OF THINGS -- WHEN I WAS IN LAW

19  SCHOOL, THE BASIC THING WAS PEOPLE'S REALIZATION AT THE TIME,

20  COPYRIGHT IS REALLY BAD LAW FOR PROTECTING SOURCE CODE, BECAUSE

21  VERY LITTLE THING IN SOURCE CODE ARE ACTUALLY EXPRESSIONS.

22  MOST OF THE TIME IT'S CALLED THIS MERGER DOCTRINE.  IF THERE'S

23  ONLY ONE WAY TO EXPRESS THIS IDEA AND IN THE SOURCE CODE AND

24  IT'S DEFINED BY THE CODING LANGUAGE, THEN THERE'S NO EXPRESSION

25  TO SPEAK OF.  SO YOUR COPYRIGHT ON THE SOURCE CODE MEANS

1    NOTHING AT THAT POINT (INDISCERNIBLE) MERGER DOCTRINE.

2             SO MOST OF THE INTELLECTUAL PROPERTY IN THE SOURCE

3    CODE IN THIS SITUATION IS TRADE SECRET, NOT COPYRIGHT, AND

4    MAYBE THERE A LITTLE BIT OF COPYRIGHT, BUT THAT'S NOT

5    DETERMINED IN THIS CASE.

6             SO WHAT HAPPENED HERE IS -- AND OUR CLIENT HIRE A

7    COMPANY, DINO LAB, TO MAKE CODING.  OKAY?  AND THERE IS THIS

8    CONTRACT.  THERE'S A CONTRACT BASED ON GENERAL CONTRACT LAW

9    SHOULD BE ENFORCEABLE.

10            HOWEVER, THEY COME OUT AND SAY, WAIT A MINUTE, IT'S

11   NOT ENFORCEABLE BECAUSE UNDER COPYRIGHT LAW, OKAY, YOU NEED TO

12   SIGN THIS THING TO BE ENFORCEABLE.  ASSUMING THAT'S TRUE, OKAY.

13   ASSUMING THEY DID NOT SIGN THIS, BUT (INDISCERNIBLE) WHETHER TO

14   SIGN IT, BECAUSE THE WAY THEY BEHAVED AFTERWARD IS TOTALLY LIKE

15   THERE WAS A CONTRACT.

16            WE TOLD YOU BOTH PARTIES RELIANCE ON THE RATES,

17   PREVAILING RATES, AND THE MONTHLY BILLING WAY, AND ALL THIS AND

18   IT SHOWS THERE'S LIKELIHOOD HE SIGNED.  OKAY?  HE JUST DIDN'T

19   GIVE IT TO US FOR SOME REASON, OR MY CLIENT GET LOST FOR SOME

20   REASON.  BUT AT THIS POINT, WE COULD NOT FIND A SIGNED COPY,

21   BUT THE PARTIES AGREE --

22            **THE COURT:**  YOU AGREE THAT I DON'T HAVE IN THE RECORD

23   A SIGNED COPY.  THERE'S NOT A SIGNED COPY IN THE RECORD?

24            **DR. LI:**  THAT'S RIGHT, BUT CIRCUMSTANTIAL EVIDENCE

25   SHOWS THERE COULD BE A SIGNED COPY.  OKAY?  SO I'M NOT CONCEDED

1    THERE IS NO SIGNED COPY, OKAY?

2            BUT FOR THE SAKE OF ARGUMENT FOR NOW, LET'S JUST SAY

3    THERE'S NO SIGNED COPY.  OKAY?  NO SIGNED COPY.  WHAT THAT

4    INVALIDATE OF THIS ASSIGNMENT OF IP IS ONLY TO COPYRIGHT.

5    OKAY?

6            THE GENERAL CONTRACT STILL STAND AS TO ALL OTHER

7    INTELLECTUAL PROPERTY -- PROPERTIES IS SPECIALLY TRADE SECRET,

8    YOUR HONOR.  AND THERE'S ALSO CONFIDENTIALITY AGREEMENT IN THAT

9    CONTRACT THAT ALSO PROTECT THE TRADE SECRET.  I DON'T -- I

10   DON'T EVEN NEED THAT IP PROVISION AS LONG AS TESTIFY TO THE

11   CONFIDENTIALITY PROVISION IN THAT CONTRACT.  THAT, BY ANY

12   MEANS, IS STILL THERE, BECAUSE THAT HAS NOTHING TO DO WITH

13   COPYRIGHT.  OKAY?

14           WITH THE CONFIDENTIALITY AGREEMENT, DINO LAB HAS NO

15   BUSINESS TO TAKE THIS CODE TO ANYWHERE IF THIS CODE CONTAINS

16   CONFIDENTIAL INFORMATION OF CITCON.  THERE'S SEVERAL WAYS

17   THERE'S CONFIDENTIAL INFORMATION MADE INTO THIS CODE.  OKAY?

18           FIRST, THERE IS -- NOT ALL CODE WAS WRITTEN BY DINO

19   LAB.  THERE'S CODE WRITTEN BY ALL UNITED, AND SHE SAID THERE'S

20   NO -- COUNSEL SAID THERE IS NO EVIDENCE.

21           WE HAVE MR. HUANG'S DECLARATION, WHO IS THE CEO, WHO

22   ESSENTIALLY STARTED THE COMPANY AND IS A CODER HIMSELF, AND IS

23   THE ARCHITECT OF THE ENTIRE SOFTWARE HIMSELF.  HE TESTIFIED

24   UNDER OATH IN HIS DECLARATION.  HE SAID AT THE BEGINNING HE

25   HIRED THIS ALL UNION IN CHINA TO MAKE THE CODINGS.  AND BY THE

1   TIME MR. HUA SHOWED UP, BY THE TIME DINO LAB SIGN UP IN

2   APRIL -- THEY SIGNED THE CONTRACT IN MARCH, AND THEY START

3   WORKING IN APRIL, 2017 -- THE COMPANY, CITCON, ALREADY HAD A

4   FUNCTIONAL SET OF CODE.  THEY WERE DOING DEMOS.  THEY WERE

5   SIGNING UP CLIENTS AT THE TIME.

6           AND THE ENTIRE BACK END WAS NOT -- I MEAN, IT WAS

7   THERE.  YOU KNOW, THE CODE HAS A BACK END AND FRONT END.  OKAY?

8   THE FRONT END IS CODE CALLED ANDROID CODE.  THE ANDROID CODE

9   RESIDES ON THIS KIND OF POS MACHINE, THE POINT-OF-SALE DEVICE.

10  THAT CODE RESIDE IN THERE.

11          AND THIS ANDROID CODE IS THE FRONT END WOULD

12  COMMUNICATE WITH OUR SERVER IN THE BACK END.  THE BACK END WAS

13  ALL FINISHED WHEN MR. YUE HUA SHOWED UP, AND HIS JOB WAS TO

14  IMPROVE ON THE FRONT END SO THE POS MACHINE CAN PROPERLY

15  FUNCTION.

16          AND SO THERE IS EVIDENCE, ADMISSIBLE EVIDENCE.  WE

17  ONLY NEED TO PUT MR. HUA -- MR. HUANG ON THE STAND TO TESTIFY

18  ON THAT.  THAT WILL CREATE DISPUTED ISSUE OF FACT.  AND HE

19  SUBMIT A DECLARATION TO THAT EFFECT.

20          SO IT'S NOT UNDISPUTED AT THIS POINT DINO LAB WROTE

21  ALL THE CODE.  THAT'S NUMBER ONE.  OKAY?  IF THEY DIDN'T WRITE

22  ALL THE CODE.  SO IN A PART OF THE CODE DEFINITELY CONTAINS

23  CONFIDENTIAL TRADE SECRET OF US.  THAT'S ONE WAY THE

24  CONFIDENTIAL INFORMATION MADE IT INTO THIS CODE, WHICH WAS

25  TAKEN AWAY BY DINO LAB.

1        THE SECOND IS EVEN FOR THE CODE DINO LAB WROTE, THEY

2   WROTE THE CODE BASED ON THE CONFIDENTIAL INFORMATION PROVIDED

3   TO THEM.   THIS ALSO TESTIFIED BY MR. HUANG.   AND WE HAVE A LOT

4   OF EMAILS TO SHOW, AND THIS INTERFLOWS -- AND WE'LL SHOW AT

5   TRIAL -- THE INTERFLOWS BETWEEN DINO LAB -- I MEAN, CITCON'S

6   MANAGER AND THE DINO LAB'S CODER.   THE CODERS, THEY BASICALLY

7   (INDISCERNIBLE) IN THOSE PRECISE LANGUAGE.   OKAY?   SO HE TELL

8   ME WHAT I SHOULD DO, I PUT IT DOWN WHAT SHOULD I DO.   SO THAT'S

9   HOW THIS CODE FORMED.

10       THIS CODING ITSELF, ASSUMING THEY WROTE THIS CODE,

11  THIS PART OF THE CODE THEY WROTE, OKAY?   AND ASSUMING THEY OWN

12  THE COPYRIGHT EVEN AT THIS POINT, OKAY?   BUT THAT PART OF THE

13  CODE STILL CONTAINS CONFIDENTIAL INFORMATION WHICH IS A TRADE

