JAMES McMANIS (40958)
ELIZABETH PIPKIN (243611)
CHRISTINE PEEK (234573)
CHRISTOPHER ROSARIO (326436)
McMANIS FAULKNER
a Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:   (408) 279-8700
Facsimile:   (408) 279-3244
Email:          epipkin@mcmanislaw.com

Attorneys for defendants and counter-claimants,
RiverPay Inc., a Canadian corporation,
RiverPay, Inc., a Delaware corporation,
and Kenny E Shi, and defendant Yue ("York") Hua

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITCON USA LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RIVERPAY INC., a Canadian corporation, RIVERPAY, INC., a Delaware corporation, YUE HUA, a.k.a., YORK HUA, an individual, KENNY E SHI, an individual, and DOES 1 through 20,<br><br>　　　　　Defendants.<br><hr>RIVERPAY INC., a Canadian corporation, RIVERPAY, INC., a Delaware corporation, and KENNY E SHI, an individual,<br><br>　　　　　Counter-Claimants,<br><br>　　v.<br><br>CITCON USA, LLC, a California limited liability company, WEI JIANG, an individual, and DOES 1 through 20,<br><br>　　　　　Counter-Defendants. | Case No. 5:18-cv-02585-NC<br><br>**REPLY IN SUPPORT OF RIVERPAY'S MOTION TO REOPEN EVIDENCE**<br><br>**Date**:　February 26, 2020<br>**Time**:　1:00 p.m.<br>**Ctrm**:　5, 4th Floor<br>**Judge**:　The Hon. Nathanael Cousins |

## INTRODUCTION

Plaintiff and counter-defendant Citcon USA LLC ("Citcon" or "plaintiff") opposes the motion of RiverPay Inc., a Canadian corporation, and RiverPay, Inc., a Delaware corporation (collectively, "RiverPay"), to reopen the evidence on two grounds: (1) that Citcon's communications are "new matter" relevant only to a motion for sanctions or some as yet unalleged claim; and (2) the communications do not violate the protective order because no confidential discovery information was used to draft or send them. As set forth below, these arguments are meritless.

In addition, plaintiff does not deny that it sent the communications sought to be admitted, that its counsel drafted the letter, or that the communications were intended to disrupt RiverPay's business relationships. Plaintiff cites no authority that a UCL claim cannot be based on violations of a protective order. Plaintiff does not dispute that the communications threatened to sue third parties for using RiverPay's payment system. Plaintiff does not contest that *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 216 (2010), *disapproved of on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) held that third party end users are not liable for misappropriation when they do not have access to the underlying source code. Plaintiff cites no authority, either in its opposition or in the communications sought to be admitted, that such a claim for misappropriation against a third party has any legal merit. Plaintiff cites no evidence that anyone could gain access to any alleged source code trade secret of Citcon's simply by using RiverPay's payment system. Finally, despite plaintiff's failure to offer any legal or factual defense of its threats to sue third party end users for misappropriation, plaintiff does not deny that it will continue sending such communications, absent intervention by this Court.

The December 2019 communications sought to be admitted are relevant both to RiverPay's pending sanctions motion for violation of the protective order (ECF 220-3, 220-4, 265) and its claim for unfair competition under California Business and Professions Code section 17200. As with plaintiff's previous improper communications, the December 2019 communications threaten the recipients with baseless legal action, in an attempt to disrupt their business relationship with RiverPay. As set forth in RiverPay's moving papers and its post-trial

1  briefing, these communications and the supplemental declaration of Ryan Zheng should be
2  admitted into evidence.

3  **ARGUMENT**

4  **I.    Plaintiff Had Fair Notice that its Communications Were Relevant to the UCL Claim Based on Information Alleged in the Counter-Claim, Provided in Defendants' Previous Sanctions Motions, and Elicited at Trial.**
5

6  Plaintiff complains that the December 2019 communications are "new matter" not
7  pleaded in the counter-claim, and that counter-claimants did not plead violation of the protective
8  order as a basis for UCL liability.  Plaintiff and its counsel did not send the December 2019
9  communications or misuse information acquired from source code review until after the counter-
10 claim was filed, however.  In addition, plaintiff's arguments lack merit because plaintiff received
11 ample notice over the course of the litigation that its ongoing pattern of anti-competitive
12 behavior was wrongful.

