UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITCON USA, LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>RIVERPAY, INC., YUE "YORK" HUA, and KENNY E. SHI,<br><br>            Defendants.<br><br>―――――――――――――――――――<br><br>RIVERPAY, INC., and KENNY E. SHI,<br><br>            Counter-Claimants,<br><br>     v.<br><br>CITCON USA, LLC, and WEI JIANG,<br><br>            Counter-Defendants. | Case No. 18-cv-2585-NC<br><br>**ORDER ON POST-VERDICT BRIEFING; FINDINGS OF FACT AND CONCLUSIONS OF LAW ON BENCH TRIAL ISSUES**<br><br>Re: Dkt. Nos. 495, 504, 510, 512, 514 |

Before the Court are post-trial briefs in this trade secrets misappropriation case that ended with a jury verdict in December 2019. The Court FINDS that neither side presented sufficient evidence to prevail on their claims under California's Unfair Competition Law; that punitive damages should not be awarded against defendant RiverPay due to its lack of wealth; that injunctive relief is not warranted because monetary damages are sufficient to

address Citcon's injury; and that there was sufficient evidence for the jury's findings such that the defendants are not entitled to judgment as a matter of law. Finally, the Court declines to award attorney's fees and costs.

### I. Overview

This Order addresses the following:

- Dkt. No. 495: Defendants' proposed findings of fact and conclusions of law
- Dkt. No. 504: Plaintiff's post-verdict brief (correction of Dkt. No. 500)
- Dkt. No. 510: Defendants' motion for judgment as a matter of law
- Dkt. Nos. 512 and 514: Defendants' evidentiary objections

The Court previously addressed the motions to seal associated with these materials at Dkt. Nos. 526 and 543, as well as the motions to reopen evidence at Dkt. No. 542.

### II. Evidentiary Objections

The Court first addresses the parties' evidentiary objections associated with the motions discussed below. At Dkt. No. 512, Defendants object to Citcon's use of evidence not admitted at trial. This includes demonstrative slides created by expert witnesses and citations to Plaintiff's counsel's opening statement. As to evidence not admitted at trial, these objections are SUSTAINED. However, some of the contents of these materials were admitted into evidence by the Court. *See, e.g.*, Dkt. No. 494, Exhibit D (slide from Plaintiff's expert witness that largely copies admitted information from Trial Exhibit 1176; the Court will consider Trial Exhibit 1176, which was admitted into evidence). Admitted evidence will be considered in the Court's determination of the following motions.

### III. Jury Verdict

On December 20, 2019, a jury returned a verdict in this case after a ten-day trial. Dkt. No. 487, Jury Verdict. The jury found the following:

*1. Plaintiff's Claims for Misappropriation of Trade Secrets*

The jury found that Citcon was the owner of its (a) source code, (b) transaction information, (c) business plans, and (d) POS designs, and that each of those categories of information was secret and had actual or potential independent economic value because it was secret at the time of the alleged misappropriation. The jury found that none of those

categories of information was readily ascertainable by proper means at the time of the alleged acquisition or use. The jury found that Citcon made reasonable efforts under the circumstances to keep all of those categories of information secret. The jury found that defendants RiverPay and Hua acquired or used Citcon's source code by improper means, but that no other defendant acquired or used any other category of Citcon's trade secrets. The jury found that RiverPay was unjustly enriched by $1.5 million from misappropriation of source code and awarded $1.5 million to Citcon. Verdict at 2–4.

### 2. *Plaintiff's Claim for Conversion of a POS Device*

The jury found that Citcon had a right to possess its POS device and that Hua, but no other defendant, substantially interfered with Citcon's property by knowingly or intentionally preventing Citcon from having access to the POS device (or refusing to return it) after Citcon demanded its return. The jury found that Citcon did not consent to this interference with its property and was harmed by it, and that the defendant's conduct was a substantial factor in causing Citcon's harm. The jury awarded Citcon $301.76 in damages for conversion of the POS device against defendant Hua. Verdict at 5–6.

### 3. *Punitive Damages*

The jury found that Citcon proved by clear and convincing evidence that RiverPay acted with malice, oppression, or fraud in committing trade secret misappropriation of source code. Verdict at 6.