14  SECRET OF CITCON, AND DINO LAB HAS NO RIGHT TO GIVE IT AWAY.

15  DESPITE THE FACT THEY OWN EXPRESSION OF THAT CODE -- YOU KNOW,

16  THE DICHOTOMY OF BETWEEN IDEAS AND EXPRESSIONS, YOU KNOW, FOR

17  THE PART -- LET'S SAY DINO LAB OWNED THE WHOLE CODE, OKAY, MAKE

18  IT SIMPLER; TO MAKE IT SIMPLER THEY OWN WHOLE ANDROID CODE,

19  WHICH IS NOT THE CASE.

20       LET'S SAY THEY OWN THE WHOLE ANDROID CODE COPYRIGHT.

21  THERE'S TWO OWNERSHIP, RIGHT?   I UNDERSTAND.   EVEN OUR OWN

22  MOTION, I LOOK BACK, IS NOT CLEAR WHAT OWNERSHIP THEY'RE

23  TALKING ABOUT.   THERE'S OWNERSHIP OF TRADE SECRET.   THERE'S

24  OWNERSHIP OF COPYRIGHT.   OKAY?

25       YOU OWN A CODE, THERE'S GOING TO BE TWO MEANINGS.   I

1    OWN TRADE SECRET INSIDE THE CODE, WHICH IS IDEAS MOSTLY, AND I

2    OWN THE COPYRIGHT OF THE CODE, WHICH IS JUST EXPRESSION.  UNDER

3    NO CIRCUMSTANCES COPYRIGHT OF THE CODE CAN EXTEND TO IDEAS,

4    UNDERLYING IDEA.

5           SO UNDER NO CIRCUMSTANCES, YOUR HONOR -- IT'S WELL

6    ESTABLISHED IN COPYRIGHT LAW, YOU CAN USE YOUR COPYRIGHT IN THE

7    CODE TO SAY THAT EXTENDED TO THE UNDERLYING IDEAS.  THE

8    UNDERLYING IDEAS ARE TRADE SECRETS HERE, AND THAT'S WHY

9    COPYRIGHT LAW DOES NOT CONTROL HERE.

10          AND I CAN -- ASSUMING I CAN JUST ADMIT FOR THE

11   PURPOSES OF HEARING, OKAY, THERE'S NO SIGNATURE THEY SIGN ON

12   THAT CONTRACT.  THAT STILL IN -- STILL ONLY INVALID THE

13   CONVEYANCE OF THE TRANSFER, THE COPYRIGHT OF THE CODE.  THAT

14   DOES NOT GIVE THEM THE RIGHT TO TAKE ON THE TRADE SECRET.

15          **THE COURT:**  ALL RIGHT.  I UNDERSTAND YOUR ARGUMENT.

16          **DR. LI:**  OKAY.  ALL RIGHT.

17          SO -- OH, ONE THING IS COUNSEL JUST MENTIONED THE

18   FIVE ALGORITHM, AND THAT'S, I BELIEVE, ARE MARKED CONFIDENTIAL

19   IN OUR -- JUST CONFIDENTIAL, NOT ATTORNEYS-EYES-ONLY -- IN OUR

20   COMPLAINT.  SO IN THIS HEARING WE WOULD LIKE TO MARK THAT AS

21   CONFIDENTIAL, TOO.

22          EARLY ON SHE MENTIONED THIS FIVE CATEGORY OF A

23   ALGORITHM.  I BELIEVE THAT'S CONFIDENTIAL.  IF IT IS INDEED, WE

24   WOULD LIKE THE CHANCE TO REVIEW THAT AND MAKE SURE THAT NOT GOT

25   ACCIDENTLY DISCLOSED.

1          AND COUNSEL ALSO CITED A CASE CALLED *AGENCY*

2  *SOLUTIONS*.

3          **THE COURT:**  YES.

4          **DR. LI:**  IN THAT CASE SAYS INFORMATION VERSUS IDEAS,

5  SAYS YOU JUST HAVE DESIGN, THAT'S NOT YOUR TRADE SECRET.  THE

6  SKELETAL DESIGN, EVERYBODY KNOWS, THAT PROBABLY NOT YOUR TRADE

7  SECRET UNTIL YOU PUT DOWN THE INFORMATION.

8          AND HERE WE'RE NOT TALKING ABOUT JUST A SKELETAL

9  DESIGN.  WE'RE TALKING ABOUT EVERY IDEA IN THAT SOURCE CODE IS

10 OUR TRADE SECRET, BECAUSE THEIR COPYRIGHT -- ASSUMING THEY HAVE

11 A COPYRIGHT ON PART OF THE CODE, ONLY EXTEND TO EXPRESSION AND

12 IT CANNOT IN ANY WAY (INDISCERNIBLE).

13         SO IT'S NOT ABOUT INFORMATION VERSUS IDEA.  IT'S

14 ABOUT EXPRESSION VERSUS IDEA.  EXPRESSION IS PROTECTED BY

15 COPYRIGHT.  IF YOU OWN THE COPYRIGHTED CODE, THAT'S THE ONLY

16 THING YOU OWN, THE EXPRESSION.  WHAT THAT MEANS IS I HAVE THE

17 IDEA HOW TO ACHIEVE CERTAIN FUNCTIONS, AND YOU, AS A CODER, USE

18 YOUR KNOWLEDGE OF THE SPECIFIC GRAMMAR OF THE CODING TO PUT THE

19 IDEA INTO PLACE.  THAT'S CALLED EXPRESSION.  AND LOT OF TIME

20 THAT'S ONLY WAY TO EXPRESS THAT IDEA WITH OUR CODING.

21         IN THAT SITUATION UNDER THE MERGER DOCTRINE -- AND

22 THERE'S NO COPYRIGHT AT ALL.  THERE'S NO PROTECTABLE COPYRIGHT,

23 BECAUSE ONLY YOUR COPYRIGHT IS (INDISCERNIBLE) IDEAS, THEN

24 THERE'S NO COPYRIGHT.

25         SO THIS IS REALLY IMPORTANT.  THIS IS NOT ABOUT

```
 1    INFORMATION VERSUS IDEA.  THE DICHOTOMY IS EXPRESSION VERSUS

 2    IDEA.   TRADE SECRET PROTECTS IDEAS, AND COPYRIGHT ONLY PROTECTS

 3    EXPRESSION.

 4            AND THE -- SO THERE'S TWO -- COUNSEL MENTIONED THE

 5    TWO SIGNATURE REQUIREMENT.  IF YOU CAN LOOK AT THAT TWO STATUTE

 6    IS ALL COPYRIGHT.  SO IF YOU CONVEY, IF YOU ASSIGN YOUR

 7    COPYRIGHT TO SOMEBODY, YOU NEED A SIGNED, WRITTEN DOCUMENT.  IF

 8    YOU -- YOU DESIGN A CONTRACT (INDISCERNIBLE) AS WORK

 9    MADE-FOR-HIRE, YOU NEED A SIGNED DOCUMENT.  IT'S ALL ABOUT

10    COPYRIGHT.

11            I CAN JUST ASSUME, YOU KNOW, THERE'S NO SIGNATURE,

12    AND DINO LAB OWNS THE COPYRIGHT OF THE PART OF THE CODE THEY

13    WROTE, THAT STILL DOES NOT AFFECT THE CASE.  WE'RE TALKING

14    ABOUT TRADE SECRET.

15            THAT'S WHY THIS CASE -- NOWHERE IN THIS CASE YOU CAN

16    FIND ANY COPYRIGHT ASSERTION.  MY CLIENT DID NOT EVEN APPLY FOR

17    A COPYRIGHT FOR THE SOURCE CODE, BECAUSE IN THIS DAY AND AGE,

18    IT'S ALMOST IMPOSSIBLE TO PROTECT YOUR SOURCE CODE WITH

19    COPYRIGHT.  COPYRIGHT ONLY PROTECT A VERY SUPERFICIAL LAYER OF

20    YOUR SOURCE CODE CALLED EXPRESSION.  THAT EXPRESSION IS RARE

21    AND FAR IN BETWEEN IN THE SOURCE CODE.  THAT'S WHY IT'S BAD

22    FORM OF LAW FOR PROTECTING SOURCE CODE.

23            AND WE ARE NOT ALLEGING ANY COPYRIGHT VIOLATION.

24    WE'RE NOT EVEN ALLEGING WE OWN THE COPYRIGHT AT THIS POINT, SO

25    THAT'S NOT AN ISSUE.
```

1    **THE COURT:**  I GOT THAT.  YOU GOT ONE MORE MINUTE OF

2    ANY ADDITIONAL DOCUMENTS.

3    (SIMULTANEOUS COLLOQUY.).

4    **DR. LI:**  OKAY.  *JUSTMED, JUSTMED* CASE, YEAH, ALL THE

5    FACTORS THERE ARE FOR THE JOB OF DISTINGUISHING WHETHER THIS

6    WORK WAS DONE BY EMPLOYEE IN A CONTRACT.  YEAH, FOR THAT

7    PURPOSE WE CONCEDE, LIKE I SAID, THEY'RE CONTRACTORS.  SO

8    THERE'S NO REASON TO GO INTO THAT FACTOR (INDISCERNIBLE) FACTOR

9    TEST, BUT THERE ARE MANY OTHER DISPUTED ISSUES OF FACT IN THIS

10   CASE OTHER THAN THAT.  YEAH.

11   **THE COURT:**  OKAY.  THANK YOU VERY MUCH.