13 The first paragraph of RiverPay's counter-claim states: "RiverPay counterclaims to
14 prevent and redress the dishonest tactics and anti-competitive smear campaign by Counter-
15 Defendants intended to tarnish RiverPay's reputation within the market for payment processing."
16 ECF 23, ¶ 1.  The counter-claim goes on to allege:

17
   As part of its business, RiverPay works closely with merchants, Payment App
   service providers, and banks.  These relationships are crucial to RiverPay's
18 business, as they are to the business of any payment processor who works with
   Chinese payment applications and consumers, and any harm to these relationships
19 harms RiverPay's fundamental business.

20 *Id.*, ¶ 17.  The counter-claim alleged a wide variety of dishonest and anti-competitive behavior
21 by plaintiff, including allegations that plaintiff's Chief Operating Officer Wei Jiang had
22 proposed to RiverPay's CEO that Citcon and RiverPay "divide the land" rather than competing
23 in a fair market.  *See id.*, ¶ 35.  Zheng's trial testimony about this proposal was uncontroverted.
24 *See* Zheng, 7 RT 1308:3-24; *see generally* Zheng, 7 RT 1299:16-1309:24.

25 Over the course of the litigation, Citcon and its counsel engaged in further threatening
26 and anti-competitive conduct, similar to the anti-competitive conduct alleged in the counter-
27 claim.  Plaintiff's counsel sent his first threatening letter directly to defendants, four days after he
28 sued them.  *See* ECF 300-1, Exh. A; *see also* ECF 1.  The letter threatened defendants with years

of imprisonment, and went on to demand that they "properly respond" to Citcon's civil lawsuit. *See* ECF 300-1, Exh. A.  This letter did not result in an early settlement.

Then, on April 18, 2019, using information they learned from reviewing defendants' source code pursuant to the parties' protective order in this case, plaintiff and its counsel filed a new lawsuit, *Citcon USA LLC v. MaplePay Inc., et al.*, Case No. 5:19-cv-02112-NC.  *See* ECF 220-3, 220-4, 265, pp. 5:11-28, 7:1-7.  This was about a month before the May 13, 2019 mediation in *Citcon USA LLC v. RiverPay Inc., et al.*, the instant case.[1]  *See* ECF 207, p. 2:14-16.

Next, plaintiff again enlisted its counsel to send threatening communications.  On June 10, 2019, plaintiff's counsel sent a letter to defendants' counsel, accusing defendants of new crimes.  *See* ECF 300-1, Exh. C.  The letter asserted: "the refund attacks on AliPay and WeChatPay's servers in China lasted for some time and have resulted in *more than $5 million damages* to Citcon."  *See* ECF 300-1, Exh. C, p. 1 (emphasis added).

After defense counsel objected to plaintiff's counsel's threatening communications (*see* ECF 300-1, ¶ 5), plaintiff's counsel instead targeted defendants' director, in an apparent effort to disrupt that business relationship.  *See* ECF 300-1, Exh. D.  On or about August 2, 2019, Mr. Li sent a letter to Ray Yang, a member of RiverPay's Board of Directors and a Partner at Marathon Venture Capital.  *See id.*, ¶ 6, Exh. D; *see also id.*, Exh. B, p. 158:7-19.  The letter to Mr. Yang stated, "we believe RiverPay has resorted to criminal acts to help their failing civil defense[,]" and again accused defendants of attacking the servers of Citcon, Alipay, and WeChatPay.  *Id.*, Exh. D, p. 1.  The letter went on to threaten and imply that Mr. Yang could face criminal liability if he aided and abetted RiverPay's alleged wrongdoing:

> Under U.S. and California law, people who aid and abet a wrongdoing are jointly and severally liable with the wrongdoer.  Thus, at this point, *those who continue to aid RiverPay in light of their misappropriation of Citcon's trade secrets will subject themselves to civil liability*.  For the cybercrimes, those who assist criminal activity or act as accessories after the fact will face *criminal prosecution*.

---

[1] On Monday, November 18, 2019, the next business day after the parties' November 15, 2019 settlement conference, plaintiff amended its *MaplePay* complaint to add defendants.  *See* Case No. 5:19-cv-02112-NC, ECF 12.  On December 6, 2019, the Friday before trial in this matter, plaintiff amended again, adding even more defendants.  See *id.*, ECF 15.