### 4. *Defendants' Claim for Trade Libel*

The jury found that Citcon and Wei Jiang did not harm RiverPay by making an untrue statement to a person other than RiverPay that would be clearly or necessarily understood to have disparaged RiverPay's payment service. Verdict at 8.

### 5. *Defendants' Claim for Defamation*

The jury found that Wei Jiang and another agent, officer, or employee of Citcon made the following statements about RiverPay to a person other than RiverPay who reasonably understood that the statements were about RiverPay: (a) that RiverPay was not able to provide WeChatPay services in the United States; that RiverPay had

misrepresented its ability to provide payment services in the United States; (c) that RiverPay was under investigation by WeChat Pay; and (d) that WeChat Pay had suspended RiverPay's license (including in Canada). The jury found that these statements were not false. Verdict at 9–10.

### 6. *Defendants' Claim for Intentional Interference with Prospective Economic Relations*

The jury found that RiverPay and a customer were in an economic relationship that probably would have resulted in an economic benefit to RiverPay and that the counter-defendant(s) knew of the relationship, and that the counter-defendant(s) did not make false and defamatory statements about RiverPay's payment service. Verdict at 11.

### 7. *Defendants' Claim for Breach of Contract*

The jury found that Shi and Citcon entered into a contract, and that Shi did all, or substantially all, of the significant things that the contract required him to do. The jury found that all of the conditions required in order for Shi's 150,000 shares of capital interest to vest on September 1, 2017, occurred. The jury found that Citcon failed to so something that the contract required Citcon to do, that Shi was harmed, and that Citcon's conduct was a substantial factor in causing Shi's harm. The jury awarded Shi $29,999.99 in damages. Verdict at 13.

### 8. *Punitive Damages*

The jury did not make requisite findings as to the defendants' claims for trade libel, defamation, or intentional interference with prospective economic relations to make any findings on punitive damages.

**IV.    Findings of Fact and Conclusions of Law**

The following claims remain to be decided by the Court rather than by the jury: both Citcon's and RiverPay's claims under California's Unfair Competition Law; Citcon's request for punitive damages; Citcon's request for the Court to award a reasonable royalty; and Citcon's request for injunctive relief.

4

### A. Citcon's UCL Claim

#### 1. Findings of Fact

Citcon mailed one or two POS devices to Hua during the time that Hua worked for Citcon. TT Vol. 2 at 265:1–16, 267:13–268:1; TT Vol. 5 at 941:3–942:21. When Hua resigned from Citcon, he told Citcon that he might still have a POS device. TT Vol. 5 at 941:3–942:21. Hua testified that he looked for the device but did not find it. *Id*. Hua never returned a device to Citcon. *Id*. The jury found that Hua converted the POS device and awarded Citcon $301.76 in damages against Hua. Verdict at 5–6.

#### 2. Conclusions of Law

California's Unfair Competition Law prohibits "unlawful, unfair, or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 7200. The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations omitted). The UCL covers any conduct that "can be properly called a business practice and that at the same time is forbidden by law . . . [it] 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 114 (2003) (quoting *Cel-Tech*, 20 Cal. 4th at 163).

"A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co.*, 29 Cal. 4th at 1144. "Under the UCL, a private plaintiff's remedies are limited to injunctive relief and restitution." *Duste v. Chevron Prods. Co.*, 738 F. Supp. 2d 1027, 1047 (N.D. Cal. 2010); *see* Cal. Bus. & Prof. Code §§ 17203, 17206. "[I]t is well established that individuals may not recover damages" under the UCL. *Korea Supply Co.*, 29 Cal. 4th at 1150. The party bringing a UCL claim bears the burden of proof and must prove its UCL claim by a preponderance of the evidence. *People v. First Federal Credit Corp.*, 104 Cal. App. 4th 721, 732 (2002).

Here, Citcon seeks $1 in nominal damages for Hua's conversion of its POS device in violation of the UCL. Dkt. No. 504 at 12. Defendants argue that this claim should be

1  preempted under the California Uniform Trade Secrets Act because Citcon claimed that
2  designs associated with the device were its trade secrets. Dkt. No. 495 at 21. However,
3  there is a difference between Citcon's claim for trade secret misappropriation of the design
4  of the device and Citcon's separate claim for Hua's conversion of the device. Citcon's
5  UCL claim would be preempted by the CUTSA if it were based on the former. *UCAR*
6  *Tech. (USA) Inc. v. Yan Li*, Case No. 17-cv-01704-EJD, 2018 WL 2555429, at *3–4 (N.D.
7  Cal. June 4, 2018) (also consistent with this Court's Order granting in part and denying in
8  pat defendants' motions to dismiss the Second Amended Complaint at Dkt. No. 98, at 19–
9  20). But the UCL claim is based on the conversion of the device itself, so it is not
10 preempted by the CUTSA.