12   ANYTHING FURTHER?

13   **MS. PIPKIN:**  I WOULD JUST NOTE THAT YOUR HONOR CAN

14   ALSO ORDER, EVEN IF SUMMARY JUDGMENT IS NOT GRANTED ON THE

15   CLAIM ITSELF, YOUR HONOR HAS THE POWER TO DETERMINE THAT

16   ANYTHING WRITTEN BY DINO LAB BELONGS TO DINO LAB AND CITCON

17   CAN'T HAVE THAT AS PART OF THEIR CLAIM.  SO I JUST THROW THAT

18   IN THERE.

19   **THE COURT:**  ALL RIGHT.

20   **MS. PIPKIN:**  HOPEFULLY, DOESN'T REQUIRE --

21   **DR. LI:**  NO, THAT'S NOT --

22   **MS. PIPKIN:**  -- ADDITIONAL --

23   **DR. LI:**  THAT'S NOT TRUE.

24   **THE COURT:**  I UNDERSTAND YOUR ARGUMENT.

25   **DR. LI:**  OKAY.

1      **THE COURT:**  SO I'M GOING TO TAKE THE MOTION FOR

2   SUMMARY JUDGMENT, PARTIAL SUMMARY JUDGMENT, UNDER SUBMISSION.

3   I'LL HAVE A WRITTEN ORDER FOR YOU --

4      **MS. PIPKIN:**  THANK YOU.