3
REPLY IN SUPPORT OF RIVERPAY'S MOTION TO REOPEN EVIDENCE; Case No. 5:18-cv-02585-NC

1  *Id.*, Exh. D, p. 2 (emphasis added).  Plaintiff's counsel then sent a virtually identical letter to a
2  different Marathon partner, John Chen, which did not withdraw the paragraph that implied the
3  recipient might be criminally liable as an accessory after the fact if he assisted RiverPay's
4  alleged activities.  *See* ECF 306-1, Exh. 1.

5        At trial, plaintiff failed to support its claim based on the refund attack.  At no point did
6  plaintiff ever present any documentary, electronic, or physical evidence that it had suffered any
7  loss from any refund attack, at any time.  The Court granted judgment for defendants as a matter
8  of law on plaintiff's conversion claim based on the alleged refund attack.  *See* 6 RT 1186:18-
9  1187:17; *see also* 5 RT 850:6-17.  Likewise, plaintiff failed to produce any customer list that was
10 allegedly misappropriated, and the Court granted judgment as a matter of law on plaintiff's
11 claims for misappropriation of its customer list "trade secret."  *See* 6 RT 1186:18-1188:8.  As set
12 forth in defendants' renewed Rule 50 motion and their post-trial briefing, plaintiff also failed to
13 define coherently any alleged trade secret in its "POS design," including any alleged trade secret
14 in object code on the device.  There was no evidence of what specific code or functionality
15 plaintiff contended was protected.

16       Having failed to shut down RiverPay's business, plaintiff and its counsel are now
17 deploying similar deceptive and anti-competitive tactics against RiverPay's other business
18 partners in an attempt to disrupt those relationships, too.  The December 2019 email and letter
19 threaten the recipient that "continued use of RiverPay's payment system after the verdict *will*
20 *subject you to trade secret misappropriation liability*," without providing any factual or legal
21 support for this assertion.  *See* ECF 497 (Supplemental Declaration of Ryan Zheng in Support of
22 Defendants' Motion for Sanctions (ECF 265) and Request to Reopen Evidence), Exhs. A & B
23 (emphasis added).  Plaintiff appears to have created some kind of mass mailing list, putting the
24 onus on RiverPay's business partners to opt out of further communications.  *See* ECF 494-5, 497,
25 Exh. A ("If you no longer wish to receive these emails you may *unsubscribe* at any time.")
26 (emphasis added).  The latest anti-competitive communications from plaintiff and its counsel
27 mirror those described in the counter-claim (*see* ECF 23, ¶¶ 27-34), as well as those plaintiff and
28 its counsel continued to send as the lawsuit progressed.

RiverPay had no control over these acts by plaintiff and its counsel.  Each time they came to RiverPay's attention, RiverPay promptly sought redress.  Plaintiff engaged in each of these acts for the express purpose of harming its competitor, without regard for whether its representations had factual or legal support.  At trial, however, plaintiff made it a point to rebut the argument that it had filed this lawsuit in order to harm a competitor.  *See* Huang, 2 RT 201:18-202:9.  Considering all of the relevant context, plaintiff cannot credibly assert it did not know that evidence of its latest anti-competitive communications was material to defendants' unfair competition claim.

"Under Rule 15(b), which permits amendments to be made to pleadings to conform to the evidence adduced at trial, an amendment may be made at any time on the motion of any party, *even at the appellate level*."  *Dunn v. Trans World Airlines, Inc.*, 589 F.2d 408, 412 (9th Cir. 1978) (emphasis added).  "'Failure to formally amend the pleadings will not jeopardize a verdict or judgment based upon competent evidence.  If an amendment to the pleadings to conform to the proof should have been made, the Courts of Appeals will presume that it is so made to support the judgment.'"  *Id.* at 413 (quoting *Decker v. Korth*, 219 F.2d 732 (10th Cir. 1955)).