The Court FINDS that, consistent with the findings of the jury, Citcon has proven by a preponderance of the evidence that Hua engaged in an unlawful business practice by converting the POS device. However, Citcon insists on a "nominal award of $1" for its UCL claim. Dkt. No. 504 at 12. Nominal damages are not an appropriate remedy under the UCL; only injunctive relief and restitution are available. Cal. Bus. & Prof. Code §§ 17203, 17206. Citcon has not requested nor provided any evidence for the Court to grant injunctive relief. And Citcon has not provided any evidence that could allow the Court to award restitution. Moreover, the jury has already awarded Citcon $301.76 in damages for conversion of the POS device. Therefore, Citcon has failed to show that it is entitled to any relief under the UCL. Citcon's UCL claim is therefore DENIED.

**B. RiverPay's UCL Claim**

RiverPay also brings a claim against Citcon and Wei Jiang under the UCL. However, this claim largely relies upon facts that allegedly occurred after the jury trial in this case ended on December 20, 2019. Dkt. No. 487. RiverPay alleges that the counter-defendants sent an email on December 27, 2019, and a letter on December 30, 2019, and that this conduct violated the UCL. Dkt. No. 495 at 24. RiverPay moved to reopen evidence and requested that the Court consider this email and letter. Dkt. No. 508. The Court denied the motion to reopen evidence. Dkt. No. 542. York Hua testified at trial that

1  Citcon "ha[d] been spreading rumors" that RiverPay was going out of business, but was
2  not clear as to when these "rumors" began.  TT Vol. 5 at 924:5–10.  The Court does not
3  consider any conduct that allegedly occurred during or after the trial in deciding this
4  motion.
5        RiverPay also bases its UCL claim on Citcon's failed claims in this case.  Dkt. No.
6  495 at 23.  Citcon brought a trade secrets misappropriation claim based on its customer list
7  and the Court granted defendants' motion for judgment as a matter of law over that claim,
8  finding that Citcon has presented insufficient evidence that the customer list was a trade
9  secret.  TT Vol. 6 at 1186:11–1188:8.  Citcon also brought a claim for conversion based on
10 an alleged "refund attack," and the Court granted defendants' motion for judgment as a
11 matter of law over that claim because Citcon failed to identify an account or fund as
12 required for a conversion of funds claim.  TT Vol. 6 at 1187:12–17.  RiverPay argues that
13 these claims were brought in bad faith for improper anticompetitive purposes in violation
14 of the UCL.  RiverPay cites to *CVD, Inc. v. Raytheon Co.*, which held that the "assertion of
15 a trade secret claim in bad faith" may be an antitrust violation.  769 F.2d 842, 850 (1st Cir.
16 1985).  But the Court has not found, and has no basis to now find, that Citcon brought
17 these claims in bad faith.  Though the claims were dismissed, the Court declines to find
18 that Citcon improperly brought them for anticompetitive purposes.
19       As such, RiverPay's claim for violations of the UCL is DENIED.
20       **C.  Reasonable Royalty**
21       Citcon only sought a reasonable royalty determined by the Court as to its trade
22 secret misappropriation claims for its transaction information, business plans, and POS
23 designs, but not for its source code.  Dkt. No. 505 at 1.  The jury only found that
24 defendants misappropriated Citcon's source code.  Verdict at 2–4.  Therefore, Citcon states
25 that this "issue is now moot."  Dkt. No. 505 at 1.  The Court agrees and declines to award a
26 reasonable royalty as to any of the other trade secret categories.
27       **V.  Punitive and Exemplary Damages**
28       Citcon seeks both "punitive" and "exemplary" damages under California Civil Code