5      **THE COURT:**  -- AS SOON AS I CAN.  SO THAT CONCLUDES

6   THE HEARING ON THE SUMMARY JUDGMENT.  NEXT ISSUE IS THE MOTION

7   FOR SANCTIONS.  AND I'VE READ BOTH THE MOTION AND THE

8   OPPOSITION.

9      SO, DR. LI, FIRST IN OBSERVATION -- AND THIS INFORMS

10  MY THINKING ON THIS -- THERE WERE AT LEAST SEVERAL STEPS ALONG

11  THE WAY WHERE YOU HAD AN ALTERNATIVE PROCEDURAL PATH TO WHAT

12  YOU CHOSE ON BEHALF OF YOUR CLIENT.  LET ME TELL YOU WHAT THOSE

13  WERE.

14     THERE'S A QUESTION ABOUT WHETHER THE INFORMATION THAT

15  YOU OBSERVED IN DISCOVERY AS FAR AS THE SOURCE CODE OF RIVERPAY

16  IS CONFIDENTIAL OR NOT.  ONE OF THE ARGUMENTS IS THAT

17  INFORMATION SHOULD NOT EVEN BE COVERED BY THE PROTECTIVE ORDER,

18  SO THERE'S NO HARM IN USING IT FOR THE MAPLEPAY CASE BECAUSE IT

19  WAS NOT CONFIDENTIAL INFORMATION TO BEGIN WITH.  AND THAT'S AN

20  ARGUMENT THAT YOU'VE MADE.

21     YOU HAD AN OPTION UNDER THE PROTECTIVE ORDER TO ARGUE

22  THAT AND TO PERSUADE RIVERPAY THAT IT WASN'T CONFIDENTIAL, OR,

23  IF THEY WOULDN'T AGREE, TO COME TO COURT TO SEEK A COURT ORDER

24  SAYING IT'S NOT CONFIDENTIAL, AND/OR, EVEN IF IT IS

25  CONFIDENTIAL, YOU COULD STILL USE IT IN ANOTHER LAWSUIT.

1          SO YOU COULD -- PROCEDURALLY, YOU COULD HAVE DONE

2     THAT, BUT YOU DIDN'T.  INSTEAD YOU USED IT, AND YOU'VE GOT

3     ARGUMENTS THAT YOU DIDN'T USE IT, BUT I THINK THE EVIDENCE IS

4     THAT YOU USED IT IN THE SECOND CASE.  AND SO THAT WAS A

5     PROCEDURAL CHOICE THAT YOU MADE, THAT NOW WE'RE IN A POSITION

6     OF LOOKING BACK TO DECIDE IF THAT WAS A GOOD DECISION OR NOT,

7     BUT IF YOU HAD COME TO COURT AND ASKED FOR PERMISSION, WE

8     WOULDN'T BE IN THIS POSITION.  THAT'S THE FIRST EXAMPLE.

9          THE SECOND EXAMPLE IS IN YOUR INTERPRETATION OF THE

10    PROTECTIVE ORDER, WHETHER THIS LITIGATION REFERS TO THE SECOND

11    CASE, THAT MAPLEPAY CASE, OR NOT, AND YOU'VE GOT AN ARGUMENT TO

12    BE -- BASED ON THE PROTECTIVE ORDER THAT THE PROTECTIVE ORDER

13    IS NOT VIOLATED BY USING IT IN THE SECOND LAWSUIT.  BUT

14    PROCEDURALLY YOU HAD AN OPTION, WHICH IS I INVITED YOU TO FILE

15    A MOTION SEEKING LEAVE TO AMEND IN THIS CASE TO ADD THOSE

16    DEFENDANTS AND TO EXPAND THE CASE, AND I SAID THAT HERE ON THE

17    RECORD.  AND YOU DECIDED NOT TO PURSUE THAT OPTION EVEN THOUGH

18    I TOLD YOU THAT YOU COULD DO IT, AND, INSTEAD YOU JUST FILED A

19    NEW CASE WITHOUT SEEKING LEAVE OF THE COURT, AND YOU SAID,

20    WELL, I DON'T THINK IT'S A VIOLATION AND WE'LL SEE WHAT HAPPENS

21    IF I DO IT.

22          AND YOUR INTERPRETATION COULD BE RIGHT.  YOU MIGHT

23    HAVE THE BEST STATUTORY INTERPRETATION OF THE PROTECTIVE ORDER.

24    BUT YOU DIDN'T GIVE YOUR ADVERSARY A CHANCE TO RESPOND TO THAT

25    ARGUMENT.  YOU DIDN'T GIVE THE COURT AN OPPORTUNITY TO TELL YOU

1   IF YOU WERE RIGHT OR WRONG.  YOU JUST WENT RIGHT AHEAD UNDER

2   THE ASSUMPTION YOU WERE RIGHT, AND THAT'S TWO TIMES YOU HAD A

3   PROCEDURAL OPTION TO DO SOMETHING DIFFERENT, AND YOU DECIDED TO

4   JUST DO WHAT YOU WANTED TO DO AND TO SEE WHAT WOULD HAPPEN.

5           THAT'S A VERY RISKY APPROACH, AND YOU MIGHT END UP

6   BEING RIGHT IN YOUR INTERPRETATIONS, BUT WE DON'T -- WE DIDN'T

7   HAVE TO BE HERE.  WE COULD HAVE DEALT WITH THIS AT THE FRONT

8   END AND RESOLVED IT, POTENTIALLY IN YOUR FAVOR WITH YOU BEING

9   RIGHT ON EVERYTHING.

10          AND YOU STILL COULD BE RIGHT ON EVERYTHING, BUT YOU

11  WOULDN'T HAVE THE SAME RISK TO YOURSELF AND YOUR CLIENT OF

12  BEING TOLD THAT YOU'RE WRONG, BECAUSE SOMETIMES YOUR ADVERSARY

13  AND THE COURT MIGHT HAVE A DIFFERENT INTERPRETATION.  YOU MIGHT

14  HAVE MISSED SOME AUTHORITIES.  YOU MIGHT BE BLINDED BY YOUR

15  ALLEGIANCE TO YOUR CLIENT TO INTERPRET THINGS A CERTAIN WAY IN

16  YOUR FAVOR.  IT MAY BE THAT YOUR ADVERSARY AND JUDGE JUST DON'T

17  GET THE ARGUMENTS AS WELL AS YOU DO.

18          SO THERE'S ALWAYS A CHANCE THAT YOU COULD BE WRONG,

19  AND IT'S THE POSSIBILITY OF BEING WRONG, THE HUMILITY OF

20  RECOGNIZING THAT YOU MIGHT NOT ALWAYS BE RIGHT THAT'S PUT YOU

21  IN THIS PROCEDURAL POSITION.

22          SO THAT'S MY -- THAT'S MY -- THOSE ARE MY QUESTIONS

23  TO YOU, BUT IT'S -- A BIT OF SHARING MY INSIGHT IS WE DIDN'T

24  HAVE TO BE HERE ON A MOTION FOR SANCTIONS BECAUSE THERE WERE

25  PROCEDURAL OPTIONS THAT YOU COULD HAVE PURSUED, BUT DIDN'T,

1   THAT MIGHT HAVE RESOLVED ALL OF THIS IN ADVANCE, AND I DON'T

2   UNDERSTAND, AND I WANT TO HEAR FROM YOU NOW WHY YOU DIDN'T

3   PURSUE THOSE OPTIONS.

4           **DR. LI:**   THAT'S ALL FAIR OBSERVATION, EVEN I CAN SAY

5   A FAIR CRITICISM, YOUR HONOR.   BUT, I MEAN, IN LITIGATION

6   SOMETIMES YOU MAKE INSTANT DECISIONS.   HERE'S WHY THE DECISION

7   WAS MADE TO PROCEED THAT WAY.

8           IN TERMS OF PROCEDURE CHOICE OF WHAT I SHOULD HAVE

9   WENT THROUGH THE PROCESS OF MEET AND CONFER (INDISCERNIBLE), I

10  NEVER GOT INDICATION TO THEM THIS WAS CONFIDENTIAL, I'M NOT

11  SUPPOSED TO USE IT.   YOU SAW THE EMAIL.   I TOLD THEM I'M GOING

12  TO USE THIS INFORMATION TO FILE NEW SUIT.   THEY NEVER SAID

13  ANYTHING UNTIL I FILED THE SUIT, AND THEY COME BACK, SAID, OH,

14  YOU VIOLATED PROTECTIVE ORDER.   SO THAT WASN'T EVEN THE ISSUE.

15          IF THEY HAVE THE ISSUE, I MAY (INDISCERNIBLE) TWICE,

16  OKAY, THEN I SHOULD PROBABLY ASK THE JUDGE, BUT YOU LOOK AT THE

17  EMAILS, THE EMAIL I TOLD THEM WE'RE GOING TO DO THAT.   THEY

18  NEVER PROTESTED, SAID, OH, YOU SHOULD NOT USE THIS.

19          AND THE SECOND REASON WAS AT THE TIME WE ARE GOING TO

20  FILE THE AMEND PART OF THAT CASE AGAINST MAPLEPAY, AND IT'S

21  JUST MORE CONVENIENT (INDISCERNIBLE) AT THAT MOMENT.   SO I

22  DIDN'T SEE THERE WAS ANY REASON NOT ADD IT AT THE TIME, SO WE

23  ADD IT TO THE FILE TOGETHER.   THAT'S TO REDUCE LATER I HAVE TO

24  AMEND THAT KIND OF CHOICES.   THAT, IN PART, EXPLAIN WHY WE DID

25  NOT SEEK LEAVE TO AMEND.

1        AND THE OTHER IMPORTANT PART OF SEEKING LEAVE TO

2   AMEND, YOUR HONOR, IT'S REALLY HARD TO OVERCOME THIS RULE 60, I

3   BELIEVE, FOR GOOD CAUSE, BECAUSE AT THE TIME WE ARE WAY PAST

4   YOUR HONOR'S DEADLINE FOR AMENDING COMPLAINT, PLEADINGS.  AND

5   IT WAS 11 2018, AND BY THE TIME WE ARE DOING THIS WAS

6   APRIL 2019.

7        AND SO PART OF THAT INFORMATION WE HAVE AGAINST

8   MR. MIAO ARGUABLY WE ALREADY KNOW.  WE ACTUALLY HAD INFERENCE,

9   LIKE I SAID, IN MY BRIEF.  WE HAD INFERENCE MS. (INDISCERNIBLE)

10  MIGHT BE INVOLVED IN THIS, NUMBER ONE.

11       **THE COURT:**  YOU ARE MOVING INTO A DIFFERENT ARGUMENT,

12  WHICH IS YOU HAD OTHER INFORMATION.  MY QUESTION IS WHY DIDN'T

13  YOU ASK FOR PERMISSION BEFORE YOU FILED YOUR NEW COMPLAINT?

14       **DR. LI:**  FOR PERMISSION FOR LEAVE TO AMEND?

15       **THE COURT:**  YEAH, FOR LEAVE TO AMEND.

16       **DR. LI:**  YEAH.