Unlike in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 327-28 (1971) and *Angioscore, Inc. v. Trireme Medical, Inc.*, No. 12-cv-03393-YGR, 2015 WL 13376679, *2 (N.D. Cal. Oct. 7, 2015), cited by plaintiff, defendants and counter-claimants promptly moved to reopen the evidence before the Court entered its factual findings, and as soon as practicable after learning of new evidence that was relevant to their UCL claim.  It is no objection that the counter-claim does not mention the communications sought to be admitted, given the practical impossibility of doing so, the policy of liberal amendment, and the ample notice plaintiff received over the course of the litigation that its ongoing pattern of anti-competitive conduct was improper.  As in *Dunn*, "[counter-defendant's] argument would have this court return to the days when the failure by a plaintiff to formally plead a theory of liability against the defendant at the outset would forever foreclose him from asserting that theory later at trial.  The Federal Rules of Civil Procedure were designed, and should be interpreted and applied, to do away with this kind of technicality."  *Dunn*, 589 F.2d at 413.

The December 2019 communications are relevant to defendants' UCL claim and should be admitted.

**II.     Plaintiff Fails to Establish It Did Not Violate the Protective Order**.

RiverPay's motion to reopen evidence sought to admit an email to one of RiverPay's business partners, whose contact information was produced under the parties' protective order and previously ordered sealed by this Court.  *See* ECF 494-5, 497, Exh. A, pp. 1-2 (business partner's name appears after "To:" line in second email on page one, and on page two); ECF 402, p. 22 (granting motion to seal full names and contact information in Exhibit K to the Declaration of Ryan Zheng in Support of RiverPay's Opposition to Counter-Defendants' Motion for Summary Judgment); *see also* ECF 416 (business partner's name appears in emails attached as Exhibit K); ECF 344; ECF 295-11 (business partner's name appears in paragraph 8 and in emails attached as Exhibit K).  Plaintiff argues there was no violation of the protective order, but this is an argument on the merits of the UCL claim, not a reason why the December 2019 communications should not be considered.  Plaintiff fails to show these communications are not probative, that defendants lacked a good reason for not admitting them at trial, or that plaintiff would be prejudiced by having to defend its conduct before judgment is entered.  *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 609 (5th Cir. 2000) (identifying factors to be considered in ruling on a motion to reopen evidence).[2]  Plaintiff also failed to file its own motion to reopen the evidence, to allow its rebuttal evidence to be considered.

In any event, plaintiff's evidence is vague and unconvincing.  The January 17, 2020 declarations of plaintiff's counsel (ECF 506-1) and Wei Jiang (ECF 506-2) do not reference the *specific business partner recipient* of the email and other communications linked to the email.  Rather, these declarations made vague, general disclaimers.  The declarations do not say plaintiff obtained *this particular individual's* contact information from the Internet, RiverPay's press releases, or "the marketplace."  Neither declaration explains how plaintiff acquired knowledge of *this particular individual's* contact information and the fact of his business relationship with

---

[2] In *Chromalloy Am. Corp. v. Alloy Surfaces Co.*, 55 F.R.D. 406, 407, 409 (D. Del. 1972), cited by plaintiff, reopening was sought in connection with a motion for new trial and to amend the court's findings; therefore this case is distinguishable and its standard does not apply.

6
REPLY IN SUPPORT OF RIVERPAY'S MOTION TO REOPEN EVIDENCE; Case No. 5:18-cv-02585-NC

RiverPay. Neither declaration attached any document or other evidence showing that *this individual's* business relationship with RiverPay is publicly known. Neither declaration identified specifically who sent the email on behalf of Citcon. Jiang's general disclaimer that unnamed Citcon employees did not receive "Attorneys' Eyes Only" information is not credible and fails to explain exactly how "Citcon Legal" ended up emailing RiverPay's business partner.

Regarding plaintiff's assertion that "if Defendants really believe the merits of their claim they should file a motion for sanction for violating the protective order[,]" RiverPay did file a motion for sanctions (ECF 220-3, 220-4, 265), and did seek to support its motion with the Supplemental Declaration of Ryan Zheng and its attached exhibits (ECF 494-5, 497).

## CONCLUSION

For the reasons set forth above, in RiverPay's moving papers, and in RiverPay's January 10, 2020 Proposed Findings of Fact and Conclusions of Law, RiverPay's motion to reopen the evidence should be granted. At a minimum, the December 2019 communications from plaintiff and its counsel should be considered in ruling on defendants' pending sanctions motion.

DATED: February 7, 2020                McMANIS FAULKNER

/s/  Christine Peek
CHRISTINE PEEK

Attorneys for Defendants and Counter-Claimants

7
REPLY IN SUPPORT OF RIVERPAY'S MOTION TO REOPEN EVIDENCE; Case No. 5:18-cv-02585-NC