7

sections 3294 and 3426.3 and requests an award of $3 million. Dkt. No. 503 at 1–11. First, the Court rejects Citcon's opinion that "punitive" and "exemplary" damages are two distinct categories of damages. Rather, these are interchangeable terms referring to the same type of damages. *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008); *Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, Case No. 15-cv-01370-EJD, 2019 WL 1117538, (N.D. Cal. Mar. 11, 2019); *G.D. Searle & Co. v. Superior Court*, 49 Cal. App. 3d 22 (1975) (cases using the terms "punitive damages" and "exemplary damages" interchangeably). The Court also disagrees with Plaintiff's theory that it can receive damages both under the general punitive damages statute *and* the California Uniform Trade Secrets Act for misappropriation of its trade secrets. Rather, the CUTSA "preempts alternative civil remedies based on trade secret misappropriation." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2011) (quoting *K.C. Multimedia, Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009)). As such, the Court only considers what punitive damages might be awarded for trade secret misappropriation under the CUTSA. Citcon's requests for separate punitive and exemplary damages, and Citcon's request for punitive damages under the general punitive damages statute, are DENIED.

**A. Clear and Convincing Evidence Standard**

The verdict form completed by the jury included the following question under the heading "Punitive Damages":

> Has Citcon proved by clear and convincing evidence that RiverPay, Hua, or Shi acted with malice, oppression, or fraud in committing trade secret misappropriation of source code? (Circle all that apply).
>
>    a. RiverPay
>    b. Hua
>    c. Kenny Shi

The jury circled "RiverPay" and did not circle "Yue 'York' Hua" or "Kenny Shi." Verdict at 6.

Citcon argues that "clear and convincing" was not the correct standard to include in this question. In support of this contention, Citcon cites to *Yeti by Molly, Ltd., v. Deckers*

8

1   *Outdoor Corp.*, 259 F.3d 1101, 1111–12 (9th Cir. 2001).  In *Yeti*, the Ninth Circuit found
2   that the Montana Uniform Trade Secret Act incorporated the general punitive damages test
3   and held that "[n]othing in the MUTSA suggests that exemplary damages and attorneys'
4   fees need to be proved by clear and convincing evidence."  *Id*. at 1111.  The Court finds
5   that *Yeti* is inapplicable here because it addressed Montana, not California, law.  As to the
6   CUTSA, "[n]o reported California state court case has addressed whether the jury or the
7   court should decide whether any misappropriation was 'willful and malicious,' and if so,
8   whether the finding must be made by clear and convincing evidence rather than a
9   preponderance of the evidence."  Judicial Council of California Civil Jury Instructions
10  ("CACI"), No. 4411, Directions for Use (citing *Ajaxo Inc. v. E\*Trade Financial Corp.*,
11  135 Cal App. 4th 21, 66 (2005)).  But California courts have incorporated the "clear and
12  convincing" standard to punitive damages for trade secret misappropriation as set forth in
13  the CUTSA.  *See Ajaxo*, 135 Cal. App. 4th at 66.  Therefore, the Court FINDS that the
14  "clear and convincing" evidence standard was appropriately included in the verdict form.

### B. "Willful and Malicious" vs. "Malice, Oppression, or Fraud"

Defendants argue that, under the CUTSA, the jury was required to find that they acted "willfully and maliciously" in their misappropriation of trade secrets.  Cal. Civ. Code § 3426.3(c).  As reproduced above, the verdict form asked the jury whether any defendant acted "with malice, oppression, or fraud in committing trade secret misappropriation of source code."  Verdict at 6.  The definitions of "maliciously" and "malice" under the CUTSA and the general punitive damages statute are the same.  Under California's general punitive damages statute, "'maliciously' means that the defendant acted with an intent to cause injury, or that the defendant's conduct was despicable and was done with a willful and knowing disregard for the rights of others."  CACI 4411.  Under the CUTSA, "'malice' means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights and safety of others."  Cal. Civ. Code § 3294(c)(1).  These definitions are equivalent.  So, the important difference between the two standards is the

9

1 verdict form's use of the disjunctive "or," suggesting that the jury could have found that
2 the defendants acted with oppression or with fraud but not with malice.
3 The Court finds that there was sufficient evidence for the jury to find that RiverPay
4 acted both willfully and maliciously.