17       **THE COURT:**  OR YOU COULD HAVE SAID -- PART OF WHAT

18  COULD HAVE OCCURRED IF I DENIED LEAVE TO AMEND, YOU COULD HAVE

19  SAID, WELL, YOUR HONOR, IF YOU'RE NOT GOING TO GRANT LEAVE TO

20  AMEND, WE WANT TO GIVE NOTICE TO THE OTHER PARTY THAT WE ARE

21  THEN GOING TO FILE THIS OTHER LAWSUIT, AND HERE'S OUR PLAN.

22  YOU COULD EVEN ATTACH -- YOU COULD SERVE THEM WITH A COPY OF

23  IT.  THAT WOULD GIVE AN OPPORTUNITY FOR THEM AND FOR THE COURT

24  TO SAY, NO, THAT WOULD BE A VIOLATION, BEFORE YOU FILED IT.

25  PROCEDURALLY, THAT WAS A -- THAT WOULD HAVE BEEN AN OPPORTUNITY

1   TO RESOLVE THIS SHORT OF A MOTION FOR SANCTIONS.

2          **DR. LI:**  OH, LIKE I EXPLAINED EARLIER, ONE REASON FOR

3   NOT ASKING -- FOR NOT GETTING TO WHETHER THE INFORMATION WE

4   USED ARE CONFIDENTIAL, WE COULD HAVE USED IT, WE DID NOT HAVE

5   ANY INDICATION THAT IT WAS NOT CONFIDENTIAL.  AND IN THIS CASE,

6   YOUR HONOR, YOU LOOK AT ALL THE MOTIONS WE FILED AND THEY

7   FILED, THERE'S NEVER AN ABSOLUTE REQUIREMENT ANY INFORMATION

8   DERIVED FROM PROTECTED MATERIALS SHOULD BE TREATED AS PROTECTED

9   MATERIAL.

10          TODAY I WAS LOOKING OUR MOTION FOR OPPOSITION TO

11   MOTION FOR SUMMARY JUDGMENT.  A LOT OF THOSE CONCLUSION

12   LIABILITIES STATEMENT (INDISCERNIBLE) LIABILITY STATEMENT, THEY

13   TOOK OUR CODE, ALL THAT STUFF, THAT COME FROM REVIEWING THE

14   CODE, REVIEWING THEIR CONFIDENTIAL INFORMATION, BUT NOBODY EVER

15   SAID, BECAUSE YOU DERIVE THIS INFORMATION TO ALLEGING THIS

16   ALLEGATION AGAINST THEM, THAT SHOULD BE CONSIDERED PROTECTED

17   MATERIAL AS WELL.  AND SO IT'S -- WELL, I SAID IT IN THIS CASE.

18          SO THAT'S WHY IT COMES A LITTLE BIT SURPRISE TO ME

19   THEY'LL SAY THIS -- FOR TWO REASON.  ONE IS THE LAW AND

20   PRACTICE IN THIS CASE.  THE SECOND IS THEY DID NOT SAY ANYTHING

21   WHEN I SENT THEM AN EMAIL, YOU KNOW, FOR OUR LAWSUIT BASED ON

22   THAT.  THEY DID NOT SAY, OH, THAT'S CONFIDENTIAL, YOU CANNOT

23   USE IN OUR CASE.  NEVER SAID ANYTHING.  SO I HAVE NO REASON TO

24   THINK ABOUT THAT.  OKAY?

25          THE SECOND PART IS WHY DID I NOT ASK FOR LEAVE TO

1    AMEND.  SO I COME HERE ORALLY ASK, YOUR HONOR SAID -- YOUR

2    HONOR SAID, DENIED, BUT YOU CAN FILE A FORMAL MOTION.  AND I

3    FEEL LIKE IF I SPENT $10,000 TO FILE THAT MOTION, THE CHANCE OF

4    WINNING IS ALMOST ZERO AND I JUST WASTED MY CLIENT'S MONEY.  SO

5    IT'S COST/BENEFIT DETERMINATION.  AS A COUNSEL, I HAD TO ACT IN

6    THE BEST INTEREST OF MY CLIENT.  THAT'S -- THAT PROMPTED ME TO

7    TAKE THE OTHER COURSE.  OKAY?

8            THAT'S THE REASON.  NUMBER ONE REASON I HAVE NO

9    INCLINATION THEY'RE GOING TO SEEK THIS PROTECTED ORDER UNTIL I

10   FILE A LAWSUIT.

11           NUMBER TWO REASON, I MADE A COST/BENEFIT DECISION ON

12   BEHALF OF MY CLIENT.  THIS IS THE MOST COST EFFICIENT WAY FOR

13   ME TO BRING THIS ISSUE.

14           **THE COURT:**  SO FROM AN ECONOMIC PERSPECTIVE, IF I

15   WANT FUTURE ATTORNEYS IN THIS SITUATION TO WEIGH THE

16   COST/BENEFIT AND TO COME TO COURT TO ASK FOR PERMISSION AND TO

17   GIVE THE ADVERSARY NOTICE AND AN OPPORTUNITY TO RESPOND, IT

18   SOUNDS LIKE I SHOULD MAKE THE COST OF THE ALTERNATIVE HIGHER

19   THAN $10,000, THAT THE PENALTY FOR VIOLATING A PROTECTIVE

20   ORDER, IF THERE'S A VIOLATION -- I HAVEN'T DECIDED THERE IS --

21   SHOULD BE SO SUBSTANTIAL THAT ATTORNEYS AND PARTIES WILL SAY, I

22   DON'T WANT TO RISK THAT SANCTION; I'M GOING TO ERR ON THE SIDE

23   OF ASKING FOR PERMISSION.

24           **DR. LI:**  I HAVE NEVER EVEN -- SANCTION NEVER COME

25   INTO MY MIND, YOUR HONOR.  THAT WAS NOT PART OF THE DECISION

1  MAKING.  I MEAN, IF THEY SAID -- IF THREATEN ME, IF YOU FILE

2  THIS, WE'RE GOING TO SANCTION YOU, THAT WOULD BE PART OF MY

3  DECISION, PART OF MY CALCULATION.  BUT, NO, THAT'S NOT.

4          THE CALCULATION IS SHOULD I JUST FILE THIS -- WE WERE

5  IN OPEN COURT.  WHEN I SAID I WAS GOING TO FILE, YOU DID NOT

6  HEAR THEM PROTEST; OH, THEY SHOULD NOT BE ALLOWED TO FILE

7  BECAUSE THEY ARE USING OUR CONFIDENTIAL INFORMATION.  THAT

8  ISSUE HAD NEVER COME INTO PLAY WHEN I WAS MAKING THE DECISION,

9  YOUR HONOR.  SO I DON'T THINK THAT SHOULD BE A RIGHT CALCULUS,

10  TO SAY, WELL, YOU SHOULD HAVE TAKEN HOW MUCH YOU GOING TO BE

11  PENALIZED FOR FILING --

12          **THE COURT:**  LET'S TAKE THAT OUT OF IT.  I SAID YOU

13  HAVE PERMISSION TO FILE A MOTION FOR LEAVE TO AMEND, AND YOU

14  DIDN'T SAY -- DIDN'T RESPOND BY SAYING, NO, THANK YOU, I'M NOT

15  GOING TO PURSUE THAT OPTION; YOU JUST FILED A NEW CASE UNDER

16  THE ASSUMPTION THAT YOU COULD DO THAT WITHOUT ASKING FOR

17  PERMISSION, EVEN THOUGH IT'S EXACTLY THE SAME THING THAT YOU

18  WERE PROPOSING TO AMEND.  YOU SORT OF GAVE YOURSELF A BACK DOOR

19  GRANT MOTION FOR LEAVE TO AMEND WITH A NEW LAWSUIT.

20          **DR. LI:**  YOUR HONOR, UNLESS THERE'S A LAW I DON'T

21  KNOW, I HAVE THE RIGHT TO DO THAT.  I MEAN, PEOPLE DO THAT WHEN

22  LATER ON YOU DISCOVER SOMETHING AND IT'S TOO LATE TO ADD IT

23  INTO THE CASE, TO PRESERVE, YOU HAVE TO FILE BEFORE THIS CASE

24  IS OVER.  OTHERWISE YOU --

25          (SIMULTANEOUS COLLOQUY.)

1    **THE COURT:**  FILING A LAWSUIT, YOU'RE ABSOLUTELY

2    RIGHT, NOTHING PREVENTS THAT.  THE QUESTION PRESENTED NOW IN

3    THE MOTION FOR SANCTIONS IS WHETHER THAT VIOLATED THE

4    PROTECTIVE ORDER OR NOT.  SO THAT'S WHY WE'RE HAVING A HEARING

5    ABOUT IT NOW.  IF THERE WASN'T A PROTECTIVE ORDER ISSUE, THEN

6    WE WOULDN'T BE HERE TALKING ABOUT IT AT ALL.

7    **DR. LI:**  RIGHT, YOUR HONOR.  I WAS TRYING TO EXPLAIN.

8    THE PROTECTIVE ORDER ISSUE WAS NEVER COME INTO PLAY IN MY

9    CALCULUS BEFORE I MADE A DECISION.  THE DECISION WAS A

10   COST/BENEFIT ANALYSIS.  I CAN SPEND $10,000 OR MORE, FILE A

11   MOTION FOR LEAVE TO AMEND, AND THE CHANCE OF GETTING THAT

12   ALMOST ZERO, AND VERSUS I SPEND JUST MAYBE $2,000 TO ADD

13   (INDISCERNIBLE) INTO A CASE ALREADY WRITTEN AND TO FILE IT.

14   SO -- AND FOR SURE THAT GOING TO STICK.  SO THAT'S THE

15   CALCULUS.

16   THE PROTECTIVE ORDER CALCULUS NEVER COME INTO PLAY.

17   **THE COURT:**  ALL RIGHT.  THANK YOU.

18   MS. PIPKIN, ANYTHING YOU'D LIKE ME TO CONSIDER?

19   **MS. PIPKIN:**  YES, YOUR HONOR.

20   I REMEMBER WHEN WE WERE AT THE HEARING WHERE DR. LI

21   BROUGHT THIS UP, AND IT IS TRUE I DID NOT AT THAT TIME SAY THAT

22   WOULD BE A VIOLATION, BECAUSE I DIDN'T KNOW WHAT HE PLANNED TO

23   PUT IN HIS COMPLAINT OR EXACTLY WHETHER HE WOULD ASK -- SEEK

24   LEAVE TO AMEND WITH THIS COURT.  I DIDN'T KNOW WHAT HE PLANNED

25   TO DO AT THAT TIME.

1        WHAT I DO REMEMBER IS I WAS VERY CONCERNED WHEN

2   DR. LI STARTED TALKING ABOUT THAT, AND WHILE I DID NOT SAY,

3   DON'T FILE ANYTHING, I DID SAY I'M VERY -- I REMEMBER I STOPPED

4   EVERYTHING, AND I REMEMBER YOUR HONOR EVEN LOOKED AT ME LIKE I

5   WAS MAYBE -- WHAT WAS I TALKING ABOUT, BUT I REMEMBER SAYING

6   I'M VERY CONCERNED BECAUSE I'M HEARING DR. LI TALK ABOUT THINGS

7   THAT ARE FROM THE SOURCE CODE REVIEW AND I HAVE CONFIDENTIALITY

8   CONCERNS.

9        AND SO WE NEVER WAIVED THIS ISSUE.  WE WERE NOT SURE

10  HOW TO HANDLE THIS ISSUE.  I'VE NEVER BEEN IN THIS SITUATION

11  BEFORE, BUT WE'VE ACTED AS QUICKLY AS WE CAN GIVEN THE

12  INFORMATION.

13        THE CASE THAT DR. LI CITED, THE *DUAL DECK VIDEO*

14  *CASSETTE RECORDER ANTITRUST LITIGATION* CASE WAS CASE WHERE A

15  PARTY USED CONFIDENTIAL INFORMATION FOR ANOTHER -- A SECOND

16  LAWSUIT.  AND EVEN IN THAT CASE WHERE THE COURT SAID NO

17  SANCTIONS, THE COURT DID SAY IT WAS A VIOLATION OF THE ORDER.

18  SO THERE'S NO VIOLATION -- THERE'S NO QUESTION THERE WAS A

19  VIOLATION OF THE ORDER.  IT'S JUST A QUESTION OF WHAT'S THE

20  BEST --

21        **THE COURT:**  AND YOU'RE SPEAKING TO A PROCEDURAL

22  ISSUE, WHICH IS THERE'S A QUESTION OF IS THERE A VIOLATION.

23        **MS. PIPKIN:**  YES.