### C. Corporate Liability for Punitive Damages

As reproduced above, the jury only found that RiverPay but no other defendant had, by clear and convincing evidence, acted with malice, oppression, or fraud in committing trade secret misappropriation of source code. Verdict at 6. Under California Civil Code § 3294(b), an employer may only be held liable for punitive damages through the acts of its employees. *See Davis v. Kiewit Pac. Co.*, 220 Cal. App. 4th 358, 365 (2013). Corporations can only act through their agents and employees for the purposes of punitive damages because corporations cannot hold any mental state like those required for a punitive damages award. *Protectus Alpha Nav. Co. v. N. Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985); *Cruz v. Homebase*, 83 Cal. App. 4th 160, 167 (2000). For a corporation to be liable for its agent's or employee's actions, the agent or employee must belong to the leadership group of officers, directors, and managing agents. *Cruz*, 83 Cal. App. 4th at 168.

Here, the jury only found that RiverPay had acted with malice, oppression, or fraud but expressly declined to find that defendants Hua and Shi did so. Defendants argue that, therefore, punitive damages cannot be awarded against RiverPay because it is a corporation. However, Citcon presented evidence as to conduct of RiverPay employees besides Hua and Shi. In particular, the jury heard evidence about and testimony from both Ryan Zheng and Simon Han, who are RiverPay founders and investors. TT Vol. 5 at 742:10–764:11; TT Vol. 7 at 1299:16–1309:23. Zheng and Han belong to the leadership group of RiverPay's officers, directors, and managing agents. The jury thus could have attributed these other employees' mental states to RiverPay even while declining to find that Hua or Shi acted with malice, oppression, or fraud. The Court finds that this is not a basis for it to decline to award punitive damages against RiverPay.

10

### D. The Court Declines to Award Any Punitive Damages

The Court may consider the following factors in determining whether to award punitive damages: (1) the particular nature of the defendant's acts in light of the record; (2) the amount of compensatory damages awarded; and (3) the wealth of the particular defendant. *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 928 (1978). Conduct is more reprehensible if it: (1) caused physical harm; (2) disregarded the health or safety of others; (3) targeted a financially vulnerable party; (4) was repeated; or (5) resulted from intentional malice, trickery, or deceit, rather than mere accident. *Mattel, Inc*., 801 F. Supp. 2d at 953–54.

Here, the Court declines to award any punitive damages against RiverPay. The Court finds that the nature of RiverPay's conduct is not highly reprehensible under *Mattel*. RiverPay did not cause physical harm or danger to anyone's health or safety, and RiverPay's conduct was not perpetrated against a financially vulnerable party. Further, the Court finds that the $1.5 million in compensatory damages for unjust enrichment awarded by the jury is sufficient to both punish RiverPay and to deter similar conduct, especially relative to RiverPay's net worth.

RiverPay's wealth, the final factor, is the primary reason for the Court's determination. Though both corporations in this case boasted at times about their financial success, the evidence before the Court shows that in fact both Citcon and RiverPay are nearly broke. *See* Trial Exhibit 1176 (RiverPay's financial statements through September 2019 showing revenue of about $7.6 million and costs of goods sold of about $6.5 million for a gross margin of just over $1 million not accounting for any other operating expenses); TT Vol. 5 at 919:11–920:3, 922:25–923:3 (York Hua testifying that RiverPay operated at a net loss in 2017 and 2018); TT Vol. 6 at 1054:12–14 (York Hua testifying that RiverPay continued to operate at a loss in 2019 through the date of the trial); TT Vol. 7 at 1343:4–12 (testimony of defense expert witness Dr. Russell Mangum that if RiverPay went bankrupt it may not be able to pay even its preferred stock holders); TT Vol. 6 at 966:7–19 (York Hua testifying that as of December 2019, RiverPay's remaining

investment funds had been spent on business expenses included attorneys' fees and costs incurred in this litigation); *see also* TT Vol. 8 at 1518:8–11 (Chuck Huang testifying that Citcon had no net profits from 2017 through 2019). With this ample evidence of RiverPay's lack of funds, the Court declines to enter an award of punitive damages.

### VI. Injunctive Relief

The CUTSA and DTSA allow a Court to enter injunctive relief to "prevent any actual or threatened misappropriation" of trade secrets. Cal. Civ. Code § 3426.2; 18 U.S.C. § 1836(b)(3)(A). To obtain an injunction, Citcon must show: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the parties, an equitable remedy is warranted; and (4) that the public interest would be served by the Court entering a permanent injunction. *eBay Inc. v. MereExchange, LLC*, 547 U.S. 388, 391 (2006).