24        **THE COURT:**  AND THAT'S A QUESTION.  AND IF THERE'S A

25  VIOLATION, THE SECOND QUESTION IS WHAT TO DO ABOUT IT.  THERE'S

1    A RANGE OF POTENTIAL THERE, AND THERE'S SOME INTELLECTUAL

2    DISCUSSION AMONG THE PARTIES ABOUT WHETHER RULE 37 APPLIES OR

3    ONLY CIVIL CONTEMPT, BUT EVEN WITHIN BOTH OF THOSE, THERE'S

4    NO -- THERE'S NOT A BINARY OF, AND HERE'S THE SOLUTION, BECAUSE

5    THE ANSWER HAS TO BE SOMETHING THAT IS JUST UNDER THE

6    CIRCUMSTANCES.

7              YES, DR. LI.

8          **DR. LI:**  MAY I?  I'D LIKE TO ADDRESS -- IF YOU REALLY

9    DO DO THAT AS AN OLD-FASHIONED PROTECTIVE ORDER, WHICH SAYS

10   WE'VE ALL BEEN THROUGH -- ANYTHING YOU GET CONFIDENTIAL,

11   NON-CONFIDENTIAL, YOU CANNOT USE ANOTHER CASE, ANOTHER

12   LITIGATION.  THAT'S WAY TO DO THAT CASE.

13             BUT HERE IT'S ONLY -- SINCE THEN THE PROTECTIVE ORDER

14   HAS EVOLVED.  OUR MODEL PROTECTIVE ORDER IS -- CONFORMING TO

15   THE GENERAL PRACTICE IS YOU ONLY PROTECT PROTECTED MATERIAL.

16   YOU CAN USE -- SINCE YOU GET IT FROM DISCOVERY, IF IT'S NOT

17   CONFIDENTIAL INFORMATION, PROTECTED MATERIAL, YOU CAN USE IN

18   ANY CASE YOU WANT.  THAT'S THE DIFFERENCE BETWEEN THIS CASE AND

19   *DUAL DECK.*

20             THAT'S WHY IN *DUAL DECK* THERE WAS A TECHNICAL

21   VIOLATION, BECAUSE IT DID USE INFORMATION THEY GOT FROM THE

22   FIRST CASE, IN THE SECOND CASE, BUT NOT HERE, LIKE WE SHOW.

23   THERE'S NO PROTECTED MATERIAL.

24             AND, SECONDLY, COUNSEL JUST SAID, OH, WHEN SHE WAS AT

25   THE HEARING, SHE DIDN'T KNOW WHAT TO DO.  MY EMAIL TO THEM WAS

1   BEFORE THE HEARING, IF I REMEMBER CORRECTLY, AND WE CAN ALL GO

2   BACK AND LOOK AT THAT EMAIL THEY ATTACH THERE.

3           SO THE ISSUE WAS BEFORE THEM.  I SAID WE HAD

4   DISCOVERED (INDISCERNIBLE) CONFIRM HIS LIABILITY; WE CAN EITHER

5   ADD THIS TO THE -- TO THIS CASE AND/OR WE'RE GOING TO FILE A

6   NEW CASE.  WE ASKED THEM FOR A STIPULATION FOR LEAVE TO AMEND,

7   AND THEY SAID THEY DID NOT AGREE.

8           THAT'S WHY WE COME TO THE HEARING AND ASK YOUR HONOR

9   ORALLY.  YOUR HONOR SAID, NO, YOU GOT TO FILE A MOTION.  THAT'S

10  WHY I MADE A DECISION.  SO I THINK SEQUENCE OF EVENTS THAT

11  COUNSEL HAS PRESENTED IS A LITTLE DIFFERENT FROM WHAT HAPPENED

12  HERE.

13          **THE COURT:**  ALL RIGHT.  ANYTHING FURTHER AS TO THE

14  CONSEQUENCE OF WHAT TO DO ABOUT IT IF I FIND A VIOLATION?

15          THE REMEDY SUGGESTED BY THE MOVING PARTY IS A VERY

16  SEVERE ONE OF CONSEQUENCE TO THE NEXT CASE, AND MY INSTINCT IS,

17  IF THERE WAS A VIOLATION, THAT WOULD BE NOT PROPORTIONAL TO THE

18  OFFENSE.  BUT I'M STRUGGLING WITH WHAT WOULD BE FAIR.

19          **MS. PIPKIN:**  WELL, YOUR HONOR, I THINK THAT WE HEARD

20  ABOUT ECONOMIC DECISION MAKING, THAT WE'VE INCURRED ATTORNEYS'

21  FEES DEALING WITH THIS ISSUE, FILING A MOTION, FIGURING OUT HOW

22  TO HANDLE THIS.  WE CAN SUBMIT TO YOUR HONOR A DECLARATION

23  OUTLINING WHAT THOSE REASONABLE ATTORNEYS' FEES ARE, AND WE

24  WOULD SUGGEST THAT THAT WOULD BE A SUITABLE REMEDY UNDER THE

25  CIRCUMSTANCES.

1      **THE COURT:**  AND, OF COURSE, I'M ALSO MINDFUL THAT

2  THERE WAS A SANCTIONS MOTION GOING THE OTHER WAY LAST MONTH

3  THAT GOT RESOLVED, AND THAT WAS NOT THAT LONG.

4      ALL RIGHT.  DR. LI, ANYTHING ELSE YOU WOULD LIKE ME

5  TO CONSIDER?

6      **DR. LI:**  YES.  IF YOUR HONOR FIND THERE IS -- THERE

7  IS A VIOLATION, LET'S SAY, AND IT'S THIS IS THE TECHNICAL

8  VIOLATION, AND ESPECIALLY IN LIGHT OF THE SITUATION THIS ISSUE

9  NEVER CAME OUT, IT'S NOT -- THEY GAVE US WARNING OF THIS, WE

10  TOLD WE GOING TO FOLLOW THIS, AND THEY NEVER SAID YOU SHOULD

11  NOT BECAUSE OF VIOLATION, BECAUSE OF THAT THERE SHOULD NOT BE

12  ANY PENALTY, AND THE PENALTY IS WE'LL REMOVE WHATEVER ABOUT

13  MR. MIAO IF THEY THINK IT'S PROBLEM.

14      WE JUST BASED ON OUR INFERENCE.  THE INFERENCE IS,

15  OKAY, MR. MIAO USE THE WORD "BUS," VERY FAMILIAR WITH OUR

16  SOURCE CODE.  AND THEN HE WORKED FOR THE OTHER SIDE AND HE KNEW

17  OR SHOULD HAVE KNOWN THAT SOURCE CODE HE WAS USING WAS FROM US,

18  AND WE JUST GOING TO SUE THEM ON THE BASIC INFERENCE WITHOUT

19  ANY ACCESS TO -- ACCESS OR MENTIONING OF WHAT DID HE THROUGH

20  THE SOURCE REVIEW.

21      IF THAT'S THE CASE, WE WILL AMEND THAT, YOUR HONOR.

22  IF YOU ALLOW US, WE WILL AMEND THAT, AND JUST BASED ON OUR

23  INFERENCE BASED ON PUBLIC INFORMATION.  NUMBER ONE, HE USED TO

24  WORK FOR US; NUMBER TWO, HE USED TO -- NOW HE WORKS FOR THEM;

25  AND, NUMBER THREE, HE KNEW -- HE WAS VERY FAMILIAR WITH OUR

1   SOURCE CODE.  SO NUMBER FOUR IS THE INFERENCE HE KNEW OR SHOULD
2   HAVE KNOWN HE WAS USING MISAPPROPRIATED CODE, AND THAT'S WHY HE
3   IS LIABLE.  THEN WE'LL START FROM THERE.
4           **THE COURT:**  ALL RIGHT.  I WILL TAKE THE MOTION FOR
5   SANCTIONS UNDER SUBMISSION.  I'LL HAVE THAT ORDER FOR YOU AFTER
6   THE MOTION FOR SUMMARY JUDGMENT RULING.
7           **MS. PIPKIN:**  THANK YOU.
8           **DR. LI:**  THANK YOU, YOUR HONOR.
9           **THE COURT:**  AFTER I'VE HAD A CHANCE TO REVIEW YOUR
10  ARGUMENTS.
11          ALL RIGHT.  NEXT BUCKET IS THE FOLLOW-UP ON DISCOVERY
12  ISSUES.  LAST WEEK -- NOW TO AID MY NOTE KEEPING, I AM JUST
13  GOING TO GO THROUGH THE ISSUES AND CHECK AND SEE WHAT'S GOING
14  ON.
15          WE'VE JUST TALKED THE PROTECTIVE ORDER, SO WE DID
16  THAT.  WE TALKED ABOUT SUMMARY JUDGMENT.  WE TALKED ABOUT
17  SANCTIONS.  SO I'M ON TO NUMBER FIVE, ISSUES ARISING FROM THE
18  MEDIATION.
19          HAS THERE BEEN ANY FURTHER CONFERRING ABOUT THE
20  MEDIATION PROCESS?  I DON'T NEED TO HEAR YOUR ARGUMENTS, BUT
21  JUST WHAT'S THE STATUS OF THAT DISCUSSION?
22          **MS. PIPKIN:**  WE'RE CONTINUING TO REVIEW AND DETERMINE
23  WHETHER -- IT'S STILL ON PAUSE, YOUR HONOR, AT THIS POINT.
24          **THE COURT:**  ALL RIGHT.  I'M JUST GOING TO INDICATE ON
25  PAUSE, STILL UNDER DISCUSSION.  FAIR?

1          **MS. PIPKIN:**  YES.

2          **DR. LI:**  NO, THERE WERE NO DISCUSSIONS.  I ALREADY

3    TOLD I KNOW WHAT I KNOW.  THERE'S NOTHING THAT DISCUSSED.  THEY

4    JUST TRY MAKE DECISION.

5          **THE COURT:**  BUT NOTHING NEEDING MY RESOLUTION TODAY?

6          **MS. PIPKIN:**  NO.  THANK YOU, YOUR HONOR.

7          **THE COURT:**  ALL RIGHT.  THERE'S A QUESTION ABOUT THE

8    PRODUCTION OF LOAD FILES -- I'M ON TO PARAGRAPH 11 -- REQUESTED

9    BY THE DEFENSE TO CITCON AND ASSESSMENT OF COST OF THAT.  WHERE

10   ARE YOU IN THAT DISCUSSION?

11         **MS. PIPKIN:**  DR. LI PROVIDED US WITH AN ESTIMATE

12   OF $3,600 TO PROVIDE -- I BELIEVE THAT WAS THE RIGHT NUMBER,

13   DR. LI.

14         **DR. LI:**  YES, IT'S ABOUT 20 HOURS, YEAH.

15         **MS. PIPKIN:**  TO PROVIDE --

16         **DR. LI:**  FOR MY EMPLOYEES' TIME YEAH.

17         **MS. PIPKIN:**  -- THE LOAD FILES.