Citcon seeks an injunction precluding RiverPay from conducting business for at least one year that may only be lifted upon RiverPay's showing that it has developed a new set of source code through a cleanroom process or otherwise. Dkt. No. 503 at 14; Dkt. No. 501, Citcon and Wei Jiang's Proposed Judgement, at 2. The Court finds that no injunctive relief is warranted here. First, though Citcon has been injured by the trade secret misappropriation, it has not shown that the harm is irreparable. Citcon relies on *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, where the court issued a permanent injunction to prevent a defendant from selling products that used misappropriated trade secrets and stated that "[c]ommercial advantage is grounds for finding irreparable harm under the CUTSA." Case No. 10-cv-03428-PSG, 2013 WL 890126, at *12 (N.D. Cal. Jan. 23, 2013). Whereas in *Brocade* the plaintiff was only awarded $1 in nominal damages, here Citcon points to the jury's award of $1.5 million to show the gravity of its harm. Dkt. No. 503 at 14. However, the jury award in this case highlights that the remedy available at law—here, money damages—has already compensated Citcon for its injury. Citcon has failed to show why the $1.5 million jury award is inadequate. The Court further finds that

12

neither the balance of hardships nor the public interest weigh in favor of granting in injunction. Citcon's request for injunctive relief is DENIED.

## VII. Joint and Several Liability

Citcon requests that the defendants be held jointly and severally liable for the trade secret misappropriation. Dkt. No. 503 at 11. Citcon notes that "[d]uring the trial, the Court denied Citcon's request to submit the issue of joint and several liability of the defendants for misappropriation of trade secrets to the jury." *Id*. The Court denied Citcon's request to give a jury instruction on joint and several liability at the trial because the evidence that Citcon had presented throughout the entire case up to that point, including through its fact and expert witnesses at trial, had never been under a theory of joint and several liability. TT Vol. 7 at 1387:14–22. The Court also found that vicarious liability, not joint and several liability, was the appropriate theory of liability between the corporation and its employees. *Id*. For the same reasons that the Court stated on the record when Citcon first presented this request, the motion to hold all defendants jointly and severally liable for trade secret misappropriation is again DENIED.

## VIII. Defendants' Motion for Judgment as a Matter of Law

Under Federal Rule of Civil Procedure 50, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1)(B). Judgment as a matter of law is "proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1560 (9th Cir. 1993). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000). "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

13

242, 250–51 (1986). "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1037 (9th Cir. 1996).

### A. RiverPay's Employees' "Willful and Malicious" Conduct

Defendants seek the Court's judgment as a matter of law that none of RiverPay's employees acted willfully and maliciously given that the jury only circled "RiverPay" and not "Yue 'York' Hua" or "Kenny Shi" on the verdict form when asked about the defendants' malice, oppression, or fraud. As the Court discussed in Section IV-C above, the jury heard testimony from other RiverPay agents—Ryan Zheng and Simon Han—and the jury could have attributed their mental state to RiverPay. The request for JMOL as to RiverPay's willful and malicious conduct is DENIED.

### B. Hua's Improper Acquisition or Use of the "POS Designs"

Defendants argue that the jury erroneously found that Citcon owned a "POS design," that qualified as a trade secret, that was improperly acquired or used by York Hua. Dkt. No. 509 at 5. Defendants argue that Citcon produced insufficient evidence as to the definition of this alleged trade secret category. Defendants point to a question sent out by the jury about this trade secret category to suggest that the jury was confused about this topic. TT Vol. 8 at 1512:3–1516:8; Jury Note No. 48. Citcon counters that it presented sufficient evidence to the jury to define this category of trade secrets, though it cites to non-evidence such as its attorney's opening statement as one example of that evidence. Plaintiff's counsel's opening statement is not evidence. But, Citcon presented some admissible evidence that the POS device could be reverse-engineered to acquire the trade secrets in the designs, such as a merchant agreement prohibiting this reverse engineering. Trial Exhibit No. 286 at 3 § 10. The Court finds that, taking all reasonable inferences in Citcon's favor, the jury had sufficient evidence to find that Hua improperly acquired or used the POS design trade secrets. The motion for JMOL as to the sufficiency of this trade secret identification is DENIED.