18         WE DON'T THINK WE SHOULD HAVE TO PAY FOR THAT, BUT I

19   THINK I WOULD PROPOSE DR. LI AND I DISCUSS THAT FURTHER WHEN WE

20   MEET AND CONFER ON THE OTHER OUTSTANDING ISSUES.

21         **DR. LI:**  YOUR HONOR, LET ME EXPLAIN WHY THAT'S -- I

22   MEAN, IT'S -- AT THE BEGINNING WE ASKED THEM, SHOULD WE HAVE

23   LOAD FILE LIKE, YOU KNOW, GENERALLY ALLOWED.  THEY SAID, NO,

24   WE'RE ONLY GOING TO DO THE MINIMUM COMPLIANCE WITH CODE.  THE

25   MINIMUM COMPLIANCE IS THERE'S NEVER REQUIRE A LOAD FILE.

1    THERE'S NEVER REQUIRE EVEN BASE NUMBER.  SO AT THE TIME -- SO

2    WHEN WE WENT THROUGH THE PROCESS, WHICH IS A LITTLE CHEAPER AND

3    WITHOUT GETTING -- YOU KNOW, THE PROCESS WAY WE DO JUST HAS NO

4    LOAD FILE.

5         SO TO -- NOW THEY WANT A LOAD FILE FOR THIS OVER

6    40,000 PAGES.  SO WE HAVE TO REDO THE PROCESS.  AND BECAUSE WE

7    DO THIS IN-HOUSE, WE DO EVERYTHING IN-HOUSE, AND WE DO THIS

8    DOCUMENT PROCESS IN-HOUSE.  AND OUR SOFTWARE AT THE TIME WAS

9    HAVING TROUBLE HANDLING THIS -- THEY ARE THE -- SO WE NORMALLY

10   ARE VERY GOOD HANDLING THE MICROSOFT OUTLOOK FILES, THE EMAIL

11   FILES, BUT THEIR EMAIL FILE WAS FROM MBOX -- GBOX, NOT MBOX --

12   FROM GMAIL, BASICALLY.  AND OUR SOURCE SOFTWARE KEPT HAVING

13   ISSUES.

14        AND, SO, BASICALLY WE HAD TO BREAK UP THOSE THINGS

15   INTO MANY SMALL BATCHES TO DO THIS.  IT WAS VERY TIME CONSUMING

16   PROCESS, AND TO GO THROUGH THAT AGAIN, WE NEED 20 HOURS.  AND

17   BECAUSE THIS IS NOT OUR FAULT AND, YOU KNOW, WE DID NOT -- I

18   GAVE THEM A SOURCE -- A LOAD FILE AT THE BEGINNING.

19        WE PROPOSE JUST TO PREVENT THIS FROM HAPPENING.

20   LATER ON THEY ASK FOR LOAD FILE, AND WE HAVE TO GO THROUGH

21   EXPENSIVE REDO PROCESS AND THEY SAID, NO.  THAT'S WHY WE DID

22   THIS WAY, AND TO ASK US FOR LOAD FILE NOW REQUIRES US TO, YOU

23   KNOW, REDO THE PROCESS, WHICH IS -- SO TO ASK FOR $36,000 FOR

24   THE COMPENSATION, YEAH.

25        **MS. PIPKIN:**  THIRTY-SIX HUNDRED DOLLARS.

          **THE COURT:**  HOW ABOUT 3,600?

1

          **DR. LI:**  THIRTY-SIX HUNDRED, NOT 36,000 -- YEAH.

2

          **THE COURT:**  WHAT'S THE TIMING OF YOUR -- WHAT HINGES

3

UPON THIS, OTHER THINGS IN THE CASE?

4

          **MS. PIPKIN:**  IT WOULD MAKE -- WE ARE NOT ABLE TO SEE

5

THE META DATA OF THE DOCUMENTS.  IT'S MAKING -- IT MAKES IT

6

DIFFICULT TO SEARCH THE DOCUMENTS, ET CETERA, WITHOUT THESE.

7

SO, I MEAN, WE HAVE ONGOING DEPOSITIONS.

8

          **DR. LI:**  WAIT.  DEPOSITION OF WHOM?  THE DEPOSITION

9

OVER.

10

          **MS. PIPKIN:**  WELL, I MEAN, YOU'RE TAKING DEPOSITIONS,

11

AND WE'RE HEADED INTO EXPERT REPORTS.  I MEAN, THERE ARE

12

ONGOING THINGS WITH THE CASE.  IT WOULD BE NICE TO GET THEM IN

13

THE NEXT TEN DAYS OR SO IF POSSIBLE.

14

          **DR. LI:**  IT'S GOING TO BE HARD.  I MEAN, I HAVE A

15

SMALL OFFICE.  I MEAN, RIGHT NOW, BECAUSE OF THIS CASE -- I

16

JUST GOT BACK -- I DIDN'T SLEEP AT ALL LAST NIGHT.  I JUST GOT

17

BACK FROM SOUTHERN DISTRICT OF NEW YORK FOR A HEARING.  AND MY

18

FLIGHT WAS DELAYED.  I LANDED ABOUT 5:00 O'CLOCK THIS MORNING,

19

YOUR HONOR.

20

          OUR OFFICE WORKING OVERDRIVE.  AND I -- YOU KNOW,

21

EVEN WE'RE GOING TO DO IT, TEN DAYS COULD BE TOO SHORT A TIME

22

FOR US, YOUR HONOR.

23

          **MS. PIPKIN:**  I'M WILLING TO MEET AND CONFER WITH YOU,

24

DR. LI, IF WHETHER THERE'S A DATASET TO A VENDOR OR SOMETHING

25

```
 1    THAT WE CAN DO IT.  SO I DON'T -- MAYBE WE CAN DISCUSS --

 2              (SIMULTANEOUS COLLOQUY.)

 3              THE COURT:  HERE'S MY ANSWER.  LIFE IS TOO SHORT TO

 4    DICKER --

 5              MS. PIPKIN:  THANK YOU, YOUR HONOR.

 6              THE COURT:  -- OVER $3,600 DISCOVERY DISPUTES.

 7              FOR THIS PRODUCTION, THE DEFENSE, WHICH IS REQUESTING

 8    IT, IS GOING TO PAY TWO-THIRDS OF THE COST.  SO YOU DECIDE IF

 9    YOU WANT TO PURSUE IT.  IF YOU WANT TO PURSUE IT, YOU ARE GOING

10    TO PAY -- YOU PAY FOR YOUR OWN COST, BUT TWO-THIRDS OF THEIR

11    COST, AND THAT'S WITH AN EXPECTATION THAT THEY'RE REASONABLE

12    COSTS, AND $3,600 SOUNDS REASONABLE TO ME.  MIGHT EVEN BE LOW

13    FOR WHAT YOU'RE DOING.  BUT THAT WAY YOU'RE BEARING THE BRUNT

14    OF THE COST, BUT THERE'S A COST TO BOTH PARTIES TO NOT WORKING

15    IT OUT, AND THAT'S WHAT HAPPENS WHEN YOU DON'T WORK IT OUT

16    AHEAD OF TIME.

17              SO THAT'S THE ORDER AS TO THE LOAD FILES.  AND YOU

18    CAN CONFER FURTHER ABOUT THE LOGISTICS OF HOW TO DO IT.  I'M

19    SURE YOU CAN WORK IT OUT.

20              ALL RIGHT.  AT 13 I ASKED YOU TO ALL REVIEW ANY

21    DISCOVERY ORDERS AT 144 AND 161 WHERE I FORBID FURTHER EMAIL

22    NEGOTIATION BECAUSE IT WAS LEADING TO NON-RESOLUTION.  CAN YOU

23    CONFIRM THAT BOTH FIRMS AND THEIR FIRMS HAVE DONE THAT?

24              MS. PIPKIN:  YES.

25              DR. LI:  YES, WE TRY -- BUT IT'S REALLY HARD.  WE TRY
```

1   TO MEET AND CONFER IN PERSON.  THAT'S WHY WE FAILED SEVERAL

2   TIMES NOW.  SO --

3           **THE COURT:**  YOU THINK THE EMAIL WAS WORKING?

4           **DR. LI:**  EMAIL AT LEAST ESTABLISH THE PARAMETERS, THE

5   THINKING.  AND I THINK -- SO IF WE SEE THE INFORMATION, WE CAN

6   NARROW DOWN WHAT'S THE ISSUE, SO WHEN I GO TO THEIR OFFICE OR

7   THEY COME TO MY OFFICE, AND WE CAN ZOOM IN ON THE POINT OF

8   DISPUTE.

9           SO TO JUST PROHIBIT ANY EMAIL COMMUNICATION IS A

10  LITTLE BIT TOO HARD, I THINK, YOUR HONOR, AND -- BUT YOUR HONOR

11  CAN ALWAYS REQUIRE WITHOUT ANY ORAL MEET AND CONFER, YOU NOT

12  GOING TO COME TO MY COURT, OTHERWISE YOU'LL BE SANCTIONED.

13  THAT WOULD BE A FAIR REQUIREMENT, YOUR HONOR.

14          **THE COURT:**  I ALREADY SAID THAT.

15          **DR. LI:**  YEAH.