### C. The NDA, or Lack Thereof, Between Citcon and Dino Lab

An issue presented to the jury was whether there was an enforceable non-disclosure

14

1  agreement between Citcon and Dino Lab, a contract programming company that worked
2  for Citcon. The parties argued extensively about the NDA, or lack thereof, at trial. *See,*
3  *e.g.*, TT Vol. 2 at 214:8–222:6, 281:17–283:5. The agreement itself was admitted into
4  evidence. Tr. Exh. 3. The jury was not asked to make any factual findings as to the
5  existence of an NDA. However, defendants argue that the exhibit consisting of the NDA
6  itself should not have been entered into evidence and that Citcon should not have been
7  allowed to argue that the NDA was legitimate. The Court considered these arguments both
8  before and during the trial, and both parties took advantage of their adequate opportunities
9  to present their views on the NDA to the jury. Finally, the Court agrees with Citcon that
10 this motion is procedurally improper because the jury did not make any findings about the
11 NDA. The motion for JMOL as to both issues is DENIED.

### D. Whether Dino Lab Owned the Source Code

Defendants have argued repeatedly throughout this case that Citcon does not own the source code that it alleges the defendants misappropriated because the code is owned by Dino Lab, a contractor who wrote some of the Citcon's code. *See, e.g.*, Dkt. No. 205 (Defendants' motion for partial summary judgment on this issue, denied by the Court at Dkt. No. 237). The argument about the source code ownership revolves primarily around a written agreement between the parties. Again, as with the NDA, the jury was not asked to make any factual findings as to the existence or legitimacy of any written agreement between Citcon and Dino Lab. To the extent that the jury may have considered the existence or legitimacy of the written agreement supposedly assigning ownership of the source code, the Court finds that there was sufficient evidence for the jury to do so. *See* Tr. Exhs. 5, 468. As with the NDA, the Court agrees with Citcon that this motion is procedurally improper because the jury made no explicit findings about source code ownership for the Court to review in the first place. The motion for JMOL as to the ownership of the source code is DENIED.

### IX. Fees and Costs

The CUTSA and DTSA allow the Court to award attorney's fees for trade secret

United States District Court
Northern District of California

misappropriation that is "willful and malicious." Cal. Civ. Code §3426.4; 18 U.S.C. § 1836(b)(3)(D). But "attorneys' fees are not mandatory even if the jury finds willful and malicious misappropriation." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1080 (N.D. Cal. 2005). Under Federal Rule of Civil Procedure 54(d)(1), the prevailing party may recover taxable costs. This party is the one who succeeded "on any significant claim." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). "[I]n the event of a mixed judgment," the court may "require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996).

Here, Citcon succeeded on its claims for misappropriation for source code with a $1.5 million damage award as well as its claim for conversion of a POS device with a $301.76 damage award. Citcon's claims for trade secret misappropriation as to its four other categories of alleged trade secrets failed. Defendant Kenny Shi succeeded on his claim for breach of contract with a $29,999.99 damage award. Defendants' claims for trade libel, defamation, and intentional interference with prospective economic relations failed.

The Court agrees with Citcon that the trade secrets claim for misappropriation of source code was the most significant claim in this case. At the same time, however, Citcon still chose to bring claims for four other categories of trade secrets misappropriation, none of which it could substantiate. And defendant Kenny Shi was not held liable for any misconduct at all, while succeeding on his own significant claim against Citcon. Like in *O2 Micro*, where the defendant incurred fees defending claims that the jury rejected, here the defendants incurred fees successfully defeating four of Citcon's five trade secrets claims. On top of that, this case ended in a mixed judgment where Shi was awarded damages against the counter-defendants.

For these reasons, the Court DECLINES to award attorney's fees in this case. Each party will bear its own costs.

### X. Conclusion

Citcon's requests for injunctive relief, punitive damages, and attorneys' fees are

16

DENIED.  Defendants' motion for judgment as a matter of law is DENIED.  Both parties' UCL claims are DENIED.

**IT IS SO ORDERED.**

Dated:  September 8, 2020  _____
NATHANAEL M. COUSINS
United States Magistrate Judge