16          **THE COURT:**  AND LAST WEEK WE CAME WITH ABOUT 13 --

17  ACTUALLY, IT WAS MORE LIKE 25 DISCOVERY ISSUES.

18          SO MY POINT OF VIEW IS THAT THE EMAIL BACK AND FORTH

19  WAS NOT BEING SUCCESSFUL BETWEEN THE PARTIES.  I'M NOT PICKING

20  ONE PARTY.  IT WAS NOT BEING SUCCESSFUL AT RESOLVING DISPUTES.

21  IT WAS ADDED TO THE NUMBER OF DISPUTES BECAUSE THEN YOU WERE

22  ARGUING ABOUT WHEN THINGS HAPPENED AND WHEN YOU GOT THE EMAILS.

23  SO THAT'S WHY I DID IT, AND I WANT TO MAKE SURE YOU'RE

24  COMPLYING AND I ALREADY THREATENED SANCTIONS, AND I HAVE A

25  MOTION FOR SANCTIONS BEFORE ME NOW.

1          SO THE THREATS ARE NOT DESIGNED TO GET SOMETHING

2    THAT'S ACTUALLY -- IDEALLY, THERE'S NO SANCTIONS THREATENED AND

3    NO SANCTIONS IF EVERYBODY FOLLOWS THE RULES, AND RULE ONE

4    REQUIRES -- PUTS A BURDEN ON COUNSEL TO COLLABORATE AND TO TRY

5    TO WORK THINGS OUT TO HELP YOUR CLIENTS AND TO HELP THE COURT

6    RESOLVE THINGS IN A COST EFFECTIVE WAY.

7          **DR. LI:**  YOUR HONOR, BELIEVE IT OR NOT, MS. PIPKIN

8    AND I HAVE VERY GOOD RELATION, PERSONAL RELATION.  WE LIKE EACH

9    OTHER.  WE CAN WORK WELL.  IT'S JUST SOMETIMES TIME AND

10   OTHER --

11         **THE COURT:**  THAT'S GREAT.  THERE'S OTHER ATTORNEYS ON

12   THE CASE, TOO.  SO I NEED YOU TO WORK ALL TOGETHER WITH

13   EVERYBODY IN THE CASE, NOT JUST MS. PIPKIN.

14         ALL RIGHT.  SO I JUST WANTED TO CONFIRM YOU GOT THAT

15   MESSAGE AND YOU ARE GOING TO COMPLY.  I'VE NOT MODIFIED MY

16   ORDER.

17         AND THEN MY LAST THING WAS TO CHECK IN ON ANY OTHER

18   DISCOVERY ISSUES.  DR. LI, YOU SUGGESTED YOU'VE GOT SOME THINGS

19   YOU WANT TO MEET AND CONFER ABOUT.

20         SO THAT'S EVERYTHING ON MY AGENDA.  SO ON THE MEET

21   AND CONFER PROCESS GOING FORWARD, DURING WHAT TIME PERIOD ARE

22   YOU GOING TO DO THAT?  YOU'RE WITH WELCOME TO STAY IN COURT AND

23   TALK ABOUT IT TODAY.

24         **DR. LI:**  SO AFTER THIS HEARING, TOMORROW WE'LL TRY TO

25   DECIDE A TIME, GO THROUGH MY LIST, AND IF WE CANNOT RESOLVE --

1   I HAVE A FEELING MOST OF THEM WE CANNOT RESOLVE, AND AT LEAST

2   WE KNOW EACH OTHER'S POSITIONS, LEGAL ARGUMENTS, FACTUAL

3   ARGUMENTS.  THEN I PROPOSE I FILE A MOTION TO COMPEL, AND --

4   BECAUSE THERE'S SO MANY ISSUES.  THE LETTER REALLY HARD TO

5   ADDRESS -- AND PUT EVERY ISSUE IN ONE MOTION, AND MS. PIPKIN

6   WILL RESPOND AND WE'LL GO FROM THERE.

7            **THE COURT:**  ALL RIGHT.  YOUR REQUEST IS DENIED.

8            **DR. LI:**  OKAY.

9            **THE COURT:**  I HAVE A JOINT LETTER PROCESS SO YOU CAN

10  WORK THINGS OUT, NOT SO YOU CAN LIST THINGS IN SERIAL.

11           **DR. LI:**  CAN WE AT LEAST SPLIT INTO -- SO EACH ISSUE

12  HAS ONE LETTER?  SOME JUDGE ALLOW THAT.  EACH ISSUE HAS ONE

13  LETTER, BECAUSE 2-1/2 PAGES FOR ALL THE ISSUES IS

14  IMPOSSIBILITY, YOUR HONOR.  THAT'S WHY I'M SAYING THAT.

15           **THE COURT:**  YOU CAN SEEK LEAVE TO AMEND.  SO YOU CAN

16  FILE A MOTION AND TELL ME WHAT YOU HAVE PLANNED.

17           **DR. LI:**  OKAY.

18           **THE COURT:**  THERE'S BEEN EXCESSIVE LITIGATION IN THIS

19  CASE.  SO I WANT TO SEE WHAT YOU'RE GOING TO DO BEFORE YOU DO

20  IT.  YOU TRIED THE APPROACH OF JUST DO IT WITHOUT ASKING FOR

21  PERMISSION.  I DON'T ENCOURAGE THAT APPROACH.  SO WE'RE GOING

22  TO ASK FOR THE PERMISSION BEFORE YOU DO IT.  THAT WAY

23  POTENTIALLY IT WILL HELP TO RESOLVE THINGS WITHOUT HAVING TO DO

24  A FULL MOTION AND HEARING PROCESS.

25           THERE'S A LOT OF DIFFERENT ISSUES THAT HAVE COME UP

44

```
1    IN THE CASE.  I WANT TO SEE IF YOU CAN PRIORITIZE TO THE MOST

2    IMPORTANT ONES THAT WILL HELP YOUR CLIENT GET JUSTICE.  THAT'S

3    WHAT BOTH PARTIES ARE HERE FOR.

4              SO CONFER TO WORK IT OUT, AND IF YOU THINK YOU NEED

5    MORE THAN ONE LETTER BRIEF TO PRESENT YOUR DISCOVERY ISSUES,

6    YOU CAN SUBMIT A MOTION TELLING ME WHY YOU THINK MY PROCESS

7    DOESN'T WORK.

8              WHEN ARE YOU GOING TO DO THIS BY?

9         MS. PIPKIN:  SO WE ARE GOING TO MEET TOMORROW, RIGHT?

10        DR. LI:  LET ME MAKE SURE -- YEAH, YEAH, TOMORROW.

11   CAN YOU DO TOMORROW MORNING?

12        MS. PIPKIN:  YES.

13        DR. LI:  OKAY.

14        MS. PIPKIN:  WHAT TIME?

15        DR. LI:  WE COULD -- 9:30.

16        MS. PIPKIN:  THAT SOUNDS GOOD.

17        DR. LI:  OKAY.

18        MS. PIPKIN:  9:30 TOMORROW MORNING WE'LL MEET.

19        DR. LI:  YEAH.

20        MS. PIPKIN:  AND THEN IF WE CAN'T RESOLVE, WE WILL

21   SUBMIT A JOINT LETTER TO THE COURT.

22        THE COURT:  ALL RIGHT.  BY FRIDAY?

23        DR. LI:  SURE.

24        MS. PIPKIN:  YES.

25        THE COURT:  ALL RIGHT.  IF A HEARING IS NECESSARY, IT
```

1   WILL BE NEXT WEDNESDAY, JUNE 5TH, AT 1:00 P.M.

2          **DR. LI:**  I THINK YOU HAVE ONE ISSUE, RIGHT, WE

3   HAVEN'T RESOLVED?  MAYBE WE SHOULD MENTION THIS BEFORE -- SO

4   THERE'S ONE ISSUE.

5          THEY ASK US FOR THE FORENSIC IMAGE OF KENNY SHI'S

6   COMPUTER, HIS LAPTOP COMPUTER ISSUED BY CITCON.  AND THAT

7   COMPUTER WE KNOW FROM HIS EMAIL HAD -- CONTAINS PRIVILEGED

8   DOCUMENTS BECAUSE HE WAS A VP.  HE RECEIVED PRIVILEGED

9   COMMUNICATION, INCLUDING LAWYERS' COMMUNICATION TO HIM.

10          FOR HIM, OF COURSE, THAT'S -- YOU KNOW, HE KNEW THAT.

11   THAT SHOULD NOT BE SHIELDED FROM HIM.  BUT THE PROBLEM IS WE

12   HAVE OTHER DEFENDANTS.  WE DON'T WANT TO WAIVE THOSE PRIVILEGE

13   AGAINST OTHER DEFENDANTS.

14          AND SO I PROPOSE A PROCEDURE I HAVE USED BEFORE FOR

15   INSPECTING FORENSIC IMAGES WHEN PRIVILEGED DOCUMENTS ARE

16   INVOLVED, IS THEY HIRE INDEPENDENT EXPERT, OR WHATEVER

17   INSPECTOR.  THIS INSPECTOR WILL BE PROVIDED JOINT KEY WORDS FOR

18   SEARCHING THIS IMAGE.  HE'LL COME OUT WITH A HIT LIST, AND THEN

19   THEY'LL GO -- WE'LL GO THROUGH THE HIT LIST TO SAY WHICH ONE IS

20   PRIVILEGED, YOU SHOULD NOT PRODUCE.  AND THEN, AFTER THAT,

21   THEY'LL PRODUCE THAT HIT LIST TO THEM MINUS THE PRIVILEGED

22   DOCUMENTS.  THAT'S WHAT I PROPOSE.

23          **THE COURT:**  IS THAT IN AGREEMENT OR THAT'S A

24   PROPOSAL?

25          **DR. LI:**  NO, THAT'S A PROPOSAL.

1          **THE COURT:**  SO IT'S --

2          **DR. LI:**  SO IT'S STILL PENDING.

3          **THE COURT:**  SO IT'S SOMETHING YOU'RE DISCUSSING?

4          **MS. PIPKIN:**  YES.  THAT'S SOMETHING I WANTED TO

5    DISCUSS TOMORROW.

6          **DR. LI:**  OKAY.

7          **THE COURT:**  ALL RIGHT.  SO MY RECOMMENDATION IS,

8    THANK YOU FOR BRINGING IT TO MY ATTENTION, THAT YOU CONTINUE

9    THAT CONVERSATION TOMORROW, AND IF IT'S A DISPUTED ISSUE THAT

10   NEEDS MY DIRECTION, YOU PUT THAT IN YOUR LETTER BRIEF OR LETTER

11   BRIEFS ON FRIDAY.

12         **DR. LI:**  OKAY.

13         **THE COURT:**  VERY GOOD.  THANK YOU VERY MUCH.

14         **MS. PIPKIN:**  THANK YOU, YOUR HONOR.

15         **THE COURT:**  HAVE A GOOD AFTERNOON.  WE'RE IN RECESS.

16         (PROCEEDINGS ADJOURNED AT 3:18 P.M.)

17

18

19

20

21

22

23

24

25

1                    **CERTIFICATE OF TRANSCRIBER**

2

3        I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9        I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                         *Jncolumbini*

16                    JOAN MARIE COLUMBINI

17                       JUNE 7, 2019

18

19

20

21

22

23

24

25

**JOAN MARIE COLUMBINI, CSR, RPR**
**RETIRED OFFICIAL COURT REPORTER, USDC**
**510-367-3043**